## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | : | |
| WILLIAM "BILL" SMITH | : | |
| 814 Creek Road | : | |
| Severna Park, MD 21146 | : | |
| | : | |
| Plaintiff | : | Civil Action No.: 1:17-CV-60 |
| v. | : | |
| | : | **DOCUMENT UNDER SEAL** |
| ATHENA CONSTRUCTION GROUP, INC. | : | |
| 18031 Dumfries Shopping Plaza | : | |
| Dumfries, VA 22026 | : | |
| | : | |
| and | : | |
| | : | |
| AMBER PEEBLES | : | |
| 615 Federal Street | : | |
| Lynchburg, VA 24504 | : | |
| | : | |
| and | : | |
| | : | |
| MELISSA SCHNEIDER | : | |
| 615 Federal Street | : | |
| Lynchburg, VA 24504 | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

### I.   INTRODUCTION

1.      Relator William "Bill" Smith alleges that Athena Construction Group, Inc.,

(herein "Athena") and its owners and officers, Amber Peebles and Melissa Schneider, violated

the False Claims Act and the Financial Institutions Reform, Recovery, and Enforcement Act of

1989.

2.      According to Relator Smith, Defendants falsified the qualifications of Athena so

that the company could be certified under several Small Business Administration ("SBA")

contracting programs, including but not limited to the Historically Underutilized Business Zone program ("HUBZone"), Service-Disabled Veteran-Owned Small Business Concern Program ("SDVOSBC"), and the Woman-Owned Small Businesses Federal Contracting Program ("WOSB").

3.      Ms. Peebles and Ms. Schneider knowingly and intentionally misrepresented Athena's eligibility under the above programs to fraudulently obtain government contracts and to fraudulently claim money under those contracts.

4.      As a result of Defendants fraudulently obtaining SBA certifications, from 2010 to 2016, Athena received over $22 million dollars in HUBZone, SDVOSBC, and WOSB set-aside contracts from various departments of the United States Government.

5.      Accordingly, Relator Smith, on behalf of the United States of America, pursuant to the False Claims Act, seeks $66 million in damages from Defendants for knowingly submitting false claims in the amount of approximately $22 million to the Government.

## II.    PARTIES

6.      The Plaintiff is the United States of America, acting on behalf of the Department of Defense, Department of Interior, Department of Commerce, Department of Veterans Affairs, General Services Administration, and SBA.  The SBA, among other activities, oversees the HUBZone, SDVOSBC or WOSB programs.

7.      Relator/Plaintiff William "Bill" Smith is an adult citizen of the State of Maryland residing at 814 Creek Road, Severna Park, Maryland 21146.  Mr. Smith worked for Defendant Athena from 2011 to 2016.  During those years, Mr. Smith worked as the Director of Operations and Project Superintendent for Athena.

8.      Defendant Athena is a general construction contractor, with its main office presently located 17877 Old Triangle Road, Triangle, Virginia, 22172.  Defendant Athena was previously located at 18031 Dumfries Shopping Plaza, Dumfries, Virginia, 22026.

9.      Athena claims to be the nation's premiere SDVOSB-SWaM-HUBZone-certified construction company.  According to its website, Athena is:

- 8(a)-certified;

- SBA-Certified HUBZone;

- VA-Certified Service-Disabled Veteran-Owned Small Business; and

- WBENC-Certified Woman-Owned Business.

10.      Defendant Amber Peeples is an owner and President of Defendant Athena.  Ms. Peeples is an adult citizen of the Commonwealth of Virginia residing at 615 Federal Street, Lynchburg, Virginia 24504.  Ms. Peeples oversees all aspects of the company's affairs and operations.

11.      Defendant Melissa Schneider is the founder, owner and Vice-President of Defendant Athena.  Ms. Schneider is an adult citizen of the Commonwealth of Virginia residing at 615 Federal Street, Lynchburg, Virginia 24504.

12.      It is Relator Smith's understanding that Defendants Ms. Peeples and Ms. Schneider reside together and are domestic partners.

## III.   JURISDICTION

13.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1345.

14.      This Court may exercise personal jurisdiction over the Defendants under 31 U.S.C. §3732(a) because the Defendants transact business in this District and committed some of the proscribed acts in this District.

15.     Similarly, venue lies in this District pursuant to 28 U.S.C. §1391(b)(2), as Defendants committed some of the proscribed acts in this District.

16.     For example, Defendants fraudulently obtained contract HQ003414D0005, which was designated as a HUBZone set-aside ($802,009), for work to be completed at the Raven Rock Mountain Complex located in this District at Liberty Township, Adams County.

## IV.     FACTUAL BACKGROUND

17.     The U.S. Government is the world's largest buyer of services and goods. Purchases by military and civilian agencies amount to nearly $600 billion a year and include everything from complex space vehicles to the paving of parking lots.

18.     Recognizing that small businesses are the engine of economic growth in the U.S., the Government has adopted a policy of requiring its agencies to award prime and subcontracting opportunities to small businesses.

19.     Accordingly, the U.S. Government has enacted a government-wide prime contracting goal that at least 23 percent of all federal government contracting dollars should be awarded to small and disadvantaged businesses.

20.     Targeted sub-goals have also been established for women-owned small businesses, small disadvantaged businesses, firms located in HUBZones and service disabled veteran-owned small businesses.  These targeted sub-goals are 5 percent, 5 percent, 3 percent and 3 percent, respectively.

21.     It is the responsibility and mission of the Small Businesses Administration ("SBA") to help federal agencies ensure that small businesses get their fair share of federal contract dollars.

22.    The U.S. Government has created multiple programs and initiatives to help achieve its procurement goal, including contract set-asides and certification programs.

23.    As a matter of policy, any government contracts for either purchases or services that have an anticipated dollar value exceeding $3,000, but not over $150,000 are automatically reserved or set aside for small businesses.

24.    In addition to SBA set-asides, there are four certification programs that are administered by the SBA: the 8(a) Business Development Program, the HUBZone Program, Service-Disabled Veteran-Owned Small Business Concern Program, and Women-Owned Small Businesses Federal Contracting Program.

25.    Defendant Athena submitted and obtained the following SBA set-aside contracts:

| | | | |
|---|---|---|---|
| a. | 09/06/2011 | $60,500 | W91QV111P0266 | Dept. of Defense |
| b. | 09/23/2011 | $12,354 | ING11PX01600 | Dept. of Interior |
| c. | 06/13/2012 | $19,759 | W912DR10P0332 | Dept. of Army |
| d. | 09/11/2012 | $3,419 | ING12PX01825 | Dept. of Interior |
| e. | 07/15/2013 | $36,933 | ING13PX01133 | Dept. of Interior |
| f. | 03/23/2015 | $10,500 | ING15PX00418 | Dept. of Interior |
| g. | 01/14/2016 | $22,871 | W912HQ16P0016 | Dept. of Defense |

## A.    8(a) Business Development Program

26.    The 8(a) Business Development Program is designed to assist eligible socially and economically disadvantaged small businesses.

27.    The program provides qualified firms access to capital credit, business counseling and training, and contracting opportunities.

28.    To be eligible for participation in the 8(a) Business Development Program, the company must be:

a.    owned by an American citizen, by birth or naturalization;

    b.  majority-owned (51 percent or more) and controlled/managed by a socially and economically disadvantaged individual(s); and

    c.  a small business.

29.    Under federal law, socially disadvantaged individuals are those that have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identification as members of groups without regard to their individual qualities.  Thus, for purposes of the 8(a) Business Development program, the following individuals are presumed socially disadvantaged (called "presumed groups"):

    a.  Black Americans;

    b.  Hispanic Americans;

    c.  Native Americans;

    d.  Asian Pacific Americans; and

    e.  Subcontinent Asian American.

30.    Other individuals may be found socially disadvantaged and eligible for the program on a case-by-case basis.  To do so, the individual must provide evidence to the SBA proving that they are socially disadvantaged.  Evidence of individual social disadvantage must include:

    a.  At least one objective distinguishing feature such as race, ethnic origin, gender, physical handicap, long-term residence in an environment isolated from the mainstream of American society, or other similar causes not common to individuals who are not socially disadvantaged;

    b.  Personal experiences of substantial and chronic social disadvantage in American society, not in other countries;

    c.  Negative impact on the individual's entrance into the business world or advancement in the business world because of the stated disadvantage(s); and

      d.  To prove social disadvantage, the individual(s) owners must ultimately show that such personal experiences had a negative impact on entry into or advancement in the business world.

31.     It should be noted that once the SBA has found that the applicant is socially disadvantaged it must then find that they are also economically disadvantaged before they can receive 8(a) certification.

32.     According to the SBA, "economically disadvantaged individuals are socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities."

33.     Thus, before the SBA can approve an application, the individuals claiming to be disadvantaged must submit supporting documents to prove that their assets:

      a.  assets do not exceed $4 million;

      b.  personal income does not exceed $250,000, averaged over 3 years, or

      c.  adjusted net worth is less than $250,000.

34.     To determine if an individual is economically disadvantaged, each socially disadvantaged individual must provide the following to SBA:

      a.  narrative statement of economic disadvantage;

      b.  personal financial information (including tax returns and certain SBA forms); and

      c.  in every case, when married, the socially disadvantaged individual must submit separate financial information to SBA for his or her spouse (including tax returns and certain SBA forms).

35.     In reviewing economic disadvantage, the SBA also reviews several factors to determine if a socially disadvantaged individual is economically disadvantaged.  These factors include:

      a.  all income for the past three years, including any unusual income levels;

    b.  fair market value of all assets;

    c.  personal net worth (assets and liabilities);

    d.  transfer of assets to an immediate family member, directly or via trust;

    e.  availability of individual retirement account (IRA) funds or other official retirement accounts;

    f.  income received from the firm when filing taxes as an S corporation or partnership;

    g.  reinvestments into the applicant firm; and

    h.  tax payments for the firm.

36.    The SBA has placed certain limitations on a contractor's ability to subcontract any portion of an 8(a) set-aside contract if the amount exceeds $150,000.

37.    For example, for general construction contracts, the prime contractor must perform at least 15 percent of the work, not including the cost of the materials, with its own employees. For construction by special trade contractors, the prime contractor must perform at least 25 percent of the work, not including the cost of the materials, with its own employees.

38.    Violations of the applicable subcontracting limitation may result in a variety of significant penalties, including suspension, debarment, administrative remedies, fines and even imprisonment. If a fine is imposed as a result of a violation, the fine will be greater of either $500,000 or the dollar amount spent in excess of the permitted levels for subcontracting.

39.    Defendants submitted inaccurate and falsified information to the U.S. Government in order to obtain 8(a) certification.

40.    For example, the owners of Athena are neither socially or economically disadvantaged. The owners of Athena lied on their 8(a) application and hid assets in order to have Athena qualify as an 8(a) company.

41.     Defendants obtained prime contracts and subcontracts from government agencies and other contracts using its fraudulently obtained 8(a) certification.

42.     Further, Athena violated the limitations on subcontracting of 8(a) set asides by generally subcontracting a 100% of the 8(a) contracts to other companies.

**B.     The HUBZone Program**

43.     Congress enacted the HUBZone program in 1997 to encourage small businesses to locate in areas of the country that traditionally experienced difficulty in attracting business.

44.     The goal of the program is to spur investment and job growth in areas where both were lacking. As Congress explained, the HUBZone program 'targets special Federal government help to inner cities and rural counties that have low household incomes, high unemployment, and whose communities have suffered from a lack of investment." S. REP. NO. 105-62, at 25 (1997), 1997 U.S.C.C.A.N. 3076, 3098.

45.     Creating incentives for small businesses to locate in targeted communities is the fundamental goal of the HUBZone program. "[W]ithout businesses in these communities, we don't create jobs, and without sources of new jobs, we are unlikely to have a successful revitalization effort." *Id.* at 3099.

46.     Towards that end, the HUBZone program gives preferences in government contracting to businesses that qualify as a HUBZone small business concern, including in some cases a 10 percent price evaluation preference. Among other options, agencies can designate a contract as a HUBZone set-aside, which restricts competition for the contract to only those companies that are HUBZone certified.

47.     The SBA has the authority to certify a company as a qualified HUBZone firm.  To qualify as a HUBZone small business concern, the applicant must meet four basic eligibility requirements:

    a.   the business must be owned and controlled by a U.S. citizen;

    b.   it must qualify as a small business;

    c.   the business's principal office must be located in a HUBZone designated as such by regulation; and

    d.   at least 35 percent of the business's employees must reside in a HUBZone.

48.     In designating a company as HUBZone certified the SBA relies on the information in the applicant's online submission.

49.     The definitions for the terms used in the certification and throughout the application are set forth in the Small Business Act, SBA regulations (13 C.F.R. Part 126), and also any statutory and regulatory provision referenced in those authorities.

50.     The Certification further states: "The undersigned has reviewed, verified and certifies that":

    a.     The applicant's principal office is located in a HUBZone.

    b.     All the statements and information provided in the applicant's online application, this form and any attachments are true, accurate and complete. If assistance was obtained in completing this form and the supporting documentation, I have personally reviewed the information and it is true and accurate. I understand that these statements are made for the purpose of determining eligibility and continuing eligibility in the HUBZone Program. In addition, the applicant will immediately notify the SBA of any material change which could affect the applicant's HUBZone SBC eligibility.

    c.     The certifications in this document are continuing in nature. Each HUBZone prime contract or subcontract for which the applicant submits an offer/quote or receives an award while a HUBZone SBC constitutes a restatement and reaffirmation of these certifications.

51.     Further, the Certification contains the following warning:

Warning: By signing this certification you are representing on your own behalf, and on behalf of the applicant, that the information provided in this certification, the application and any document or supplemental information submitted in connection with this application, is true and correct as of the date set forth opposite your signature. Any intentional or negligent misrepresentation of the information contain in this certification may result in ... civil ... sanctions including, but not limited to ... treble damages and civil penalties under the False Claims Act ...."

52.     The SBA has placed certain limitations on a contractor's ability to subcontract any portion of a HUBZone set-aside contract if the amount exceeds $150,000.

53.     For example, for general construction contracts, the prime contractor must perform at least 15 percent of the work, not including the cost of the materials, with its own employees.  For construction by special trade contractors, the prime contractor must perform at least 25% of the work, not including the cost of the materials, with its own employees.

54.     Violations of the applicable subcontracting limitation may result in a variety of significant penalties, including suspension, debarment, administrative remedies, fines and even imprisonment.  If a fine is imposed as a result of a violation, the fine will be greater of either $500,000 or the dollar amount spent in excess of the permitted levels for subcontracting.

55.     Defendants submitted inaccurate and falsified information to the U.S. Government in order to obtain HUBZone certification.

56.     For example, in order to meet the 35 percent HUBZone employee threshold, the owners of Athena have paid individuals nominals sums money so that they could be identified on fake employee rosters.  These alleged employees do not actually do any work for Athena, they are paid solely so that Athena can meet the 35 percent threshold.

57.     Defendants obtained prime contracts and subcontracts from government agencies and other contracts using its fraudulently obtained HUBZone certification.

58.     Using its fraudulently obtained HUBZone certification, Athena submitted bids and was awarded the following contracts:

| | | | | |
|---|---|---|---|---|
| a. | 03/22/2011 | $50,423 | ING11PX00408 | Department of Interior |
| b. | 04/27/2011 | $3,575 | ING11PX00408 | Department of Interior |
| c. | 05/18/2011 | $11,956 | ING11PX00891 | Department of Interior |
| d. | 09/17/2011 | $40,719 | ING11PX02171 | Department of Interior |
| e. | 09/21/2012 | $460,184 | ING12PC00063 | Department of Interior |
| f. | 03/20/2014 | $10,000 | HQ003414D0005 | Department of Defense |
| g. | 06/24/2014 | $20,999 | W912HQ14P0070 | Department of Defense |
| h. | 09/30/2014 | $2,401,200 | | Department of Defense |
| i. | 04/29/2015 | $2,112 | DOC0006 | Department of Commerce |
| j. | 04/29/2015 | $8,661 | DOC0007 | Department of Commerce |
| k. | 05/21/2015 | $2,684 | DOC0008 | Department of Commerce |
| l. | 05/22/2015 | $9,628 | DOC0009 | Department of Commerce |
| m. | 05/22/2015 | $13,366 | DOC0010 | Department of Commerce |
| n. | 06/03/2015 | $4,396 | DOC0011 | Department of Commerce |
| o. | 06/11/2015 | $22,438 | DOC0012 | Department of Commerce |
| p. | 06/25/2015 | $24,983 | INP15PC00316 | Department of Interior |
| q. | 07/17/2015 | $6,597 | DOC0013 | Department of Commerce |
| r. | 07/23/2015 | $366,983 | HQ003414D0005 | Department of Defense |
| s. | 07/30/2015 | $292,314 | HQ003414D0005 | Department of Defense |
| t. | 07/30/2015 | $12,338 | DOC0014 | Department of Commerce |
| u. | 09/29/2015 | $802,009 | HQ003414D0005 | Department of Defense |
| v. | 10/22/2015 | $2,625 | DOC0015 | Department of Commerce |
| w. | 12/11/2015 | $42,648 | HQ003414D0005 | Department of Defense |
| x. | 08/10/2016 | $96,407 | INP16PX02649 | Department of Interior |

59.     Further, Athena violated the limitations on subcontracting of HUBZone set asides by generally subcontracting a 100 percent of the above HUBZone contracts to other companies.

**C.     Service-Disabled Veteran-Owned Business Concern Procurement Program**

60.     The Veterans Entrepreneurship and Small Business Development Act of 1999 established an annual government-wide goal of not less than 3 percent of the total value of all

prime contract and subcontract awards for participation by small business concerns owned and controlled by service-disabled veterans.

61.     On December 16, 2003, the Veterans Benefits Act of 2003 was passed by Congress. Section 308 of the Act established a procurement program for Service-Disabled Veteran-Owned Small Business Concerns ("SDVOSBC").

62.     The purpose of the SDVOSBC is to provide procuring agencies with the authority to set acquisitions aside for exclusive competition among service-disabled veteran-owned small business concerns, as well as the authority to make sole source awards to service-disabled veteran-owned small business concerns if certain conditions are met.

63.     The SDVOSBC establishes the criteria to be used in federal contracting to determine service-disabled veteran status; business ownership and control requirements; guidelines for establishing sole source and set-aside procurement opportunities; and protest and appeal procedures for SDVOSBC procurements.

64.     In order to be eligible for the SDVOSBC, a business must meet the following criteria:

      a.  the Service Disabled Veteran (SDV) must have a service-connected disability that has been determined by the Department of Veterans Affairs or Department of Defense;

      b.  the SDVOSBC must be small under the North American Industry Classification System (NAICS) code assigned to the procurement;

      c.  the SDV must directly and unconditionally own 51% of the SDVOSBC;

      d.  the SDV owner must control the management and daily operations of the SDVOSBC; and

      e.  The SDV must hold the highest officer position in the SDVOSBC.

65. Control by one or more service-disabled veterans means that both the long-term decision making and the day-to-day management and administration of the business operations must be conducted by one or more service-disabled veterans.

66. Similar to HUBZone certification, SDVOSBC owned businesses are required to self-certify.

67. The SBA has placed certain limitations on a contractor's ability to subcontract any portion of a SDVOSBC set-aside contract if the amount exceeds $150,000.

68. For example, for general construction contracts, the prime contractor must perform at least 15 percent of the work, not including the cost of the materials, with its own employees. For construction by special trade contractors, the prime contractor must perform at least 25 percent of the work, not including the cost of the materials, with its own employees.

69. Violations of the applicable subcontracting limitation may result in a variety of significant penalties, including suspension, debarment, administrative remedies, fines and even imprisonment. If a fine is imposed as a result of a violation, the fine will be greater of either $500,000 or the dollar amount spent in excess of the permitted levels for subcontracting.

70. Defendants submitted inaccurate and falsified information to the U.S. Government in order to obtain SDVOSBC certification.

71. For example, the control and management of Athena's daily operations are not conducted by a service disabled veteran.

72. Defendants obtained prime contracts and subcontracts from government agencies and other contracts using its fraudulently obtained SDVOSBC certification.

73. Using its fraudulently obtained SDVOSBC certification, Athena submitted bids and was awarded the following contracts:

14

| | | | | |
|---|---|---|---|---|
| a. | 09/23/2011 | $10,565 | VA786AC0441 | Dept. of Veterans Affairs |
| b. | 03/28/2013 | $1,795,000 | VA25713C0083 | Dept. of Veterans Affairs |
| c. | 05/30/2013 | $4,395,000 | VA25713C0084 | Veterans Affairs |
| d. | 09/26/2014 | $96,485 | W9115114P1004 | Department of Defense |
| e. | 12/11/2015 | $2,190,338 | VA24616C0006 | Dept. of Veterans Affairs |
| f. | 02/09/2016 | $1,207,093 | VA25713C0084 | Dept. of Veterans Affairs |
| g. | 09/12/2016 | $224,768 | VA25016P2337 | Dept. of Veterans Affairs |

74.     Further, Athena violated the limitations on subcontracting of SDVOSBC set asides by generally subcontracting 100 percent of the above SDVOSBC contracts to other companies.

## D.     Women Owned Small Business Program

75.     Annual government-wide contracting goals have been legislatively established for women-owned small businesses.  As such, 5 percent of the total value of all prime contracts and 5 percent of all subcontracts are to be awarded to women-owned small businesses ("WOSB").

76.     A WOSB is defined as a small business that is least 51 percent owned and controlled by one or more women who are U.S. citizens.  The ownership must be direct and not subject to conditions.  Further, a woman or women must manage the day to day operations of the business and be able to provide documents demonstrating that these requirements are satisfied.

77.     An economically disadvantaged woman-owned small business must satisfy all conditions of a WOSB and have a net worth of less than $750,000, her adjusted gross annual income does not exceed $350,000 and the fair market value of all her assets does not exceed $6 million.

78.     Women business owners participating in the WOSB program must be certified.  Certification can be accomplished in two ways – through self-certification or through a third party certifier.

79.     Self-certification can be done by first registering in the Central Contractor Registration - the CCR – and the Online Representations and Certifications Application - ORCA - as a woman-owned small business.  Other documents will be requested by the contracting officer.  These documents will be used to validate that the business is an eligible small business, owned and controlled by one or more women.

80.     In addition, a WOSB or EDWOSB can be certified by a third party certifier.  A third party certifier is a federal agency, a state government, or a national certifying entity approved by the Small Business Administration to provide certifications of WOSBs or EDWOSBs.

81.     The SBA has placed certain limitations on a contractor's ability to subcontract any portion of a WOSB and EDWOSB set-aside contract if the amount exceeds $150,000.

82.     For example, for general construction contracts, the prime contractor must perform at least 15 percent of the work, not including the cost of the materials, with its own employees.  For construction by special trade contractors, the prime contractor must perform at least 25 percent of the work, not including the cost of the materials, with its own employees.

83.     Violations of the applicable subcontracting limitation may result in a variety of significant penalties, including suspension, debarment, administrative remedies, fines and even imprisonment.  If a fine is imposed as a result of a violation, the fine will be greater of either $500,000 or the dollar amount spent in excess of the permitted levels for subcontracting.

84.     Athena violated the limitations on subcontracting of WOSB and EDWOSB set asides by generally subcontracting 100 percent of the above WOSB and EDWOSB contracts to other companies.

E.     **SBA Subcontracting Opportunities**

85.     An alternative to seeking prime contracts is to explore subcontracting

opportunities.  Subcontracting with a prime contractor can be a profitable experience as well as a

growth opportunity for a small business.  The SBA maintains a database of subcontracting

opportunities called SUB-Net.

86.     Prime contractors receiving contracts greater than the simplified acquisition

threshold ($1.5 million for construction contracts) must agree in the contract that small

businesses, women-owned small businesses, HUBZone small businesses and small

disadvantaged businesses will have the maximum practical opportunity to participate as

subcontractors.

87.     As such, prime contractors are required to establish subcontracting plans

describing who and how small businesses will participate as subcontractors.  Government-wide

numerical subcontracting goals are established by statute for small disadvantaged businesses (5

percent), women-owned small businesses (5 percent), service disabled veteran owned small

businesses (3 percent) and HUBZone certified small businesses (3 percent).

88.     Although subcontracting goals are established government-wide, subcontracting

requirements for individual contracts are negotiated between the respective government agency

and the prime contractor.

89.     Using its fraudulently obtained 8(a), HUBZone, SDVOSB, WOSB certifications,

Athena submitted bids and was awarded the following subcontracts:

| | | | | |
|---|---|---|---|---|
| a. | 02/04/2011 | $907,000 | 2010065-0920000 | Dept. of the Army |
| b. | 06/22/2011 | $67,323 | 2010065.0920000 | Dept. of the Army |
| c. | 08/26/2011 | $32,000 | 2010065.0920000 | Dept. of the Army |
| d. | 09/12/2011 | $1,279,888 | 11076000 | Public Buildings Service |
| e. | 10/07/2011 | $5,886,907 | 2011074-1601000 | Dept. of the Navy |
| f. | 10/07/2011 | $775,159 | 2011074-1500200 | Dept. of the Navy |

| | | | | |
|---|---|---|---|---|
| g. | 10/07/2011 | $3,758,231 | 2011074-1400100 | Dept. of the Navy |
| h. | 12/07/2011 | $396,907 | 2011074-1600100 | Dept. of the Navy |
| i. | 12/07/2011 | $105,231 | 2011074-1500100 | Dept. of the Navy |
| j. | 04/06/2012 | $28,656 | 2011074-1500100 | Dept. of the Navy |
| k. | 04/06/2012 | $189,180 | 2011074-1500100 | Dept. of the Navy |
| l. | 05/08/2012 | $316,000 | 2011070-1200300 | Public Buildings Service |
| m. | 06/18/2012 | $65,659 | 2011074-1600100 | Dept. of the Navy |
| n. | 07/27/2012 | $70,393 | 2011074-1600100 | Dept. of the Navy |
| o. | 08/08/2012 | $156,149 | 2011074-1600100 | Dept. of the Navy |
| p. | 10/04/2012 | $49,000 | 2011074-1600100 | Dept. of the Navy |
| q. | 11/01/2013 | $44,171 | 2012076.0920100 | Public Buildings Service |
| r. | 12/06/2013 | $127,635 | 2012076.0920100 | Public Buildings Service |
| s. | 07/02/2014 | $33,600 | 2012076.0920100 | Public Buildings Service |
| t. | 07/28/2014 | $36,347 | 2012076.0920100 | Public Buildings Service |

## V.   REGULATORY FRAMEWORK

90.     The False Claims Act (FCA), at 31 U.S.C. §3729(a)(1)(A) (2010), provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the act of that person, plus a civil penalty, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

91.     The FCA, at 31 U.S.C. §3729(a)(1)(B), also provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the act of that person, plus a civil penalty, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."

92.     At 31 U.S.C. §3729(b), the FCA defines the term "knowingly", as applicable in the above provisions, to mean that a person:

(i)     has actual knowledge of the information;

(ii)    acts in deliberate ignorance of the truth or falsity of the information; or

(iii)   acts in reckless disregard of the truth or falsity of the information.

18

Further, it provides that no proof of specific intent to defraud is required.

93.     The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), at 12 U.S.C. §1833a, provides that any person who violates, or who conspires to violate, any one of certain listed provisions of the law is liable for a civil penalty of up to $1.1 million (as adjusted by 28 C.F.R. § 85.3(a)(6)). §1833a(b)(1).

94.     However, in the case of a continuing violation, the court may impose a penalty of up to $5.5 million (as adjusted by 28 C.F.R. § 85.3(a)(7)). §1833a(b)(2).

95.     In the case where a violation results in pecuniary gain or loss, the amount of the penalty may exceed the above-listed maximums, so long as the penalty does not exceed the gain or loss. §1833a(b)(3)(A).

96.     One of the provisions to which FIRREA applies is section 16(a) of the Small Business Act (15 U.S.C. §645(a)). 12 U.S.C. §1833a(c)(3). Section 16(a) imposes liability on anyone who "makes any statement knowing it to be false ... for the purpose of influencing in any way the action of the [Small Business] Administration, or for the purpose of obtaining money, property, or anything of value ... under this chapter ...." 15 U.S.C. §645(a).

## VI.    COUNTS

### Count I: False or Fraudulent Claims
### (31 U.S.C. §3729(a)(1)(A))

97.     Paragraphs 1 through 96 are incorporated as though fully set forth herein.

98.     Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States Government, false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1) (A) (2010), formerly § 3729(a)(1) (1986), specifically, the $22 million in invoices submitted by the Defendants to the Department

of Defense, Department of Interior, Department of Commerce, Department of Veterans Affairs, and General Services Administration.

99.     Because of the Defendants' acts, the United States is entitled to treble damages under the False Claims Act in the amount $66 million, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

### Count II: False Statements
### (31 U.S.C. §3729(a)(1)(B))

100.     Paragraphs 1 through 99 are incorporated as though fully set forth herein.

101.     The Defendants knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) (2010), formerly § 3729(a)(2) (1986), including the 8(a) Application to the SBA, the fraudulently obtained 8(a) certification submitted by the Defendants in its bids, the false ORCAs and false certifications of 8(a) compliance in the bids, and/or the false claims and certifications submitted for payment or in connection with its bids on contracts and/or claims for payment.

102.     The Defendants knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B) (2010), formerly § 3729(a)(2) (1986), including the HUBZone Application to the SBA, the fraudulently obtained HUBZone certification submitted by the defendants in its bids, the false ORCAs and false certifications of HUBZone compliance in the bids, and/or the false claims and certifications submitted for payment or in connection with its bids on contracts and/or claims for payment.

103.     The Defendants knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act,

31 U.S.C. § 3729(a)(1)(B) (2010), formerly § 3729(a)(2) (1986), including the SDVOSBC

Application to the SBA, the fraudulently obtained SDVOSBC certification submitted by the

Defendants in its bids, the false ORCAs and false certifications of SDVOSBC compliance in the

bids, and/or the false claims and certifications submitted for payment or in connection with its

bids on contracts and/or claims for payment.

104.     Because of the Defendants' acts, the United States is entitled to treble damages

under the False Claims Act in the amount $66 million, plus civil penalties of not less than $5,500

and up to $11,000 for each violation.

### Count III: Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) (12 U.S.C. §§ 1833a(a), (c)(3))

105.     Paragraphs 1 through 104 are incorporated as though fully set forth herein.

106.     By reason of the foregoing conduct, the Defendants knowingly made false

statements and submitted false documents to the SBA for the purpose of influencing its actions,

including obtaining 8(a), HUBZone, SDVOSBC, and WOSB certification, which is a thing of

value, in violation of 15 U.S.C. § 645(a).

107.     Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), Defendants are liable

for civil penalties.

### Count IV: Breach of Contract

108.     Paragraphs 1 through 107 are incorporated as though fully set forth herein.

109.     By reason of the foregoing conduct, the Defendants breached the aforementioned

contracts with the United States by submitting claims for payment under the contracts when they

failed to perform work in accordance with the terms and conditions of the contracts.

110.    By reason of the breach of contracts, the United States has sustained damages in an amount to be determined at trial.

### Count V: Unjust Enrichment

111.    Paragraphs 1 through 110 are incorporated as though fully set forth herein.

112.    By reason of the foregoing conduct and their violation of federal law, the Defendants were unjustly enriched and are liable to account for and pay such amounts, which are to be determined at trial, to the United States.

### PRAYER FOR RELIEF

113.    WHEREFORE, Plaintiff, the United States, demands judgment against Defendants jointly and severally as follows:

A.    Under Counts I and II (False Claims Act), $66 million for the $22 million in false claims paid by the United States, trebled as required by law, plus such civil penalties as are required by law, together with all such further relief as may be just and proper;

B.    Under Count III (FIRREA), a civil penalty of the maximum amount provided by law;

C.    Under Count IV (Breach of Contract), for an accounting and the amount of damages sustained by the United States, plus interest and costs, and expenses, and all such further relief as may be just and proper.

D.    Under Count V (Unjust Enrichment), for an accounting and the amount by which Defendants were unjustly enriched, plus interest and costs, and expenses, and all such further relief as may be just and proper;

E.      Such other relief as this Court may deem just and proper, together with interest and costs of this action.

                                   **FREIWALD LAW, P.C.**

                              By:   _____
                                   AARON J. FREIWALD, ESQUIRE
                                   GLENN A. ELLIS, ESQUIRE

# FREIWALD LAW

TRIAL LAWYERS
Aaron J. Freiwald
ajf@freiwaldlaw.com

January 5, 2017

## DOCUMENT UNDER SEAL

*Via Certified Mail*
*Return Receipt Requested*
Clerk US District Court
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17101

> **RE:   UNITED STATES OF AMERICA *ex rel.* WILLIAM SMITH v. ATHENA CONSTRUCTION GROUP, INC., AMBER PEEBLES and MELISSA SCHNEIDER**

Dear Clerk:

Enclosed please find an original and two (2) copies of a Complaint in the above-matter to be filed Under Seal, along with a CD containing a PDF version of the Complaint for electronic filing.  Also enclosed is a check in the amount of $400.00 representing your filing fee.  Kindly file the original and return one of the time-stamped copies to me in the enclosed envelope.

Thank you for your time and assistance in this matter.

Very truly yours,

AARON J. FREIWALD

AJF/jae
Enclosure