# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
*ex rel.* WILLIAM "BILL" SMITH, )
)
        Plaintiffs, )
)     Case No.: 1:18-cv-02080
v. )
)
ATHENA CONSTRUCTION GROUP, INC. )
)
        Defendant. )

## <u>REPLY</u>

COMES NOW YOUR DEFENDANT, Athena Construction Group, Inc. ("Athena") and replies to Relator's Opposition to Defendant Athena Construction Group, Inc.'s Motion to Dismiss, and Memorandum of Points and Authorities in Opposition to Defendant Athena Construction Group, Inc.'s Motion to Dismiss (together, "Relator's Opposition"), as follows:

## I.    <u>INTRODUCTION</u>

Relator's Opposition to Defendant Athena Construction Group, Inc.'s Motion to Dismiss is a lengthy document containing multiple pages of verbatim copying from earlier filed pleadings and extensive quotations from cases of limited precedential value. Despite the page count, Relator's Opposition fails to rebut any of Athena Construction Group, Inc.'s arguments and fails to address the most salient precedential case law cited by Athena Construction Group, Inc. in its Motion to Dismiss. As a result, Athena replies and prays this court dismiss the Third Amended Complaint against Athena with prejudice.

1

## II.   __LEGAL STANDARD__

In discussion of the Standard of Review in the case at bar, Relator posits that *U.S. ex rel Tran v. Comput. Scis. Corp.,* 53 F. Supp. 3d 104 (D.D.C. 2014) instructs that the particularity standard for fraud is relaxed in some cases, and that some fraud claims do not require a detailed allegation of all facts supporting each and every claim.  (Opposition page 7-8). However, the *Tran* case was decided in 2014, before the decisions in *Cimino v. Int'l Bus. Machines Corp*., No. 13-CV-00907 (APM), 2019 WL 4750259, at *4 (D.D.C. Sept. 30, 2019) (Relator must "state with particularity the circumstances constituting fraud or mistake.") and *U.S. ex rel PCA Integrity Associates, LLP v. NCO Financial Systems, Inc., et al*, No. 15-CV-00750 (RC), 2020 WL 686009 at *11 (Relator must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud and individuals allegedly involved in the fraud.")  Further, *Tran,* 53 F. Supp. 3d 104 was decided before the U.S. Supreme Court's seminal False Claims Act (FCA) case ruling in *Universal Health Servs., Inc. v. United States ex rel Escobar et al.,* 136 S. Ct. 1989, 2004 n.6 (2016) (FCA "plaintiffs must plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality.")[1]  While all three of these cited cases are discussed at length infra, Relator provides no post-*Universal Health Servs.* authority that stands for the proposition that a "fraudulent scheme" need not be plead with particularity required by Fed.R.Civ. P. 9(b).

---

[1] This case is often cited in abbreviation as *Escobar* in other decisions

III.       **ARGUMENT**

a. **The Third Amended Complaint fails to state a claim because it is time barred by the Statute of Limitations**

Defendant Athena renews its position on its Statute of Limitations arguments.  So as not to be accused of dishonesty for paraphrasing court documents that are clearly cited, Defendant will defer to the Court's review and conclusions of what those documents state.  Suffice it to note that Relator has not addressed any of the case law put forward by Defendant.

i. **Relator's claims which occur before January 18, 2015 are barred by the statute of limitations**

By way of clarification, the issue of relating back put forth by Defendant refers to whether the claims of the Second Amended Complaint related back to the original Complaint. The Court may take judicial notice that in the Complaint filed on January 10, 2017, Relator's claims against the lone Defendant, Athena, were for submission of  $22,000,000 in false invoices directly to a number of Federal agencies under a series of enumerated contracts (Complaint p. 19-20); for false statements on Athena's 8(a), HUBZone and Service Disabled Veteran Owned Small Business (SDVOSB) certification applications (Complaint p. 20-21); for violations of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (Complaint p. 21); for Breach of Contract (Complaint p. 21-22); and for Unjust Enrichment (Complaint p. 22).  In the Amended Complaint, filed November 21, 2017, Relator put forward one Count for violation of 31 U.S.C. §3729, alleging that Athena falsely represented its 8(a) status, falsely certified as a HUBZone concern and falsely represented its HUBZone status to the U.S. Government and "prime contractors," that Athena subcontracted 100% of its prime contract work, and that Athena did not do any work on four subcontracts, but "Athena would place an unexperienced employee

to sit at the job site."  Again, Athena was the only Defendant and the only contractor named in the Amended Complaint.  In the Second Amended Complaint, Relator added 13 named Defendants (all large business contracting companies) and 50 "John Doe" defendants and apparently four theories of recovery under the FCA: the "pass-through scheme," submission of false claims as a result of a fraudulent HUBZone application, a violation of the anti-kickback act, and conspiracy.  The retaliation claim from the Amended Complaint continued in the Second Amended Complaint. The Third Amended Complaint as filed has only four additional named defendants, but maintains all of the apparent theories of recovery from the Second Amended Complaint.

The Court can determine from the docket entries that when it required Relator to provide a copy of the proposed Second Amended Complaint, it was for Department of Justice review to determine if they would investigate further.  No leave of court was granted at that time to file the Second Amended Complaint so that it was at issue, but rather the filing was to place the matter on the record for Department of Justice review.  The Court *sua sponte* granted leave to amend by ordering the Second Amend Complaint unsealed and served on all the defendants on January 18, 2021. Under FRCP 15(a)(2), after once amending his complaint by right, Relator could only amend with leave of court.  Such leave of court was not granted until January 18, 2021.

Because Relator's Second Amended Complaint contained new and substantially different allegations of fraud, it does not relate back to the filing date of the original complaint.  Relator did not address any of Defendant's case law citations.  *See Jones v. Bernanke*, 557 F.3d 670 (D.C. Cir. 2009). *See also Hunt v. American Bank & Trust Co. of Baton Rouge, La.,* 783 F.2d 1011 (11th Cir. 1986) (Since counts concerned a separate incident of fraud, they did not relate back to the date of the original complaint dealing with the other transaction). *See also*

*ASARCO LLC v. Goodwin,* 756 F.3d 191 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014); *Zundel v. Holder,* 687 F.3d 271 (6th Cir. 2012); *Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950 (10th Cir. 2012); *Cleary v. Philip Morris Inc.,* 656 F.3d 511 (7th Cir. 2011).

Any claims that relate to violations of the FCA before January 18, 2015 thus are time barred by the statute of limitations.

### ii.   The Third Amended Complaint fails to state a claim because the "pass-through scheme" is barred by public disclosure

Relator, in his Opposition, does not address the allegations in Athena's Motion to Dismiss that the language of the Complaint filed in 2:16-cv-12950-BWA-JVM (E.D. La) in July 2016 is in numerous places identical to the language of the Second Amended Complaint (and carried over into the Third Amended Complaint).  The "pass-through" scheme attributed to Athena thus is identical, and one named Defendant is identical.

The E.D. La complaint, filed by the same counsel for Relator, shows that Ming/TM LLP was the original source for the alleged "pass-through" scheme.  As discussed *supra*, the E.D. La Complaint, which in sections is word for word identical to the Second Amended Complaint and the Third Amended Complaint, previously disclosed the "pass-through scheme" alleged to have been undertaken by Defendant Athena.  The Department of Justice declined to intervene in that case (as it has done now for the third time involving these same allegations against Athena). Defendant stands on its argument that Relator is barred from filing a False Claim Act complaint if the information is revealed as part of a pre-existing government investigation. [2]

---

[2] Compare paragraph 282 of the E.D. La Complaint ("Athena has engaged in small business fraud by falsely representing to Government agencies that it was performing small business eligible services when, in fact, it acted as a pass-through organization utilized by large contractors to circumvent the regulations and the law to obtain and

   iii.   **The Second Amended Complaint indicates that Smith is not the original source of the information related to Athena by his own allegations**

In his opposition, Relator has apparently conceded that the source of Relator's knowledge of the allegations is from an informant or informants as Relator does not address this point in his Opposition.

   b.   **The Third Amended Complaint fails to state a claim with the necessary particularity under Fed. R. Civ. P. 12(b)(6) and 9(b)**

Because Relator does not address Defendant Athena's arguments that Counts I, II, III and IV fail to meet the pleading standards of either Fed. R. Civ. P 12(b)(6) or 9(b)(6), Defendant stands on the arguments presented in its Motion to Dismiss.  To summarize, the Plaintiff must "state with particularity the circumstances constituting fraud or mistake." *Cimino* at *4 (D.D.C. Sept. 30, 2019).

Relator makes no attempt to identify the necessary particular facts for Counts I, II, III and IV.  Relator has also offered no explanation in his Opposition why he does not. Relator stands on the argument that if the Court will sift through more than 300 paragraphs, it can find the necessary allegations.

---

keep the Prime Contract that required small business participation") with paragraph 169 of the Third Amended Complaint at bar ("As alleged below,  Co-Defendants engaged in small business fraud by falsely representing to the government that it was performing small business eligible services when, in fact, it acted as a pass-through organization utilized by large contractors to circumvent the regulations and the law to obtain and keep the prime contract that required small business subcontracting.")

### c.   "Pass-Through" Scheme and fraud-in-the-inducement

For the purpose of addressing the arguments put forth in Relator's Opposition, Defendant Athena replies to Relator's argument that Athena submitted false claims and caused false claims to be presented.

For this analysis, Relator and Defendant agree that the statutory language of 31 U.S.C. §3729(a)(1)(A) and (B) apply. The parties diverge on the case law precedent that controls, and what is actually alleged in the Third Amended Complaint.

Relator's Opposition argues that his FCA claims are made under both fraudulent inducement theory (for the small business pass-through scheme) and the false certification theory (for the HUBZone certifications).

Relator alleges that each of the named large business defendants fraudulently induced the government to enter into construction contracts by falsely claiming that they would comply with their subcontracting plans, when in fact they intended to implement the small business pass-through scheme with Athena.  Relator argues that simply alleging a detailed pass-through scheme is sufficient to state a claim, and with the necessary particularity.  However, while Relator in his opposition points to 10 contracts awarded to the large business defendants that were awarded on the basis of a subcontracting plan that was premised on Defendant Athena doing substantial work.

However, Relator does not allege the contents or details of any of the required Subcontracting Plans, or whether Athena was the only subcontractor identified on each of those plans, or whether each Defendant submitted a contract specific or company wide small business contracting plan, or what the contents were of any reports submitted by any of the Defendants on any of the plans.

The Relator alleges that the Solicitation for the St. Elizabeth Tunnel Project (Third Amended Complaint, 170-195) required a submission of a Small Business Subcontracting Plan, with certain percentage goals for subcontracting.  Relator, however, does not allege to which goals Defendant Balfour Beatty agreed.  Further Relator alleges a $24.6 million contract was awarded to Balfour Beatty in September 2010[3], but Balfour Beatty did not approach Athena until February 2011. Likewise, Relator does not allege what representations were made regarding the small business subcontracting plan under that contract. Relator does allege in paragraph184 that Balfour Beatty fraudulently represented it was complying with the subcontracting plan when it awarded Athena a $1,279,888 subcontract.  Relator makes no allegation of what that representation was.  Relator's math fails as well, as Athena's portion of the subcontracted dollars was approximately 5.2 percent, which does not satisfy all of the goals of the alleged plan.[4]

Regarding the Walter Reed National Military Medical Center contract, Relator does not actually allege that there was a small business subcontracting plan requirement.  Relator alleges that Athena received a subcontract for $2,200,000, which was 0.3% of the value of the $640 million contract Relator alleges was awarded to the Clark/Balfour Beatty Joint Venture[5]. Relator alleges no details about any claims submitted by Clark/Balfour Beatty to any U.S. Government entity related to the Athena subcontract.

The third contract alleged to be subject to false claims by Relator is the Social Security Administration (SSA) contract (Third Amended Complaint, paragraphs 203-209).  Here, Relator

---

[3] In a table presented in paragraph 149 of the Third Amended Complaint, Relator alleges the Total Contract value for the St. Elizabeth Campus Tunnel contract was $32,486,046, which would have reduced the percentage value of the Athena contract to 3.9%.

[4] Again, Relator alleges that the Solicitation set the requirement for small business subcontracting plans with certain goals, but does not allege what Balfour Beatty's actual goals were as contracted.

[5] In a table presented in paragraph 149 of the Third Amended Complaint, Relator alleges the Total Contract Value for the Walter Reed Naval Military Medical Center contract was $753,732,157, which would have reduced the percentage value of the Athena contract to 0.29%.  Paragraph 170 alleges the $24.6 million amount.

alleges that Athena was awarded a $2,000,000 subcontract by Prime Contractor Hensel Phelps but which was intended for Component Assembly Systems, Inc. (CAS).  Again, there is no allegation that that contract contained small business subcontracting requirements or what those requirements were for the Prime, or what reports or statements Hensel Phelps made to the SBA or Social Security Administration.[6]

The fourth contract alleged to be subject to false claims is the BRAC 132 contract, which was awarded to Hensel Phelps with a total contract value of $24,802,963.  Relator alleges Athena was awarded a subcontract valued at $1,020,330, or 4.1% of the total contract value.  Once again, Relator makes no allegation that the contract had a small business subcontracting requirement, what the requirements of Hensel Phelps' Small Business Subcontracting Plan were, or what reports or statements Hensel Phelps made to the SBA or the U.S. Army Corps of Engineers.

The fifth contract alleged to be subject to false claims is the Camp Pendleton Naval Hospital (CPNH). While Relator alleges that Athena received a subcontract of $17.8 million, Relator does not even allege who the Prime Contractor was, let alone that the contract had a small business subcontracting requirement, what the requirements of the mystery prime's small business subcontracting plan were, or what reports or statements the prime made to the SBA.

The sixth contract alleged to be subject to false claims is the Russell Knox Building contract. Here relator alleges that Hensel Phelps was awarded a $32.5 million contract[7] of which it issued subcontracts valued at $8 million to Athena, or nearly 25% of the total contract value.

---

[6] Relator does not allege the value of the Prime Contract in paragraphs 203 to 209, but in a table presented in paragraph 149 of the Third Amended Complaint, Relator alleges the Total Contract Value for the SSA contract was $209,025,585, which would result in a percentage value of the Athena subcontract of 0.95%.

[7] In a table presented in paragraph 149 of the Third Amended Complaint, Relator alleges the Total Contract value for the Russell Knox contract was $33,348,863, which would have reduced the percentage value of the Athena contract to 23.9%.

Relator does allege the small business subcontracting goals for this project, but not what Hensel Phelps reported to the SBA, or what statements Hensel Phelps made to SBA.

The seventh contract alleged to be subject to false claims is the Fort Belvoir Nolan Building Parking Garage. A table at paragraph 149 of the Third Amended Complaint identifies a total contract value of $44,967,941.  Relator alleges that Athena received small business subcontracts totaling $5,545,090 for the project, or 12.3% of the total contract value.  Once again, Relator does not allege that the contract had a small business subcontracting requirement, what the requirements of the prime's small business subcontracting plan were, or what reports or statements the prime made to the SBA or the U.S. Army Corps of Engineers.

The eighth contract alleged to be subject to false claims is the Audie Murphy VA Hospital.  Relator alleges Athena received two prime contract awards totaling $7,336,050. However, Relator does not allege how much Athena subcontracted to its first tier sub, Barton Malow, nor how or why such a subcontract would constitute an inducement to a false claim.[8]

The ninth contract alleged to be subject to false claims is the United States Marine Corps University contract. Relator alleges that Prime Contractor CDM Smith/Coakley Williams JV was awarded a total contract value of $103,621,750 for the effort, and awarded Athena a $9,700,00 subcontract, or 9.3% of the total contract value.  Yet again, there is no allegation that the contract had a small business subcontracting requirement, what the requirements of the JV's small

---

[8] The Court can take judicial notice that Federal Acquisition Regulation (FAR) Clause 52.219-14 Limitations on Subcontracting sets a 15% self-perform requirement for small business prime contractors on small business set aside contracts. Relator does not allege whether this contract was a small business set-aside, whether FAR Clause 52.219-14 was included, nor what the value of any subcontracts to Barton Malow were.  Relator does not allege why having Barton Mallow serve as project manager for Athena would violate any regulation.

business subcontracting plan were, or what reports or statements the JV made to the SBA or the Naval Facilities Engineering Command.

The final of the ten contracts alleged to be subject to false claims is the Fort Belvoir VA Hospital project. Here Relator alleges that the Prime Contractor, Turner/Gilbane JV was awarded a $1.03 billion construction and issued subcontracts to Athena valued at $9,219,500, or 0.89% of the total contract value.  As with the majority of the 10 contracts alleged by Relator, there is no allegation that the contract had a small business subcontracting requirement, what the requirements of the JV's small business subcontracting plan were, or what reports or statements the JV made to the SBA or the U.S. Army Corps of Engineers.

To finally shed light on the falsity of Relator's rebuttal statement that the Third Amended Complaint identified ten contracts that were "awarded on the basis of a Subcontracting Plan that was premised upon Defendant Athena doing substantial work," there is in fact not a single actual allegation of fact to support this argument. Not only does the Relator not make a single allegation of a single fact that indicates that the Prime Contractors reached out to Athena before they submitted their bids, but Relator only alleges that 2 of the 10 contracts even had a small business subcontracting plan.

Beyond all of these missing allegations, Relator has not alleged how any of these activities satisfy the materiality requirement for pleading a FCA fraud in the inducement claim. As Judge Contreras discussed in *U.S. ex rel. PCA Integrity Associates, LLP v. NCO Financial Systems, Inc. et al*, 2020 WL 686009 (D.D.C. 2020), "…Rule 9(b) requires the pleader in an FCA fraud action to, "at a minimum, ... state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence

11

of the fraud' and 'individuals allegedly involved in the fraud.'" *Pencheng Si,* 71 F.Supp. 3d at 85.(quoting *Williams*, 389 F.3d at 1256).

Here, despite Relator's contrary contentions, Relator's pleading does not establish with the requisite particularity the time and place of the false misrepresentations, what constitutes the allegedly false claim for each discrete defendant, and what, precisely, "was retained or given up as a consequence of the fraud." *Williams*, 389 F.3d at 1256.

Relator's citation to *Tran,* 53 F. Supp. 3d 104 in support of the proposition is unpersuasive because, as noted before, *Tran,* 53 F. Supp. 3d 104 was decided before *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016) and does not consider the materiality requirements for FCA claims imposed by the Court. Relator also points to *Scollick ex rel United States v. Narula*, 2020 WL 6544734, at *11 (D.D.C. Nov.6, 2020) (Lamberth, J.) for the proposition that allegation of a pass-through scheme is sufficient to meet the pleading burdens of Fed. R. Civ. P 12(b)(6) and 9(b). However, a review of *Scollick*, 2020 WL 6544734 shows that the word "subcontract" does not appear in that opinion.  It does discuss a false registration scheme where individuals who were not Service Disabled Veterans owned or controlled small businesses that were registered as Service Disabled Veteran Owned Small Businesses (SDVOSBs) and those SDVOSBs received set aside contracts.  The facts in *Scollick*, 2020 WL 6544734 involved what the court describes as blatant lies, therefore not requiring a materiality test.  Without allegations of any sort of statement, report, or misrepresentation by the Prime Contractors, the analysis in *Scollick*, 2020 WL 6544734 does not apply to Relator's claims of a pass-through scheme involving Small Business Subcontracting Plans.

Further, Relator makes a patently false claim about precedent related to the materiality test regarding the pass-through scheme.  Relator, at page 34 of his Opposition, makes the

allegation that the D.C. Circuit has found that C.F.R. §52.219-9(k) is "sufficient to satisfy the *Escobar* materiality standard" citing *Tran*, 53 F. Supp.3d 104, 125.  This cannot be true because *Tran*, 53 F. Supp.3d 104 was decided on July 3, 2014 and *Escobar (Universal Health)* was not decided until June 16, 2016.

### d.  HUBZone Program and implied false certification theory of liability

Defendant renews its arguments from its Motion to Dismiss.

As a starting point, Relator in his opposition, stated that Athena has made 31 requests for payment pursuant to its HUBZone certification (Third Amended Complaint at paragraph 164). A plain reading of the table inserted at paragraph 164 shows that these documents listed aren't requests for payment, but are contract awards. Paragraph 165 alleges generally that Athena submitted claims for payment of over $87 million under those contracts.

A plain reading of the table at Paragraph 164 reveals that this is a list of contracts and certain transactions, and does not anywhere specifically identify payment requests or invoices. However, even if the Court wishes to equate "Transaction Value" with a payment request (which Athena does not), the table at paragraph 164 identifies only 7 discreet contracts, with start dates between September 2012 and May 2018, totaling $7,380,124 in "Sum of Contract's Trans." [9]

---

[9]

| Contract | "Sum of Contract's Trans." |
|---|---|
| 140G118D003 | $     25,000 |
| DOCSA130114BUO 004 | $   392,539 |
| HQ003414D0005 | $6,360,013 |
| INP16PX02649 | $     96,407 |
| INP15PC00316 | $     24,983 |
| ING12PC00063 | $   460,183 |
| W912HQ14P0070 | $     20,999 |
| | |
| TOTAL | $7,380,124 |

There are 30 versus 31 "transactions" listed, and the total of those "transactions" is $6,723,009. Thus, even if this Court accepts at the pleading stage that entries in the "Transaction Value" column indicate payments to Athena, the allegations are wildly wrong based on the Relator's own data.[10] This table does not indicate what date any of the "transactions" took place, nor does it indicate when Athena recertified for each contract award or payment.

Relator also fails to allege what Athena represented when it applied for its HUBZone certification and recertifications. Relator at Paragraph 154 of the Third Amended Complaint alleges that Athena "fraudulently included in its employee roster individuals" who were not employees or lived in a HUBZone. Keeping an employee roster, fraudulent or not, is not a false claim. Submitting a false list of employees to the Government for certification would be, and Relator does not actually allege that. At Paragraph 155, Relator again alleges facts related to an "Employee List" and provides details about employee addresses, but does not allege that the employees in question were actually submitted by Athena as part of its application for HUBZone certification, nor which other employees were submitted for consideration during the application process.

In Paragraph 156, concerning HUBZone employees Mary Frezza and Sarah Anderson, Relator alleges that Athena "falsely" certified that they were employees because neither was a "full-time Athena employee working at least 40 hours a month." Beyond the fact that Relator does not allege how or when or by what means Athena made this false certification, the Court

---

[10] The source of the chart presented at Paragraph 164 is not otherwise identified.

can take judicial notice that the definition of "employee" in 13 C.F.R. §126.103 does not require an individual to work full time.[11]

Relator in Paragraph 157 of the Third Amended Complaint alleges the number of employees Athena had in each year from 2011 through 2017, and whether or not Relator believes

---

[11] From 13 C.F.R. §126.103 *Employee* means all individuals employed on a full-time, part-time, or other basis, so long as that individual works a minimum of 40 hours during the four-week period immediately prior to the relevant date of review, which is either the date the concern submits its HUBZone application to SBA or the date of recertification. SBA will review a concern's payroll records for the most recently completed pay periods that account for the four-week period immediately prior to the date of application or date of recertification in order to determine which individuals meet this definition. To determine if an individual is an employee, SBA reviews the totality of circumstances, including criteria used by the Internal Revenue Service (IRS) for Federal income tax purposes and the factors set forth in SBA's Size Policy Statement No. 1 (51 FR 6099, February 20, 1986).

(1) In general, the following are considered employees:

(i) Individuals obtained from a temporary employee agency, leasing concern, or through a union agreement, or co-employed pursuant to a professional employer organization agreement;

(ii) An individual who has an ownership interest in the concern and who works for the concern a minimum of 40 hours during the four-week period immediately prior to the relevant date of review, whether or not the individual receives compensation;

(iii) The sole owner of a concern who works less than 40 hours during the four-week period immediately prior to the relevant date of review, but who has not hired another individual to direct the actions of the concern's employees;

(iv) Individuals who receive in-kind compensation commensurate with work performed. Such compensation must provide a demonstrable financial value to the individual and must be compliant with all relevant federal and state laws.

(2) In general, the following are not considered employees:

(i) Individuals who are not owners and receive no compensation (including no in-kind compensation) for work performed;

(ii) Individuals who receive deferred compensation for work performed;

(iii) Independent contractors that receive payment via IRS Form 1099 and are not considered employees under SBA's Size Policy Statement No. 1; and

(iv) Subcontractors.

they resided in a HUBZone.  However, Relator does not identify on what date of each year he took his census, and more importantly, he does not identify how Athena communicated, submitted, or reported this information to any government agency and when Athena communicated, submitted, or reported this information to any government agency.  At best this is an allegation of a census taken by Relator (without a definition of the criteria for identifying employees beyond where the Relator thought they lived).  There is no connection to any claim, statement, document, report, or representation made by Athena. Further, and perhaps conclusively, the court may take judicial notice that under the HUBZone regulation, the SBA will review a concern's payroll records for the most recently completed pay periods that account for the four-week period ***immediately prior to the date of application or date of recertification in order to determine which individuals meet this definition*** (emphasis added).  There is no allegation anywhere in the Third Amended Complaint that Athena *ever* falsified its payroll records.  In fact, because Relator alleges that Athena received its HUBZone certification in 2011, and was recertified each year from 2012 through 2017, in the absence of any other allegation, ***Relator is impliedly alleging that SBA reviewed Athena payroll records for the four weeks prior to the date of the original application and each recertification, and determined that the individuals identified as employees by Athena met the SBA definition of "employee" for the HUBZone program certification.***

### e.  Conspiracy

Defendant renews its arguments regarding allegations of a conspiracy that violated the FCA.  For claims of civil conspiracy, there can be no liability for a conspiracy unless there is an independently actionable ground for liability, *Pencheng Si,* 71 F.Supp. 3d at 98.  Because Relator has failed to successfully allege any violation of the FCA statute, no conspiracy can exist. *U.S. ex*

16

*rel PCA Integrity Associates, LLP v. NCO Financial Systems, Inc., et al*, No. 15-CV-00750 (RC), 2020 WL 686009 at *25.

### f.   Failure to State a Claim for Retaliation – Count V

Defendant renews its arguments related to the retaliation claim.

In its Opposition, Relator has ignored the 10th Circuit's persuasive ruling in 2018 that the FCA's retaliation claims cannot arise post-termination.  "We conclude that the False Claims Act's anti-retaliation provision unambiguously excludes relief for retaliatory acts occurring after the employee has left employment. So, our inquiry ends there. Because Potts alleges that the Center retaliated against her after she resigned her employment, she cannot have a cognizable claim under the statute." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 618 (10th Cir. 2018) (footnotes excluded).  Relator also ignores Judge Kessler's decision in *U.S. ex rel. Head v. Kane Co.*, F. Supp.2d 186 (D.D.C. 2011).  "The plain language of this phrase clearly establishes that Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job. Relator has not provided the Court with any persuasive authority that would support a contrary ruling. For the foregoing reasons, the Court holds that Section 3730(h) does not apply to retaliatory actions Defendant Kane Company allegedly took against Relator after his employment with the Company ended and which did not involve 'the terms and conditions of [his] employment.' Accordingly, the Court will grant Defendants' Motion and dismiss this claim for failure to state a cause of action under Rule 12(b)(6)." *U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 208 (D.D.C. 2011) (footnotes excluded, emphasis in the original).

Every one of Relator's case authority citations is distinguishable from the case at bar. First, none of the cases cited by Relator that stand for the proposition that a post-employment retaliation claim can be pled are from the D.C. Circuit. Relator does cite to *U.S. ex rel. Lott v. Not-for-Profit-Hosp. Corp.*, 296 F. Supp. 3d 143 (D.D.C. 2017) quoting U.S. ex rel. *Yesudian v. Howard Univ.*, 153 F.3d 731 (D.D.C. 1998), but neither stands for the proposition that employees can state a claim for retaliation under the FCA for post-employment actions by the employer.

Second, four of Relator's cited cases involve District Court cases in other Circuits where the courts ruled that a party could state a claim for post-employment retaliation under the FCA where a former employer directly interfered with the former employee's potential future employers.  In *Ortino v. Sch. Bd. of Collier Cnty.*, 2015 WL 1579460, (M.D. Fl. 2015) the terminated employee claimed retaliation of the former employer interfering with job applications to prospective employers. In *Haka v. Lincoln Cnty.*, 544 F.Supp.2d 895 (W.D. Wis. 2008) the terminated employee was refused for rehire by the former employer. In *U.S. ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, 2016 WL 3855560 (D. Kan. 2016) the terminated employee pled that the former employer was interfering with his prospective employment by making false statements. Finally, in *Fitzsimmons v. Cardiology Assocs. of Fredericksburg Ltd.*, 2015 WL 4937461(E.D.Va 2015), the former employer refused to honor the continuing provisions of the former employee's employment agreement post termination.  None of those fact patterns resemble the allegations of the Relator in the case at bar.

Third, Relator does cite two cases where District Courts have in dicta indicated that a post-employment retaliation claim might be stated for a frivolous claim or counterclaim by a former employer, but both cases were dismissed and neither court actually ruled on the viability

of such a claim.  In *Glynn v. Impact Sci. Tech*., Inc. 807 F.Supp.2d 391 (D. Md. 2011), the Plaintiff Glynn, a former employee of Defendant, brought a FCA retaliation suit against Defendant.  Defendant counterclaimed alleging breach of contract, misappropriation of trade secrets, breach of fiduciary duty, conversion, defamation, tortious interference, violation of New Hampshire consumer protection statute, unjust enrichment, and civil conspiracy.  The court, citing to a Fair Labor Standards Act case, opined, "[t]o establish a claim for post-termination retaliation, Glynn must demonstrate that IST's counterclaims were brought 'with a retaliatory motive and without a reasonable basis in fact or law.' *Darveau v. Detecon, Inc.* 515 F.3d 334, 341 (4th Cir. 2008) (citing *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983))."[12] The court found that Glynn's retention of Defendant's documents, potential breach of employment and non-compete agreements, as well as Glynn's competitive activities provided legitimate, non-retaliatory bases for the counter claims.

In *Tang v. Vaxin, Inc.* 2015 WL 1487063, (N.D. Ala. 2015), the court dismissed a former employee's claim for post-termination retaliation under the FCA, arising from a counterclaim by the former employer.  "One could characterize a frivolous post-termination counterclaim as harassment under 31 U.S.C. § 3730(h)(1). However, plaintiff's legally conclusory statement that Vaxin's counterclaims "lack merit" is insufficient even under a liberal standard. In *Ramos v. Hoyle*, No. 08–21809–CIV, 2009 WL 2849093, at *2 (S.D.Fla.2009), the court allowed an FLSA

---

[12] *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 103 S.Ct. 2161, L.Ed.2d 277 (1983) holds that the filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the National Labor Relations Act.

retaliation claim to arise from a counterclaim that "had no basis in law or fact." Without endorsing that standard, the court notes that plaintiff does not specify whether Vaxin has any factual basis for its counterclaims. Therefore, plaintiff's claim for retaliatory counterclaims is due to be dismissed." *De-Chu Christopher Tang v. Vaxin, Inc.*, No. 2:13-CV-401-SLB, 2015 WL 1487063, at *5 (N.D. Ala. Mar. 31, 2015). The court also opined, "[t]he FCA would be quite a weapon if it allowed a terminated employee to sue his or her former employer and gave the employee another cause of action every time the employer counterclaimed (in effect, granting the employee immunity from suit)." *De-Chu Christopher Tang v. Vaxin, Inc.*, 2015 WL 1487063, at *5.

Relator here seeks the weaponization of the FCA against an award winning, Top Secret-cleared, woman-owned, 8(a) certified, HUBZone, SDVOSB.

Defendant rejects each and every characterization of any collateral lawsuits between Relator and Defendant, and the court may take judicial notice of the actual pleadings in each case.[13]

### g.  Leave to Amend

Defendant opposes Relator's request for leave to amend his pleadings on the grounds that the Third Amended Complaint represents Relator's fourth attempt to plead the case. The case has been, over four years, a series of attempts to find a cause of action where none exists. To continue to have this case and the baseless allegations hanging over the Defendant's head causes severe hardship and prejudice to Defendant. While leave to amend is to be granted liberally, it is

---

[13] To the extent that the court wishes to inquire about the specifics of Relator's allegations and conclusions about the nature of the various collateral lawsuits to which he refers, Defendant requests leave of court to brief those matters separately with an extended page limit.

not an abuse of discretion for a court to deny leave to amend for repeated failure to cure pleading deficiencies.[14]

### h.  Costs

The Defendant wishes to withdraw its request for costs under the FCA without prejudice at this time so that the issue may be examined in a more fulsome fashion and under a separate motion following the Court's ruling in this matter.

### IV.    Conclusion

For all of the forgoing reasons, Defendant Athena Construction moves this court dismiss the Third Amended Complaint with prejudice.

Respectfully Submitted,

\_\_\_\_\_/s/_____
Milton C. Johns, VA Bar No. 42305
D.D.C. Attorney Number VA072
Executive Law Partners, PLLC
11130 Fairfax Boulevard, Suite 303
Fairfax, Virginia 22033
mjohns@xlppllc.com
Telephone: (571) 500-1010
Fax: (571) 408-8102
*Counsel for Athena Construction Group, Inc*

---

[14] If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as **undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment**, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) emphasis added.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 2, 2021, the foregoing was filed via the CM/ECF

system and an electronic copy of Defendant's Reply to Plaintiff's Opposition to the Motion to

Dismiss the Third Amended Complaint was served on the following via a notice of electronic

filing (NEF):

John Truong
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
John.Truong@usdoj.gov
*Counsel for United States*

Andrew M. Miller
W. Scott Simmer
Baron & Budd, P.C.
600 New Hampshire Avenue, N.W., Suite 10-A
Washington, D.C. 20037
amiller@baronbudd.com
ssimmer@baronbudd.com
*Counsel for William Smith*

Glenn Andrew Ellis
FREIWALD LAW, P.C.
1500 Walnut Street
18th Floor
Philadelphia, PA 19102
gae@freiwaldlaw.com
*Counsel for William Smith*

Thomas M. Craig
FH+H, PLLC
1751 Pinnacle Drive
Suite 1000
Tysons, VA 22102
tcraig@fhhfirm.com
*Counsel for Athena Construction Group, Inc.*

_____/s/_____
Milton C. Johns, VA Bar No. 42305

D.D.C Attorney Number VA072
Executive Law Partners, PLLC