**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. WILLIAM "BILL" SMITH, | ) ) ) | |
| Plaintiff-Relator, | ) ) | |
| v. | ) ) | Case No. 18-cv-2080 (APM) |
| ATHENA CONSTRUCTION GROUP, INC., *et al.*, | ) ) ) | |
| Defendants, | ) ) | |

**PLAINTIFF-RELATOR'S MOTION FOR PARTIAL RECONSIDERATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD............................................................................................................. 4

ARGUMENT ....................................................................................................................... 4

I.     The Court Should Reconsider Its Public Disclosure Decision. .......................................... 5

     A.  Athena Failed to Establish That the *Ming/TM* Case Publicly Disclosed the SAC's Pass-Through Allegations........................................................................................... 5

     B.  In Any Event, The Public Disclosure Bar Is Inapplicable Because Relator Is An Original Source Of The Pass-Through Allegations..................................................... 9

        1. Relator disclosed the pass-through claims to the Government before the public disclosure..................................................................................................... 9

        2. Relator disclosed the pass-through information to the Government prior to filing the SAC. ....................................................................................................... 10

II.    The Court Should Reconsider Its Dismissal Of The Pass-Through Claims For Lack Of Causation................................................................................................................... 12

III.   The Court Erred In Assuming That Relator's Pass-Through Claims Against Defendants Did Not State Implied False Certification Claims. .......................................................... 18

CONCLUSION................................................................................................................... 20

STATEMENT PURSUANT TO LOCAL RULE 7(m) ............................................................... 21

CERTIFICATE OF SERVICE................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

Cause of Action v. Chicago Transit Auth.,
   815 F.3d 267 (7th Cir. 2016) .............................................................................. 7

Chattanooga–Hamilton Cty. Hosp. Auth.,
   782 F.3d 260 (6th Cir. 2015) .............................................................................. 7

Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,
   559 U.S. 280 (2010) ........................................................................................... 5

Judicial Watch v. U.S. Dep't of Army,
   466 F. Supp. 2d 112 (D.D.C. 2006) ................................................................... 4

Kennard v. Comstock Res., Inc.,
   363 F.3d 1039 (10th Cir. 2004) ......................................................................... 8

Rockwell Intern. Corp. v. United States,
   549 U.S. 457 (2007) ......................................................................................... 11

Rosenberg v. U.S. Dep't of,
   Def., 442 F. Supp. 3d 240 (D.D.C. 2020) .......................................................... 4

Schindler Elevator Corp. v. U.S. ex rel. Kirk,
   536 U.S. 401 (2011) ........................................................................................... 5

Segar v. Smith,
   738 F.2d 1249 (D.C. Cir. 1984) ......................................................................... 6

United States ex rel. Beauchamp v. Academy Training Ctr.,
   816 F.3d 37 (4th Cir. 2016) ............................................................................... 6

United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.,
   393 F.3d 1321 (D.C. Cir. 2005) ................................................................... 13, 16

United States ex rel. Brooks v. Stevens-Henager Coll., 305 F. Supp. 3d 1279, 1299-300 (D. Utah
   2018) ................................................................................................................. 16

United States ex rel. Cantekin v. Univ. of Pittsburgh,
   192 F.3d 402 (3d Cir. 1999)............................................................................... 7

United States ex rel. Cimino v. International Business Machines Corp.,
   3 F.4th 412 (D.C. Cir. 2021)............................................................... 13, 14, 16, 17

*United States v. CSL Behring, LLC,*
     158 F. Supp. 3d 782 (E.D. Mo. 2016).................................................................. 11

*United States ex rel. Foreman v. AECOM,*
     19 F.4th 85 (2d Cir. 2021) ................................................................................... 7

*United States ex rel. Hendow v. Univ. of Phoenix,*
     461 F.3d 1166 (9th Cir. 2006) ............................................................................. 13

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
     498 F. Supp. 2d 25 (D.D.C. 2007) ....................................................................... 11

*United States v. Honeywell Int'l Inc.,*
     502 F. Supp. 3d 427 (D.D.C. 2020) ............................................................... 13, 14

*United States ex rel. LeBlanc v. Raytheon Co.,*
     913 F.2d 17 (1st Cir. 1990) ................................................................................... 8

*United States ex rel. Little v. Shell Exploration Prod. Co.,*
     602 Fed. Appx. 959 (5th Cir. 2015) ..................................................................... 7

*United States ex rel. Marcus v. Hess,*
     317 U.S. 537 (1943)............................................................................................. 13

*United States ex rel. Maxwell v. Kerr–McGee Oil & Gas Corp.,*
     540 F.3d 1180 (10th Cir. 2008) ........................................................................... 7

*United States ex rel. Meyer v. Horizon Health Corp.,*
     565 F.3d 1195 (9th Cir. 2009) ............................................................................. 7

*United States ex rel. Moore v. Pennrose Properties, LLC,*
     No. 3:11-CV-121, 2015 WL 1358034 (S.D. Ohio Mar. 24, 2015)........................... 8

*United States ex rel. Oliver v. Philip Morris USA Inc.,*
     763 F.3d 36 (D.C. Cir. 2015) ............................................................................... 5

*United States ex rel. Rost v. Pfizer, Inc.,*
     507 F.3d 720 (1st Cir. 2007)............................................................................. 7, 8

*United States ex rel. Sanchez v. Abuabara,*
     No. 10-cv-61673, 2012 WL 1999527 (S.D. Fla. June 4, 2012)................................ 6

*United States v. Science Applications International Corporation,*
     626 F.3d 1257 (D.C. Cir. 2010) ........................................................................... 18

*United States ex rel. Scutellaro v. Capitol Supply, Inc.,*
     No. 10-cv-1094 (BAH), 2017 WL 1422364 (D.D.C. Apr. 19, 2017)........................ 9

*United States v. Shah,*
    44 F.3d 285 ..................................................................................... 15

*United States ex rel. Sonnier v. Standard Fire Ins. Co.,*
    84 F. Supp. 3d 575 (S.D. Tex. 2015) ............................................... 11

*United States ex rel. Tran v. Computer Scis. Corp.,*
    53 F. Supp. 3d 104 (D.D.C. 2014) .............................................. 17,19

*United States ex rel. Wildhirt v. AARS Forever, Inc.,* No. 09 C 1215, 2011 WL 5373985, at *3
    (N.D. Ill. Nov. 4, 2011) ................................................................... 16

*United States ex rel. Williams v. NEC Corp.,*
    931 F.2d 1493 (11th Cir. 1991) .......................................................... 7

*United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.,*
    777 F.3d 691 (4th Cir. 2015) .............................................................. 7

*United States ex rel. Wood v. Allergan, Inc.,*
    246 F. Supp. 3d 772 (S.D.N.Y. 2017) ................................................ 8

*Universal Health Servs. v. U.S. ex rel. Escobar,*
    579 U.S. 176 (2016) ......................................................................... 18

**Regulations**

31 U.S.C. § 3730(b)(2) ............................................................................ 11

31 U.S.C. § 3730(e)(4)(B) ...................................................................... 11

31 U.S.C. § 3730(e)(4)(B)(i) ........................................................ 9, 10, 11

31 U.S.C. § 3730(e)(4)(B)(ii) ........................................................... 9,11

31 U.S.C. § 3739(e)(4) .............................................................................. 6

Pub. L. No. 111-148 .................................................................................. 6

Pub. L. No. 111-152, 124 Stat. 1029 (2010) ............................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 6

Federal Rule of Civil Procedure 54(b) ................................................... 1, 4

**Other Authorities**

37 Am.Jur.2d, Fraud and Deceit, § 478 ........................................................................... 16

Restatement (Second) of Torts § 525 (1977)................................................................. 13

Restatement (Second) of Torts § 530(1) (1977) ........................................................... 13

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiff-Relator ("Relator") William Smith respectfully moves for partial reconsideration of this Court's March 25, 2022 Order insofar as that order granted the motions to dismiss the pass-through claims against Defendants Athena, Balfour Beatty, and Barton Malow (collectively, "Defendants"). *See* Memorandum Opinion and Order, ECF No. 107 ("Mem. Op.") at 16-29. The Court concluded that the pass-through claims against Athena were barred by public disclosure. And, after incorrectly assuming that Relator's pass-through claims against Defendants were based only on fraudulent inducement (and not implied false certification), the Court concluded those claims should be dismissed for failure to allege but-for causation. Both of those holdings are premised on legal error.

As to the public disclosure bar, Defendant Athena failed to meet its burden of demonstrating that there was a prior *public* disclosure (as opposed to a disclosure to the Government) of the allegations in Relator's Second Amended Complaint ("SAC"). The *Ming/TM* action Defendants (and this Court) rely upon was not unsealed, and therefore not publicly disclosed, until *after* Relator filed his SAC.

In addition, this Court's dismissal of the pass-through claims on causation grounds either misunderstood Relator's fraudulent inducement claim, which is based on a false promise to comply with small business subcontracting requirements, or misconstrued the causation standard as it applies to fraudulent inducement claims based on false promises. Either way, particularly since Relator was deprived of an opportunity to brief the causation issue that the Court raised *sua sponte*, reconsideration is warranted.

## BACKGROUND

The full background of this case is set forth in this Court's March 25, 2022 Memorandum Opinion and Order ("Mem. Op."), Mem. Op. at 2-10, and Plaintiff's Memoranda in Opposition to the Defendants' Motions to Dismiss (Relator's Opp. to Athena Motion to Dismiss, ECF No. 71 at 2-5; Relator's Opp. to Balfour Beatty Motion to Dismiss, ECF No. 92-2 at 206; Relator's Opp. to Barton Malow Motion to Dismiss, ECF No. 99-2 at 2-5). Relator provides only a brief summary here of additional background that is relevant to this motion:

After Relator's case was transferred to this Court, Relator sought to file a SAC under seal based on newly discovered evidence. The Court held a telephonic hearing on September 28, 2018, to discuss Relator's newly discovered evidence and whether an additional seal period was required to afford the Government adequate time to investigate the new evidence. ECF No. 42 at 4-5. During the hearing, Relator's counsel explained that Relator had discovered in his possession an external hard drive of internal Athena documents that "not only supported, in detail, the existing fraud that had been alleged in the original complaint and in the amended complaint, but also a whole new set of allegations" related to the fraudulent scheme. *Id.* at 7-8. Relator's counsel explained that, because the Government did not have access to these documents when it previously investigated the matter for purposes of deciding whether to intervene, *id.* at 10, counsel notified the Government of those documents in May 2018, and then, in July 2018, provided the Government "an overview" of those documents, *id.* at 7-8. At the close of the hearing, the Court instructed the United States to review Relator's proposed SAC and share its view as to whether the SAC contained new claims that would require additional investigation, warranting a seal, or was "simply a refinement of the allegations that are already in the complaint." *Id.* at 15-16.

On October 17, 2018, the United States stated that it had reviewed the "new allegations [in the SAC] and 'believes [that] a new investigatory period is warranted,'" and therefore requested

the Court to direct Relator to file the SAC under seal. ECF No. 38. Thereafter, on October 19, 2018, the Court ordered Relator to file the SAC under seal and granted the United States an additional investigatory period of four months. On October 22, 2018, Relator filed the SAC under seal, along with eighty-three exhibits, many of which support the pass-through allegations. ECF No. 41.

After the Government subsequently declined to intervene, Athena moved to dismiss, arguing, among other grounds, that the public disclosure bar required dismissal, ECF No. 69 at 8-10, and Defendants Athena, Balfour Beatty and Barton Malow moved to dismiss the pass-through claims on various grounds, Athena Mem., ECF No. 72 at 7-11; Balfour Mem., ECF No. 103 at 8-18; Barton Malow Mem., ECF No. 104 at 9-14. None of the Defendants sought to dismiss Relator's pass-through claims on causation grounds.

As the basis for its public disclosure argument, Athena argued that another *qui tam* case pending against it in the Eastern District of Louisiana, *United States ex rel. Ming/TM, LLP vs. Clark McCarthy Healthcare Partner, et al.*, 2:16-cv-12950 (E.D. La.) ("*Ming/TM*"), "previously disclosed 'the pass-through scheme'" alleged by Relator here. Athena Mem., ECF No. 69 at 9; ECF No. 72 at 5. Athena, however, did not inform the Court that *Ming/TM*, which was initially filed under seal on July 19, 2016, was not unsealed until June 10, 2019, which was *after* Relator's SAC was filed. *See Ming/TM* docket (attached here as Exhibit A), Nos. 1 and 20.

On March 25, 2022, this Court partially granted the pending motions, dismissing Relator's claims except for his HUBZone and retaliation claims, holding (a) that the public disclosure bar precluded the pass-through allegations against Athena because the *Ming/TM* case publicly disclosed those allegations, Mem. Op. at 17, and Relator failed to establish he was an original source, *id.* at 22, and (b) that Relator's pass-through allegations against Defendants Athena,

Balfour Beatty, and Barton Malow, which the Court assumed were solely based on fraudulent inducement, *id.* at 12, failed to adequately allege causation, *id.* at 22-29.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), this Court may revise an interlocutory order at any time prior to entry of final judgment. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Rule 54(b) "recognizes [the court's] inherent power to reconsider an interlocutory order 'as justice requires.'" *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 252 (D.D.C. 2020). The "as justice requires" standard allows courts to incorporate a range of considerations. Reconsideration may be based on information that "may not constitute a change in the actual facts of the case, [but] does constitute a change in the court's awareness of the circumstances." *Judicial Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 124 (D.D.C. 2006).

## ARGUMENT

This Court should exercise its discretion to reconsider the dismissal of Relator's pass-through claims against Athena and its co-defendants, which was the result of two discrete legal errors. First, Athena failed to meet its burden of establishing that the public disclosure bar applies here. The *Ming/TM* complaint, on which Athena relies, was not unsealed until *after* Relator's SAC was filed. As a matter of law, therefore, the *Ming/TM* complaint cannot have publicly disclosed the allegations in Relator's SAC. Thus, the pass-through claims against Athena were improperly dismissed.

Second, after declining to consider Relator's pass-through claims against Athena and its co-defendants based on implied false certification, the Court improperly dismissed for lack of

causation the pass-through claims against Defendants based on the theory of fraudulent inducement. The Court either misunderstood Relator's fraudulent inducement claim to be based on pass-through agreements between Defendants, rather than on Defendants' false promises to comply with small business subcontracting requirements, or misconstrued the causation standard as it applies to fraudulent inducement claims based on false promises. That error warrants reconsideration, especially in light of the fact that Relator was never given an opportunity to explain why his complaint adequately alleges causation because the Court *sua sponte* raised that issue as grounds for dismissal.

## I.     The Court Should Reconsider Its Public Disclosure Decision.

### A.     Athena Failed to Establish That the *Ming/TM* Case Publicly Disclosed the SAC's Pass-Through Allegations.

The FCA's public disclosure bar is the product of 1986 amendments, which replaced the overbroad "government knowledge" bar with the public disclosure provision, which was designed to "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits," *Schindler Elevator Corp. v. United States ex rel. Kirk*, 536 U.S. 401, 413 (2011), "brought by opportunistic litigants seeking to capitalize on public disclosures." *United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 39 (D.C. Cir. 2015).[1] Relevant here, the bar is triggered when a relator's allegations of fraud are "substantially the same" as those already *publicly disclosed* in a "[f]ederal criminal, civil, or administrative hearing in which the Government or its

_____

[1]The prior "government knowledge" bar was enacted in 1943 in response to a Supreme Court decision allowing a relator to recover a reward in an FCA case purportedly based upon allegations from an unsealed indictment. *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 300 (2010) (recounting history and purpose of "government knowledge" and "public disclosure" provisions). When the "government knowledge" bar was replaced with the public disclosure bar in 1986, "the inquiry shifted from whether the relevant information was known to the government to whether that information was publicly disclosed in one of the channels specified by the statute." *Oliver*, 763 F.3d at 42.

agent is a party," unless the relator is an "original source" who brings forward information that is "independent" of, and "materially adds" to, the public disclosure. 31 U.S.C. § 3739(e)(4) (2010).[2] Although the public disclosure bar used to be jurisdictional, the public disclosure bar is now an affirmative defense. *See, e.g.*, *United States ex rel. Beauchamp v. Academy Training Ctr.*, 816 F.3d 37, 40 (4th Cir. 2016) ("Post-amendment, the public-disclosure bar is a grounds for dismissal—effectively, an affirmative defense— rather than a jurisdictional bar."); *see also Segar v. Smith*, 738 F.2d 1249, 1298 (D.C. Cir. 1984) (defendant bears the burden of proof on an affirmative defense).

Here, Athena invoked the public disclosure bar in its motion to dismiss, arguing that the pass-through allegations were publicly disclosed by the complaint in the *Ming/TM* action, which raised similar fraud allegations against Athena. *See* Athena's MTD, ECF No. 69 at 7-8. Over Relator's opposition, this Court agreed, concluding that the allegations in *Ming/TM* were sufficiently similar to Relator's allegations in the SAC that they "provided the government sufficient notice of [the pass-through fraud] scheme such that further investigation would have revealed similar instances of fraud." Mem. Op. at 19.

Athena, however, failed to satisfy its burden that the *Ming/TM* allegations were publicly disclosed. Even assuming that this Court were correct that the allegations in *Ming/TM* were

---

[2] The 2010 amendments narrowed "hearings" to those in which the Government or its agent is a party; replaced the "based upon" threshold with "substantially the same" (effectively adopting the majority interpretation of the prior term); broadened the original source exception by replacing the "direct knowledge" limitation with the expansive "materially adds" formulation; and removed language denoting it as a "jurisdictional" bar (*i.e.*, under Fed. R. Civ. P. 12(b)(1), which does not assume the complaint's allegations to be true), while concomitantly giving the government the right to object to dismissal under the new bar. *See* Pub. L. No. 111-148, Title X, § 10104(j)(2), 124 Stat. 1119, 901-02 (2010), as amended by Pub. L. No. 111-152, 124 Stat. 1029 (2010). In short, the amendments "broadened the ability of relators to commence qui tam lawsuits under the Act enormously." *United States ex rel. Sanchez v. Abuabara*, No. 10-cv-61673, 2012 WL 1999527, at *2 (S.D. Fla. June 4, 2012).

sufficient to put the Government on notice to investigate Relator's alleged pass-through fraud scheme involving Athena, the complaint in *Ming/TM*, as a matter of law, could not constitute a prior *public* disclosure of the allegations in Relator's SAC. That is because the *Ming/TM* complaint was not unsealed and publicly filed until June 10, 2019, which was *after* Relator's SAC was filed on October 22, 2018. Thus, the allegations in the *Ming/TM* action were not publicly disclosed prior to Relator's SAC.[3] As a result, Athena failed to establish that the public disclosure bar applies and this Court therefore erred in dismissing Relator's pass-through claims against Athena.

Ten courts of appeals (including the District of Columbia) have held that disclosure to the Government alone is not sufficient to establish public disclosure. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 124 (2d Cir. 2021) ("disclosures to government officials do not constitute public disclosures for purposes of the public disclosure bar"); *United States ex rel. Chattanooga–Hamilton Cnty. Hosp. Auth.*, 782 F.3d 260, 265–66 (6th Cir. 2015); *United States ex rel. Little v. Shell Exploration Prod. Co.*, 602 Fed. App'x. 959, 974 (5th Cir. 2015); *United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.*, 777 F.3d 691, 696–98 (4th Cir. 2015); *Oliver*, 763 F.3d at 42 ("a public disclosure requires that there be some act of disclosure to the public outside of the government") (internal quotation marks omitted); *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195 (9th Cir. 2009); *United States ex rel. Maxwell v. Kerr–McGee Oil & Gas Corp.*, 540 F.3d 1180, 1184 (10th Cir. 2008); *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 730–31 (1st Cir. 2007); *United States ex rel. Cantekin v. Univ. of Pittsburgh*, 192 F.3d 402, 408 (3d Cir. 1999); *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1494 (11th Cir. 1991). *But see Cause of Action v. Chicago Transit Auth.,* 815 F.3d

---

[3] Athena made no other allegations of public disclosure other than the *Ming/TM* case. Athena Mem., ECF No. 69 at 7; Athena Reply, ECF No. 72 at 5.

267, 276 (7th Cir. 2016) ("in the public domain" means "facts disclosing the fraud itself are in the government's possession."). These courts have reasoned that "the phrase 'public disclosure' would be superfluous" if "providing information to the government were enough to trigger the bar." *Rost*, 507 F.3d at 729. Equating the terms "government" and "public" would also be inconsistent with the purpose of the public disclosure bar, which "clearly contemplates that the information be in the public domain in some capacity[,] and the Government is not the equivalent of the public domain." *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1043 (10th Cir. 2004).

More specifically, every court that has considered whether a *sealed* qui tam complaint may be the basis for a public disclosure has answered that question in the negative. *See, e.g.*, *United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir. 1990) ("[T]he district court further assumes that the filing of a *qui tam* action is itself a 'public disclosure.' This cannot be. Such an action is filed under seal without service on anyone other than the United States and remains non-public until the district court enters an order lifting the seal. To hold otherwise would be to render each and every filing a 'public disclosure,' thus barring all *qui tam* actions."); *United States ex rel. Wood v. Allergan*, Inc., 246 F. Supp. 3d 772, 789-90 (S.D.N.Y. 2017), *rev'd and remanded on other grounds*, 899 F.3d 163 (2d Cir. 2018) (same); *United States ex rel. Moore v. Pennrose Properties, LLC*, No. 3:11-CV-121, 2015 WL 1358034, at *9 (S.D. Ohio Mar. 24, 2015) (same). These cases establish that, as a matter of law, the sealed complaint in *Ming/TM* could not constitute a *public* disclosure of the SAC's allegations.

Because Athena did not (and cannot) establish that the allegations in the *Ming/TM* case were disclosed to the *public* (as opposed to the Government) prior to the filing of Relator's SAC, Relator respectfully asks this Court to reconsider whether the public disclosure bar applies here.

**B.    In Any Event, The Public Disclosure Bar Is Inapplicable Because Relator Is An Original Source Of The Pass-Through Allegations.**

This Court further concluded that Relator did not establish that the original source exception to the public disclosure bar applies here.  Mem. Op. at 20-22.  As explained above, however, because Athena failed to establish that the public disclosure bar applies here, the Court should not have "proceed[ed] to the original source inquiry."  *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-cv-1094 (BAH), 2017 WL 1422364, at *12 (D.D.C. Apr. 19, 2017) ("if—and only if" the public disclosure bar applies should the court turn to the original source exception).  In the event this Court were to deny reconsideration as to the public disclosure bar, this Court should reconsider whether Relator qualifies as an original source.

As this Court correctly acknowledged, "there are two ways for a relator to qualify as an original source."  Mem. Op. at 21.  First, a relator may "voluntarily disclose[] to the Government the information on which allegations or transactions in a claim are based" prior to the information being publicly disclosed.  31 U.S.C. § 3730(e)(4)(B)(i).  Second, the relator must have "knowledge that is independent of and materially adds to the publicly disclosed allegations" and have "voluntarily provided the information to the Government before filing an action."  31 U.S.C. § 3730(e)(4)(B)(ii).  Taking the allegations in the complaint as true, and drawing all reasonable inferences in favor of Relator, Relator established that he was an original source under both prongs.

1.    *Relator disclosed the pass-through claims to the Government before the public disclosure.*

As to the first prong, this Court determined that "neither party seriously contends" that the first prong of the original source exception applies.  Mem. Op. at 21.  But, as explained above, this Court assumed, based on Athena's representations, that the *Ming/TM* case, filed in 2016, constituted a "public disclosure."  If that were correct, Relator agrees that there could have been no voluntary disclosure of the pass-through claims prior to that disclosure, such that the first prong

of the original source exception would apply. As explained above, however, there was no public disclosure of the *Ming/TM* allegations until that complaint was unsealed in 2019. The record of proceedings here incontrovertibly establishes that Relator voluntarily disclosed to the Government the information on which his claims are based prior to that public disclosure in 2019. Before filing his SAC in October 2018, Relator provided the Government both his proposed SAC as well as a summary of the documents on which the new allegations were based. *See* ECF No. 42 at 7-8, 10; *see also* ECF No. 69 at 2 (Athena noting that the Department of Justice reviewed Relator's proposed SAC before it was filed in October 2018).

Thus, taking as true the allegations in the SAC, along with the transcript of the September 28, 2018 hearing before the Court, ECF No. 42, and the fact that *Ming/TM* was under seal until June 10, 2019, *see* Exhibit A, Relator has more than carried his burden to demonstrate that he voluntarily provided the information on which the pass-through allegations in the SAC are based to the United States *before* public disclosure of the *Ming/TM* allegations. Therefore, Relator qualifies as an original source under § 3730(e)(4)(B)(i).

> 2. *Relator disclosed the pass-through information to the Government prior to filing the SAC.*

As to the second prong of the original source exception, this Court stated that Relator "arguably" possessed knowledge that is independent and materially adds to the publicly disclosed allegations, but concluded that Relator failed to establish that he had voluntarily disclosed his allegations to the Government "before filing an action under this section." Mem. Op. at 22 ("Relator here, however, fails to make any representation whatsoever about government notification, either prior to the public disclosure or before initiating this suit."). In making that observation, however, the Court overlooked the procedural history, recounted above, in which Relator expressly sought and obtained the Court's blessing to provide his proposed SAC to the

United States before filing it under seal with the Court. That procedural history more than suffices to satisfy the second prong.

Moreover, it is undisputed that Relator's SAC (as did his Third Amended Complaint ("TAC")) specifically alleged that, "*[p]rior to filing of his Second Amended Complaint*, Relator provided the Government with written disclosure of substantially all material evidence and information that Relator possessed, in accordance with 31 U.S.C. § 3730(b)(2)." SAC ¶ 20 (emphasis added); TAC ¶ 20 (same).[4] Although the requirements of § 3730(b)(2) differ from § 3730(e)(4)(B), *see, e.g.*, *United States v. CSL Behring, LLC*, 158 F. Supp. 3d 782 (E.D. Mo. 2016), *aff'd sub nom. United States v. CSL Behring, L.L.C.*, 855 F.3d 935 (8th Cir. 2017), Relator's allegation that he provided this information to the Government "prior to filing of his Second Amended Complaint" demonstrates that he satisfies the timing aspect of the voluntary disclosure requirement under § 3730(e)(4)(B)(ii). *United States ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 590 (S.D. Tex. 2015).

Thus, if this Court denies reconsideration as to the public disclosure bar, Relator respectfully requests that the Court reconsider whether Relator qualifies as an original source under either § 3730(e)(4)(B)(i) or § 3730(e)(4)(B)(ii).

---

[4] Determining whether Relator is an original source of the pass-through allegations turns on whether the SAC, not the initial complaint, voluntarily disclosed the information to the Government prior to filing the action. *See Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 473 (2007) (reviewing amended complaint and final pretrial order allegations to determine whether Stone was an original source of allegations); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 50-51 (D.D.C. 2007) (determining original source status by analyzing whether relator voluntarily provided information to the Government prior to amending complaint).

## II.     The Court Should Reconsider Its Dismissal Of The Pass-Through Claims For Lack Of Causation.

In addition to dismissing the pass-through claims against Athena on public disclosure grounds, this Court concluded that the pass-through claims against Athena, Balfour Beatty, and Barton Malow should be dismissed based on Relator's failure to plead but-for causation, Mem. Op. at 22, even though none of Defendants raised causation as a basis for dismissal. According to the Court, Relator could not state a claim for fraud-in-the-inducement unless Relator alleged that the pass-through agreement between "the large contractor and Athena was in place *before* the government awarded the contract." Mem. Op. at 23 (emphasis in original). The Court held that, "[i]f the pass-through scheme did not yet exist, it logically could not have induced the government to make any of the contract awards." *Id.* Because the Court found that none of Athena's pass-through arrangements with Balfour Beatty or Barton Malow were alleged to have predated the relevant Government contracts, the Court concluded that Relator failed to state a claim for fraud-in-the-inducement and dismissed the pass-through claims against Athena, Balfour Beatty, and Barton Malow with prejudice. Mem. Op. at 28-29, 43.

Relator, however, does not allege that the pass-through agreements induced the Government to award contracts to Defendants. Instead, Relator's theory is that Defendants' promises to comply with small business subcontracting requirements were false promises that induced the contract awards and that, but for those promises, the Government would not have awarded the contracts. As explained below, those allegations satisfy the causation standard for fraudulent inducement claims. This Court, therefore, either misunderstood the alleged fraud at issue or the causation standard. Reconsideration is thus warranted, especially given the fact that Relator lacked any opportunity to brief the causation issue because it was raised *sua sponte* by the Court, and further amendment was not granted.

"Although the focus of the FCA is on false 'claims,' courts have employed a 'fraud-in-the-inducement' theory to establish liability under the Act for each claim submitted to the Government under a contract which was procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves." *United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2005); *accord United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006). Fraud in procuring a contract may be based on an affirmative misrepresentation, a failure to disclose material facts, or, as is at issue here, a knowingly false promise. *See, e.g.*, *United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 421-22 (D.C. Cir. 2021) (defendant allegedly used false audit to induce IRS to award a contract); Restatement (Second) of Torts § 525 (1977), Liability for Fraudulent Misrepresentation, comment e; *United States v. Honeywell Int'l Inc.*, 502 F. Supp. 3d 427, 461 (D.D.C. 2020) (a material omission may be fraudulent where there is duty to speak); *Hendow*, 461 F.3d at 1174 (promissory fraud is actionable under the FCA when the promise is knowingly false when made); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 542 (1943); Restatement (Second) of Torts § 530(1), Misrepresentation of Intention ("(1) A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."); *id.*, comment c ("The intention to perform the agreement may be expressed but it is normally merely to be implied from the making of the agreement. Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit under the rule stated in § 525.").

When the fraud in procuring a contract is premised on a promise, a relator must allege that the promise was false when made, or that the defendant intended not to keep his promise. *Hendow*, 461 F.3d at 1174 (distinguishing between failure to perform a promise, which is breach of contract,

and making a promise one intends not to keep, which is fraud); *Honeywell Int'l Inc.*, 502 F. Supp. 3d at 454 ("Fraudulent inducement exists where a contract was procured by fraud or when a party to a contract makes promises at the time of contracting that it intends to break." (internal quotation marks omitted)).

In *Cimino*, the D.C. Circuit clarified that a relator must plead but-for causation for a fraudulent inducement claim. 3 F.4th at 420. In other words, a relator must allege "sufficient facts for the court to draw a reasonable inference that [defendant's alleged fraud] caused the [government]" to enter into a contract. *Id.* at 421. In *Cimino*, the relator satisfied that standard because he alleged facts that plausibly demonstrated the IRS would not have entered into a contract for IBM's services but for IBM's false representations in an audit provided to the IRS. *Id.* at 421-22.

Relator's TAC plainly satisfies this causation standard. Relator's TAC alleges that Defendants falsely promised they would comply with the terms of various Small Business Subcontracting Plans to induce the Government to award them contracts. *See, e.g.*, TAC ¶¶ 5, 101, 289. As alleged in the TAC, Defendants' promises to comply with the terms of the subcontracting plans (*e.g.*, to enter into small business subcontracts in the future) induced the Government to award Defendants the contracts. *See, e.g.*, TAC ¶¶ 38-39, 84-90, 92-100, 179, 184-85, 227, 289. The TAC further alleges that those promises were knowingly false when made, in that Defendants had no intention to enter into legitimate small business subcontracts. *Id.* ¶¶ 5, 7, 11.

Indeed, taken together, the allegations in the TAC explain that Athena's business model was to sell its small business certifications to larger companies for profit, TAC ¶¶ 167-69, and that Athena therefore routinely entered into such agreements, including with its co-defendants Balfour

Beatty and Barton Malow, over many years. *See, e.g.*, TAC ¶ 176 (alleging pass-through agreement between Balfour Beatty and Athena on St. Elizabeth's Tunnel Project); ¶ 195 (alleging Balfour Beatty and Athena had previously and continued to engage in similar practices); ¶¶ 198-99, 202 (alleging pass-through agreement between Balfour Beatty and Athena on Walter Reed project); ¶¶ 247-55 (alleging pass-through agreement between Athena and Barton Malow on VA Hospital project and that agreement was made prior to Athena obtaining the Government contract); *see also* TAC ¶ 173, Exhibit 2 (email exchange between Balfour Beatty and Athena suggesting a partnership that preceded the St. Elizabeth's Tunnel Project). The TAC further alleges that companies that contracted with Athena, including Balfour Beatty and Barton Malow, were aware of its business model and would contract with Athena in order to take advantage of Athena's small business certifications, knowing that Athena would not itself actually perform meaningful work on the contract. *See, e.g.*, TAC ¶¶ 273-84.

These allegations, taken together, suggest that pass-through arrangements (rather than substantive work) were Athena's regular mode of business; that companies, including Athena's co-defendants, were aware of that business model; and that those companies repeatedly contracted with Athena for that purpose, knowing that Athena was not a legitimate small business contractor. Based on those allegations, this Court can reasonably infer that, when Defendants promised to comply with small business subcontracting requirements, those promises were false when made because Defendants instead intended, consistent with their usual business practices, to use pass-through arrangements that did not satisfy those subcontracting requirements. The fact that Defendants soon thereafter entered into pass-through agreements further supports such an inference. *See, e.g.*, *United States v. Shah*, 44 F.3d 285, 293 n.14 (5th Cir. 1995) (when nonperformance is coupled with other probative factors, such as "where only a short time elapses

15

between the making of the promise and the refusal to perform it, and there is no change in the circumstances," intent not to perform when promise was made may be properly inferred (quoting 37 *Am.Jur.2d,* Fraud and Deceit, § 478 (footnotes omitted))).[5] Based on this theory of promissory fraud, Relator's allegations (*i.e.*, that Defendants *promised* that they would comply with their Subcontracting Plans, when they lacked any intention to do so, knowing that the Government would rely on those false promises to award the contract), are sufficient for this Court to draw an inference that, if Defendants had not misrepresented their intention to comply with the small business subcontracting requirements, the Government would not have awarded them the contracts. Thus, Relator adequately alleged but-for causation.

The Court's opinion, however, misconstrued the causation standard to require Relator to allege that Defendants made false misrepresentations, in the form of executed pass-through agreements, which induced the Government to award the contracts. Mem. Op. at 23 (holding that Relator had "to plead that the alleged pass-through arrangement between the large contractor and Athena was in place *before* the government awarded the contract," otherwise the pass-through scheme "could not have induced the government to make any of the contract awards"). Such an interpretation of the causation standard necessarily excludes fraudulent inducement based on a false promise, as is at issue here. But there is nothing in *Cimino*'s causation analysis that purports to limit fraud-in-the-inducement claims to claims based on false representations, as were at issue

---

[5] *See also Bettis*, 393 F.3d at 1330 (noting that "fraudulent intent may sometimes be inferred" where "there is no intervening change of circumstances and where the repudiation comes quickly after the contract is signed"); *United States ex rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279, 1299-300 (D. Utah 2018) (Government has alleged sufficient facts to plausibly establish that Stevens–Henager knew that its promises to comply with the ICB were false when made); *United States ex rel. Wildhirt v. AARS Forever, Inc.*, No. 09 C 1215, 2011 WL 5373985, at *3 (N.D. Ill. Nov. 4, 2011) (allegations of instances of blatant nonperformance, some directly on the heels of AARS and Acquisition entering into the contract, raised "permissible inference that Defendants indeed entered into the contract while planning not to perform . . . .").

in that case. Thus, the Court erred in construing *Cimino* to preclude Relator from satisfying causation unless Relator alleged a false representation (as opposed to a false promise).

In other words, it is Defendants' false promises to use small business subcontracts that allegedly induced the Government to contract. That Defendants are alleged to have subsequently entered into pass-through agreements is simply further support that Defendants' promises were false when made, such that Relator has adequately alleged fraudulent inducement. Relator does not allege that the pass-through agreements themselves induced the Government to award the contracts, as the Court apparently misunderstood.

Indeed, this Court has previously recognized that similar allegations to those here state a claim for fraudulent inducement. In *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104 (D.D.C. 2014), the relator alleged that "but for [defendant's] representations that it would employ small businesses in the manner set out in the Small Business Subcontracting Plan, the government would not have awarded the [contract] to [defendant]." *Id.* at 130. Relator further alleged that that promise was fraudulent when made because Defendant "'never had any intention of complying with its subcontracting plan.'" *Id.* at 131 (quoting relator's complaint). To support that allegation, relator further alleged that Defendant, *after* the contract was awarded, entered into "a pass-through scheme to shroud its allegedly willful misrepresentations regarding its intention to comply with the terms of the Small Business Subcontracting Plan." *Id.* This Court concluded that "[t]hese allegations are more than sufficient to raise an inference" that the contract was fraudulently induced because Defendant "had intended to utilize a pass-through scheme 'from day one', despite the fact that Defendant represented to the government that it would engage in 40% small business subcontracting pursuant to its Small Business Subcontracting Plan." *Id*. at 131 (citation omitted). Similarly here, Relator's allegations concerning the existence of pass-through

agreements, which post-date the Government contract awards, support an inference that Defendants' promises to comply with the Small Business Subcontracting Plans were false at the time they were made. The promises themselves, however, not the pass-through agreements, are the alleged inducement for the Government contracts.

Because this Court either misunderstood Relator's fraudulent inducement claim to be based on a fraudulent misrepresentation, rather than a false promise, or misconstrued the governing causation standard as it applies to fraudulent inducement claims, all without providing Relator an opportunity to defend its causation allegations, Relator respectfully requests reconsideration.

## III. The Court Erred In Assuming That Relator's Pass-Through Claims Against Defendants Did Not State Implied False Certification Claims.

In considering Relator's pass-through claims against Athena, Balfour Beatty, and Barton Malow, the Court "assume[d] for present purposes . . . that only fraud in the inducement applies . . . as to" Defendants, Mem. Op. at 12,[6] such that the Court could dismiss with prejudice the pass-through claims against those entities based solely on the Court's conclusion that Relator failed to allege causation for his fraudulent inducement claims. Relator, however, also alleged implied false certification claims against Defendants, and it was error for this Court to effectively dismiss those claims without considering them.

The D.C. Circuit first recognized the existence of a "false or fraudulent" claim based on an implied certification of a contractual condition in *United States v. Science Applications International Corporation*, "when a contractor has withheld information about its noncompliance with material contractual requirements." 626 F.3d 1257, 1268 (D.C. Cir. 2010); *see also Universal Health Servs. v. United States ex rel. Escobar,* 579 U.S. 176, 181 (2016) (FCA "liability can attach

---

[6] Although the Court did consider the implied false certification claim against Athena, it did so only with regard to Relator's HUBZone claims. Mem. Op. at 31-32.

when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's non-compliance with a statutory, regulatory, or contractual requirement," if the omission makes the representations "misleading.")

The TAC alleges that Defendants submitted numerous false claims impliedly certifying their compliance with the subcontracting plans. *See, e.g.*, TAC ¶¶ 288, 299, 302. For example, Defendants knowingly submitted fraudulent invoices for payment, *see, e.g.*, *id.* ¶¶ 279-80, 286-88, 309-10, as well as periodic reports (Individual Subcontracting Reports ("ISRs") and Summary Subcontracting Reports ("SSRs")) attesting to their compliance with the subcontracting plans, knowing that the Government contracting officers would rely on these reports to make periodic payments under the contracts. *Id.* ¶¶ 5, 101-103, 142-146, 289-90, 296; *see also* Exh.1, at 70 (as part of its Small Business Subcontracting Plan, Balfour Beatty agreed to "submit period reports . . . as may be required by the contracting agency or the Small Business Administration to determine the extent of compliance with the subcontracting plan."). Thus, not only did the TAC allege fraud in Defendants' false promise to perform under their Subcontracting Plans, but also in their subsequent implied certifications that they were complying with the requirements of those plans (and therefore entitled to payment) through their submission of false invoices, ISRs, and SSRs.

This Court has recognized that similar allegations suffice to state a claim for implied false certification. In *Tran*, as here, the relator alleged that the defendant submitted material false submissions to the Government, including "invoices . . . for the amounts due to [the defendant] from its work on the Prime Contract" and various reports (ISRs and SSRs), all of which impliedly (and falsely) certified that the defendant was in compliance with the Small Business Subcontracting Plan. *Tran*, 53 F. Supp. 3d at 118, 123-25.

Because this Court effectively dismissed Relator's implied false certification claims against Defendants without considering whether Relator's allegations stated a claim, Relator respectfully requests reconsideration.

## CONCLUSION

For the forgoing reasons, this Court should grant Relator's motion for reconsideration of the Court's March 25, 2022, Memorandum Decision and Order in this case dismissing Relator's pass-through claims against Athena on public disclosure grounds and against Athena, Balfour Beatty, and Barton Malow on causation grounds.

Dated: April 22, 2022                          Respectfully submitted,

     /s/ Glenn A. Ellis
W. Scott Simmer
Andrew M. Miller
BARON & BUDD, P.C.
600 New Hampshire Avenue, N.W., Suite
10-A Washington, D.C. 20037
amiller@baronbudd.com
ssimmer@baronbudd.com
*Counsel for William Smith*

Glenn Andrew Ellis
FREIWALD LAW, P.C.
1500 Walnut Street 18th Floor  Philadelphia,
PA 19102 gae@freiwaldlaw.com
*Counsel for William Smith*

**STATEMENT PURSUANT TO LOCAL RULE 7(m)**

Counsel for Relator conferred with counsel for Athena, Balfour Beatty, and Barton Malow prior to filing this motion, but counsel for Athena and Balfour Beatty did not respond to Counsel's request.  Counsel for Barton Malow indicated that they will oppose Relator's motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 22, 2022, the foregoing was filed via the CM/ECF system and an electronic copy was served via a notice of electronic filing (NEF) on all parties of record:

     /s/ Glenn A. Ellis
W. Scott Simmer
Andrew M. Miller
BARON & BUDD, P.C.
600 New Hampshire Avenue, N.W., Suite 10-A Washington, D.C. 20037
amiller@baronbudd.com
ssimmer@baronbudd.com
*Counsel for William Smith*

Glenn Andrew Ellis
FREIWALD LAW, P.C.
1500 Walnut Street 18th Floor  Philadelphia, PA 19102 gae@freiwaldlaw.com
*Counsel for William Smith*