# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. WILLIAM "BILL" SMITH, )<br>)<br>)<br>) | |
| Plaintiff-Relator, ) | |
| ) | |
| v. ) | No. 18-cv-2080 (APM) |
| ) | |
| ATHENA CONSTRUCTION GROUP, INC., *et al.*, )<br>)<br>) | |
| Defendants, ) | |

## PLAINTIFF-RELATOR'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL RECONSIDERATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.     THE COURT SHOULD RECONSIDER ITS PUBLIC DISCLOSURE DECISION. ...... 2

     A.     Athena Does Not Dispute That It Failed to Establish That the *Ming/TM* Case Publicly Disclosed the Second Amended Complaint's Pass-Through Allegations 2

     B.     Athena Does Not Dispute that Relator Smith Voluntarily Disclosed All Material Information Prior to Filing the Second Amended Complaint ................................ 4

II.     THE COURT MISCONSTRUED CAUSATION FOR FRAUDULENT INDUCEMENT TO REQUIRE MORE THAN A FALSE PROMISE. ........................................................ 6

III.     THE COURT SHOULD RECONSIDER WHETHER RELATOR'S PASS-THROUGH ALLEGATIONS STATE IMPLIED FALSE CERTIFICATION CLAIMS .................... 16

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baloch v. Norton*,
   517 F. Supp. 2d 345 (D.D.C. 2007) .......................................................................16

*Benton v. Laborers' Joint Training Fund*,
   121 F. Supp. 3d 41 (D.D.C. 2015) ........................................................................15

*Bettis v. Montgomery*,
   701 F. Supp. 256 (D.D.C. 1989) ...........................................................................12

*Crummey v. Social Security Admin.*,
   794 F. Supp. 2d 46 (D.D.C. 2011) ........................................................................15

*Davis v. Transportation Sec. Admin.*,
   264 F. Supp. 3d 6 (D.D.C. 2017) ..........................................................................17

*Ecological Rights Foundation v. United States Environmental Protection Agency*,
   541 F. Supp. 3d 34 (D.D.C. 2021) ........................................................................15

*Howard v. Caddell Constr. Co.*,
   No. 7:11-CV-270-FL, 2021 U.S. Dist. LEXIS 60255 (E.D.N.C. March 30,
   2021) ............................................................................................................17, 19, 20

*Judicial Watch v. Bowser*,
   __ F. Supp. 3d ___, 2022 WL 355209 (D.D.C. Feb. 7, 2022) ....................10, 13, 18

*Marstellar v. Tilton*,
   880 F.3d 1302 (11th Cir. 2018) ...............................................................................7

*McBride v. Merrell Dow & Pharm.*,
   800 F.2d 1208 (D.C. Cir. 1986) ............................................................................15

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ...............................................................................................12

*Shockley v. Jones*,
   823 F.2d 1068 (7th Cir. 1987) ...............................................................................12

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*,
   251 F. Supp. 2d 28 (D.D.C. 2003) ........................................................................19

*United States ex rel. Cimino v. Int'l Bus. Machines Corp.*,
   3 F.4th 412 (D.C. Cir. 2021) ...................................................................................6

*United States ex rel. Doe v. Staples, Inc.*,
773 F.3d 83 (D.C. Cir. 2014) ..................................................................2

*United States ex rel. Fadlalla v. Dyncorp Int'l LLC*,
402 F. Supp. 3d 162 (D. Md. 2019) .....................................................8, 20

*United States ex rel. Findley v. FPC-Boron Employees' Club*,
105 F.3d 675 (D.C. Cir. 1997) ...............................................................3

*United States ex rel. Head v. Kane Co.*,
798 F. Supp. 2d 186 (D.D.C. 2011) ......................................................19

*United States ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) .............................................................6, 7

*United States ex rel. Janssen v. Lawrence Mem'l Hosp.*,
949 F.3d 533 (10th Cir. 2020) ..............................................................22

*United States ex rel. Landsberg v. Argentis Med., P.C.*,
No. 03–cv–1263, 2006 WL 1788381 (W.D. Pa. June 27, 2006) ......................19, 20

*United States ex rel. Main v. Oakland City Univ.*,
426 F.3d 914 (7th Cir. 2005) ...............................................................7

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*,
540 F.3d 1180 (10th Cir. 2008) ...........................................................3, 4

*United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*,
251 F. Supp. 2d 114 (D.D.C. 2003) ......................................................18

*United States ex rel. Miller v. Weston Educational, Inc.*,
840 F.3d 494 (8th Cir. 2016) ..........................................................6, 7, 10

*United States ex rel. Oliver v. Philip Morris USA Inc.*,
763 F.3d 36 (D.C. Cir. 2014) ................................................................2

*United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*,
No. 4:14-CV-05002-SMJ, 2019 WL 11793719 (E.D. Wash. Apr. 24, 2019) ........20

*United States ex rel. Schwedt v. Planning Research Corp.*,
59 F.3d 196 (D.C. Cir. 1995) ................................................................7

*United States ex rel. Springfield Terminal Railway v. Quinn*,
14 F.3d 645 (D.C. Cir. 1994) ..............................................................2, 3

*United States ex rel. Tran v. Computer Scis. Corp.*,
53 F. Supp. 3d 104 (D.D.C. 2014) .................................................18, 20, 21

*United States v. Triple Canopy, Inc.*,
  857 F.3d 174 (4th Cir. 2017) ........................................................22

*United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*,
  336 F.3d 375 (5th Cir. 2003) ...............................................6, 7, 10

**Statutes**

15 U.S.C. § 637(d)(9) ..................................................................18

31 U.S.C. § 3730(e)(4)(A) ..............................................................2

31 U.S.C. § 3730(e)(4)(B)(i) ...........................................................4

31 U.S.C. § 3730(e)(4)(B)(ii) ..........................................................4

**Other Authorities**

48 C.F.R. § 19.701 ......................................................................18

48 C.F.R. § 52.219–9(k) ...............................................................18

Black's Law Dictionary 1242 (7th ed. 1999) .......................................3

FAR § 52.219-9 .........................................................................21

FAR § 52.219-9(k) ......................................................................20

Fed. R. Civ. P. 9(b) .................................................................17, 19

Fed. R. Civ. P. 12(b)(6) ...............................................................12

Oxford English Dictionary ............................................................3, 4

## INTRODUCTION

The public disclosure bar presents no obstacle to Relator's claims against Athena. At most, Athena has shown that Relator's allegations were previously disclosed to the government in *Ming/TM*. Athena does not dispute that Relator's allegations were not *publicly* disclosed until *Ming/TM* was unsealed, which was *after* Relator filed his Second Amended Complaint. Athena, therefore, does not defend this Court's conclusion that the pass-through allegations were publicly disclosed in *Ming/TM*, but instead argues that disclosure to the government is enough to trigger the public disclosure bar. That is not the law.

Relator also seeks reconsideration of this Court's holding that Relator could not state a claim for fraudulent inducement unless Relator alleged that Defendants executed pass-through agreements *before* the government awarded the relevant contracts. Although Defendants argue that Relator has to allege some fraudulent conduct that preceded the contract award to state a claim for fraudulent inducement, that requirement is satisfied by Relator's allegations of Defendants' false promises to comply with small business subcontracting requirements. Indeed, Defendants do not defend this Court's more restrictive ruling, requiring allegations of pass-through agreements executed prior to the government contract awards. This Court, therefore, should reconsider whether Relator has adequately alleged that Defendants, in promising to comply with small business subcontracting requirements, made false promises that induced the award of government contracts.

Finally, Relator respectfully requests this Court to consider whether Relator's pass-through allegations state a claim for implied false certification. Relator has neither waived nor abandoned an implied false certification claim as to Athena's co-Defendants. Defendants fail to explain,

therefore, why this Court was correct to "assume[]" that Relator was asserting an implied false certification claim only against Athena as to his HUBZone claims.

## ARGUMENT

## I.  THE COURT SHOULD RECONSIDER ITS PUBLIC DISCLOSURE DECISION.

### A.  Athena Does Not Dispute That It Failed to Establish That the *Ming/TM* Case Publicly Disclosed the Second Amended Complaint's Pass-Through Allegations

The law in this circuit governing the public disclosure bar was set forth in *United States ex rel. Springfield Terminal Railway v. Quinn,* 14 F.3d 645 (D.C. Cir. 1994), where the court of appeals explained that the government has "'enough information to investigate the case' only when the allegation of fraud itself has been publicly disclosed or when both of its underlying factual elements—the misrepresentation and the truth of the matter—are already *in the public domain*." *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86 (D.C. Cir. 2014) (quoting *Springfield Terminal*, 14 F.3d at 654) (emphasis added).

To be considered "public," a disclosure must be made either: "[1] in a criminal, civil, or administrative hearing, [2] in a congressional, administrative, or [General] Accounting Office report, hearing, audit, or investigation, or [3] from the news media." 31 U.S.C. § 3730(e)(4)(A). By its express terms, the public disclosure bar applies only when allegations or transactions have been made public through one of those channels. *See United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 42 (D.C. Cir. 2014) (citing *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499 (11th Cir. 1991)).

According to the court in *Springfield Terminal*, "'*qui tam* actions are barred only when enough information exists *in the public domain* to expose the fraudulent transaction (the combination of X and Y), or the allegation of fraud (Z). When either of these conditions is

2

satisfied, the government itself presumably can bring an action under the FCA and there is no place in the enforcement scheme for *qui tam* suits.'" *Springfield Terminal*, 14 F.3d at 654 (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 (D.C. Cir. 1981)). "Once the information is in the *public domain*, there is less need for a financial incentive to spur individuals into exposing frauds. Allowing *qui tam* suits after that point may either pressure the government to prosecute cases when it has good reasons not to or reduce the government's ultimate recovery." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 685 (D.C. Cir. 1997) (emphasis added).

Athena does not dispute that it failed to carry its burden of showing that the *Ming/TM* complaint was publicly disclosed at the time the Second Amended Complaint ("SAC") was filed. Athena Opp. to Mot. for Partial Reconsideration ("Athena Recon. Opp.") (ECF 119) at 4. Nor does Athena dispute the then-sealed *Ming/TM* case cannot be the basis for a public disclosure. *Id.* Instead, without citation to any authority, Athena argues that the public disclosure bar is triggered because Relator Smith is represented by the same counsel as the relators in *Ming/TM*. *Id.* at 5. But the mere fact that Relator is represented by the same counsel as in *Ming/TM* does not render the SAC's allegations "public" under any of the three enumerated channels, nor does it place the allegations in the "public domain."

The primary definition of the term "public" is: "Open to general observation, view, or knowledge; existing, performed, or carried out without concealment, so that all may see or hear." Oxford English Dictionary (online version) (last visited on June 7, 2022); Black's Law Dictionary 1242 (7th ed. 1999) (defining public as "open or available for all to use, share, or enjoy"); *see also United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1185 (10th Cir. 2008). A communication to a relator's counsel—who is under a duty to keep client

communications confidential—is not public because it remains concealed from the general population.  This is consistent with the notion that such communications are not in the public domain.  Relevant here, the term "public domain" is defined as "[t]he state or condition of belonging or being generally available to all."  Oxford English Dictionary (online version).  Therefore, both "public disclosure" and "public domain" plainly entail a release of information generally available to all and not subject to confidentiality restrictions.  As the Tenth Circuit has expressly recognized, "[c]ommunications made to individuals outside the federal government are not necessarily public disclosures; rather, there must be further investigation to determine whether the information entered the public domain by such communication."  *Maxwell*, 540 F.3d at 1185.  Here, the fact that Relator's counsel had knowledge of the *Ming/TM* allegations falls woefully short of establishing that such information was either publicly disclosed or entered the public domain.  Thus, the fact remains that the *Ming/TM* allegations were never publicly disclosed or in the public domain until June 10, 2019, when the operative complaint in that matter was unsealed— well after Relator Smith filed his SAC in this case.

      **B.**    **Athena Does Not Dispute that Relator Smith Voluntarily Disclosed All Material Information Prior to Filing the Second Amended Complaint**

Athena does not contest that Relator voluntarily disclosed the pass-through scheme to the government prior to both the unsealing of the *Ming/TM* complaint and before filing his Second Amended Complaint.  Athena Recon. Opp. at 8-11.  Thus, even if there were a public disclosure, Relator qualifies as an original source under 31 U.S.C. § 3730(e)(4)(B)(i) such that the public disclosure bar is inapplicable.

Instead, Athena offers two arguments as to why Relator does not qualify as an original source under 31 U.S.C. § 3730(e)(4)(B)(ii):  (1) Relator did not include the pass-through allegations in earlier iterations of his complaint; and (2) Relator's pass-through allegations did not

4

"materially add" to the *Ming/TM* allegations. Because Relator qualifies as an original source under

section 3730(e)(4)(B)(i), this Court need not even address Athena's arguments regarding section

3730(e)(4)(B)(ii). In any event, however, both arguments are meritless and find no support in the

case law.

First, Athena raises fact questions concerning the origins of Relator's pass-through claims,

suggesting that, because those claims were not included in earlier iterations of his complaint, they

must have derived from *Ming/TM*. Athena Recon. Opp. at 9. However, fact questions are not

appropriate for resolution at this stage of the pleadings. *E.E.O.C. v. St. Francis Xavier Parochial

Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a

claim, we may consider only the facts alleged in the complaint, any documents either attached to

or incorporated in the complaint and matters of which we may take judicial notice."). Nothing in

the Third Amended Complaint ("TAC") nor in the exhibits attached thereto suggests that its

allegations were derived from *Ming/TM*. To the contrary, the TAC specifically alleges it is based

on Relator's firsthand knowledge and experience as Athena's Director of Operations and Project

Superintendent from 2011 to 2016, and references supporting documents Relator attached to the

TAC. *See* TAC (ECF 66) ¶¶ 16-17. As such, Athena's first argument fails.

Second, this Court has already rejected Athena's argument that Relator's information did

not "materially add" to the purportedly publicly-disclosed allegations. *See* Memorandum Opinion

and Order ("Mem. Op.") (ECF 107) at 21. Not only that, but there is absolutely nothing on the

face of the pleadings supporting Athena's speculation that Relator "did not possess information

related to the myriad fraud claims first raised in the SAC." Athena Recon. Opp. at 10. At this

stage of the pleadings, Relator has established that he is an original source of the allegations in the

TAC and thus Athena's second argument falls short as well.

## II. THE COURT MISCONSTRUED CAUSATION FOR FRAUDULENT INDUCEMENT TO REQUIRE MORE THAN A FALSE PROMISE.

To plead causation for a fraudulent inducement claim, a relator must allege that defendant committed an act that induced the government to award defendant a contract that it otherwise would not have. *See, e.g.*, *United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 421 (D.C. Cir. 2021). It is well-established that one such act may be a false promise, so long as relator alleges facts to support an inference that the promise was false at the time it was made. *See, e.g.*, *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006); *United States ex rel. Miller v. Weston Educational, Inc.*, 840 F.3d 494, 500 (8th Cir. 2016). Courts have recognized that a false promise may be demonstrated by, for example, the extent of a defendant's non-compliance with the promise; how quickly the defendant repudiates the promise; and the defendant's motives and historical behavior. *Miller*, 840 F.3d at 500-03; *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 385-86 (5th Cir. 2003).

Here, Relator alleged sufficient facts for a factfinder to conclude that Defendants' false promises to comply with small business subcontracting requirements fraudulently induced the government to award them contracts. As explained in Relator's motion for partial reconsideration, the TAC alleges that Defendants promised to comply with small business subcontracting requirements even though Defendants, at the time those promises were made and, consistent with their usual course of business, intended to enter into pass-through agreements that violated those requirements. The TAC also alleges that Defendants, in fact, later did enter into such pass-through agreements—and that the government relied on Defendants' promises in awarding contracts, such that a court could reasonably infer both (1) that those promises were false when made and (2) that those false promises induced the government to award the contracts. *See* Plaintiff-Relator's Mot. for Partial Reconsideration ("Recon. Mot.") (ECF 114) at 14-16.

The Court, however, held that Relator's allegations of false promises to the government were insufficient to plead causation for fraudulent inducement. Mem. Op. at 23. The Court reasoned that Relator could *only* satisfy but-for causation by alleging that Defendants executed pass-through agreements "*before* the government awarded the contract." *Id.* ("If the pass-through scheme did not yet exist, it logically could not have induced the government to make any of the contract awards."). In other words, the Court held that Relator's allegations of false promises to comply with the small business subcontracting requirements were not sufficient as a matter of law; rather, Relator was required to allege that a fraudulent representation—here, an executed pass-through agreement—induced the government to award the contract. That is inconsistent with substantial case law that recognizes that a false promise can be the basis for a fraudulent inducement claim. *See, e.g.*, *Miller*, 840 F.3d at 500-01; *Marstellar v. Tilton*, 880 F.3d 1302, 1314-15 (11th Cir. 2018); *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916-17 (7th Cir. 2005); *Willard*, 336 F.3d at 384; *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995); *Hendow*, 461 F.3d at 1173-74.

Moreover, as a practical matter, the Court's causation theory makes little sense. Although a contractor (or subcontractor) might well falsely promise to comply with small business subcontracting requirements when bidding on or entering into a contract with the government, neither a subcontractor nor a prime contractor would have an incentive to execute or finalize a pass-through agreement with respect to a government contract *before* the government awarded that contract. Thus, fraudulent inducement claims involving pass-through agreements that can satisfy the Court's causation requirement will effectively be a null set. Reconsideration, therefore, is warranted.

Tellingly, Defendants do not challenge Relator's theory that Defendants may be held liable for false promises that induce the government to award a contract or defend the Court's holding that the *only* way to establish causation in this case is to allege that pass-through agreements were executed prior to the government's contract awards. Instead, Defendants contend that dismissal was appropriate because Relator failed to sufficiently allege false promises or that those promises induced the government to award any contracts. Those arguments lack merit.

First, Defendants argue that only a prime contractor can be held liable under Relator's false promise theory because "only the Prime could be perceived as making 'promises' to the government to induce a contract." Athena Recon. Opp. at 12; *see also* Barton Malow's Opp. to Mot. for Partial Reconsideration ("Barton Malow Recon. Opp.") (ECF 118) at 7-8. On that basis, Barton Malow argues that it cannot be held liable at all under Relator's theory, because it is only alleged to have served as a subcontractor on one contract. Barton Malow Recon. Opp. at 7-8. And Athena asserts that, based on the TAC's allegations, it served as prime on only one contract—the Audie Murphy VA Hospital contract—but even as to that contract, the TAC failed to allege any false promises that the government relied upon. Athena Recon. Opp. at 12-13. Defendants are wrong.

As a matter of law there is nothing that *per se* precludes a subcontractor from being held liable under a theory of fraudulent inducement, so long as the Relator alleges that the subcontractor made false promises to the government and that those promises induced the government to award a contract. *See, e.g.*, *United States ex rel. Fadlalla v. Dyncorp Int'l LLC*, 402 F. Supp. 3d 162, 187-89, 191-92 (D. Md. 2019) (relator stated a fraudulent inducement claim against both prime and subcontractors where prime "worked in concert" with subcontractors to falsely promise compliance with small business subcontracting requirements in order to win government contract).

Absent such direct allegations against a subcontractor, a subcontractor could nevertheless be held liable for fraudulent inducement where the subcontractor has allegedly conspired with the prime contractor to make false promises to induce the government to award a contract, as is also alleged here. *See, e.g.*, TAC ¶¶ 3, 9, 10, 331-33. Athena and Barton Malow, therefore, cannot escape liability for fraudulent inducement simply by pointing to their roles as subcontractors. In any event, even if Athena or Barton Malow cannot be held liable for fraudulent inducement because of their subcontractor status, their subcontractor status is no impediment to their liability for implied false certifications. *See infra*, Section III.[1]

Defendants further complain that the TAC is insufficient because it does not allege that Defendants made false promises and/or that those false promises induced the government to award contracts to Defendants. *See* Balfour Beatty Opp. to Mot. for Partial Reconsideration ("Balfour Beatty Recon. Opp.") (ECF 117) at 6-8; Athena Recon. Opp. at 13; Barton Malow Recon. Opp. at 5-7. Defendants, however, simply ignore large swaths of the TAC or fail to construe the TAC's allegations in Relator's favor.

As to the Audie Murphy VA Hospital contract, Athena argues that the allegations are insufficient because the alleged pass-through agreement between Athena and Barton Malow "appears to be after the contract was awarded." Athena Recon. Opp. at 12. But the TAC alleges that Barton Malow and Athena agreed to a pass-through agreement *prior* to the contract award: "Defendant Athena had already agreed to allow Defendant Barton Malow to serve as its subcontractor." TAC ¶ 251. Thus, Athena's promise to comply with the terms of small business

---

[1] As the TAC alleges, both prime contractors and subcontractors must adhere to small business subcontracting requirements. *See, e.g.*, TAC ¶¶ 89-116. Thus, when a prime or subcontractor submits a request for payment under a contract, the prime and subcontractor impliedly certify that they are complying with those requirements.

subcontracting plans, *see, e.g.*, TAC ¶¶ 3-5, 82, 84, 88, was plainly false when made. But even if the pass-through agreement between Athena and Barton Malow was not executed or arranged until after the contract award, that does not preclude an inference that Athena, pursuant to its regular course of conduct to engage in pass-through agreements, *see, e.g.*, TAC ¶¶ 3-5, 166-69, 170-271, 273, did not intend to comply with the small business subcontracting requirements such that its promise to do so was false when made. *See, e.g.*, *Miller*, 840 F.3d at 500-03 (noting pattern of altering attendance records, both before and after promise to keep accurate records, and evidence of motive to maximize Title IV funding); *Willard*, 336 F.3d at 385 ("Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent."). Moreover, the TAC alleges that the government, "[i]n awarding these large construction contracts," generally relies on a contractor's subcontracting plan, which includes a promise to comply with certain small business requirements. *See, e.g.*, TAC ¶ 39; *see also* TAC ¶¶ 9, 82-90, 169, 293. Construing the complaint in favor of Relator and drawing all reasonable inferences in his favor, *see, e.g.*, *Judicial Watch v. Bowser*, __ F. Supp. 3d ___, 2022 WL 355209, at *2 (D.D.C. Feb. 7, 2022), the TAC adequately alleges that Athena's false promises to adhere to the small business subcontracting requirements induced the government to award Athena the contract. *See, e.g.*, TAC ¶¶ 9, 38-39, 82, 84-90, 169, 204, 293.[2]

Defendants also dispute that the allegations regarding the St. Elizabeth and Walter Reed projects support Relator's false promise theory. Athena Recon. Opp. at 13 (asserting that Athena

---

[2] Athena faults Relator (Athena Recon. Opp. at 12) for failing to allege any false certifications. But again, Athena confuses Relator's two claims. The first is that Defendants made false promises that they would comply with small business subcontracting requirements which induced the government to award them contracts. The second is that Defendants made implied false certifications that they were complying with contracting/subcontracting requirements to obtain payments under those contracts/subcontracts. Relator's fraudulent inducement claim, therefore, is not dependent upon allegations of false certifications.

10

was only alleged to be involved months after the St. Elizabeth contract was awarded to Balfour Beatty); Balfour Beatty Recon. Opp. at 6-7 (asserting there were no allegations that the government was induced by promises to comply with small business subcontracting requirements when it awarded St. Elizabeth and Walter Reed contracts to Balfour Beatty). Athena's argument, piggybacking on this Court's order dismissing the pass-through claims, assumes that Relator can only show fraudulent inducement if the pass-through agreements were allegedly negotiated and/or executed prior to the government's award of the prime contract. As explained above, however, an executed pass-through agreement is not necessary to permit an inference that the prime contractor falsely promised to comply with the small business subcontracting requirements, particularly where pass-through agreements were the usual course of business. Rather, Relator need only allege that the prime contractor promised that it would adhere to the small business subcontracting requirements, that promise was false when made, and that promise induced the government to award the contract.

Here, Relator satisfied that standard by alleging that Balfour Beatty promised to adhere to the small business subcontracting requirements, that the promise was false when made because Balfour Beatty routinely entered into pass-through agreements with Athena, Balfour Beatty subsequently entered into a pass-through agreement with Athena, and Balfour Beatty attempted to cover up the fact that Athena was performing no work. *See, e.g.*, TAC ¶¶ 9, 82-90, 169, 176-82, 184-88, 195, 198-202, 293. Balfour Beatty's argument that there are no allegations that such false promises induced the government to award Balfour Beatty the contract simply ignores the allegations in the TAC that the government routinely relies on promises in subcontracting plans in making contract awards. *See, e.g.*, TAC ¶¶ 38-39, 82, 88-90, 169, 293. A factfinder, therefore,

could reasonably infer that, consistent with that practice, the government relied on Balfour Beatty's promise to comply with the small business subcontracting requirements.

Finally, Defendants assert that the Court should not consider Relator's arguments regarding causation. Athena does *not* dispute that the Court raised the causation issue *sua sponte*, but instead argues that "[a] properly pled complaint does not require briefing for the Court to understand the claims." Athena Recon. Opp. at 13. But when a defendant files a motion to dismiss, the plaintiff ordinarily is afforded notice and has a right to file a brief to explain why the complaint satisfies the pleading standard. *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). Likewise, where the Court *sua sponte* raises a ground for dismissal, due process interests dictate that the plaintiff should be given an opportunity to brief the issue. *See Bettis v. Montgomery*, 701 F. Supp. 256, 259 (D.D.C. 1989) (observing that "[i]t is somewhat unclear . . . whether District Courts may effect [sua sponte] dismissals [under Rule 12(b)(6)] without affording the plaintiff notice and an opportunity to be heard" and therefore providing plaintiff an opportunity to explain why his complaint should not be dismissed); *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (a *sua sponte* dismissal without notice or a hearing "is clearly improper"). Relator's reconsideration motion seeks an opportunity to respond to the Court's causation argument, first raised in the Court's order dismissing Relator's pass-through claims. That opportunity is particularly appropriate here where, as explained below, none of the Defendants previously raised the precise argument on which the Court relied in dismissing the pass-through claims (*i.e.*, that Relator could not state a claim for fraudulent inducement unless he alleged that the pass-through agreements were executed prior to the government's award of the contracts).

Barton Malow contends that it raised Relator's failure to plead causation in its motion to dismiss such that Relator should have briefed the causation issue earlier. Barton Malow Recon.

Opp. at 8. But the purported "causation" argument Barton Malow identifies is not the one that this Court relied upon to dismiss Relator's pass-through claims. Rather, Barton Malow argued that, because it was a subcontractor, it did not make any false claims or implied false certifications to the government in connection with the VA Hospital Project. Barton Malow's Mot. to Dismiss Relator's TAC ("Barton Malow's MTD") (ECF 94) at 11-12. Barton Malow did *not* argue that it could not have fraudulently induced the government into awarding a contract for the VA Hospital because no agreement between Barton Malow and Athena predated the Audie Murphy VA Hospital Project. And, although Barton Malow's reply brief in support of its motion to dismiss argued that Relator failed to allege any action by Barton Malow pre-dating the contract award (such that that conduct could potentially have induced the government to award the contract), Reply in Support of Barton Malow's Mot. to Dismiss TAC ("Barton Malow Reply") (ECF 104) at 10-12,[3] that is different than the Court's more narrow view that Relator had to allege that the pass-through agreement itself (not just any fraudulent conduct) was executed prior to the award of the

---

[3] Barton Malow's suggestion that the TAC fails to allege that it engaged in any fraudulent conduct until after the government awarded the contract is belied by the complaint. Barton Malow Reply at 12-13. The TAC alleges that Athena and Barton Malow had agreed to a pass-through agreement prior to the award of the contract. *See* TAC ¶ 251 ("Athena had already agreed to allow Defendant Barton Malow to serve as its subcontractor on this contract."). Barton Malow argues that this allegation is solely about Athena. Barton Malow Reply at 12. But such a strained reading of the complaint would not comport with this Court's duty to construe the complaint's allegations in Relator's favor. *See Judicial Watch*, 2022 WL 355209, at *2. Barton Malow further argues that, even if that paragraph is construed to mean that Barton Malow and Athena entered into a subcontract prior to the contract award, "there is nothing fraudulent about agreeing to a subcontract." Barton Malow Reply at 13. Again, however, Barton Malow's interpretation of the TAC cannot be supported. The TAC alleges a course of conduct between Athena and its co-Defendants, including Barton Malow, pursuant to which the subcontracts they entered into were mere pass-through agreements. *See* Recon. Mot. at 14-15 (citing TAC). Taken together, and construed in Relator's favor, therefore, the TAC should be understood to allege that the subcontract between Athena and Barton Malow was a pass-through agreement.

prime contract. Thus, Barton Malow never raised the precise causation issue on which this Court dismissed the pass-through claims.

Balfour Beatty likewise contends that it previously raised the causation issue. Balfour Beatty Recon. Opp. at 5-6 (citing its reply brief in support of its motion to dismiss (ECF 103) at 9-12). But, in reality, Balfour Beatty instead then contended more broadly that "Relator has not alleged that Balfour Beatty made fraudulent statements that induced the Government to enter into contracts with it." Balfour Beatty's Reply in Support of Mot. to Dismiss TAC ("Balfour Beatty Reply") (ECF 103) at 10; *see also id.* at 10 n.5 ("The Relator has not alleged any facts from which the Court could infer the alleged fraudulent conduct pertaining to the Walter Reed Project occurred prior to the award of the contract."). Although Balfour Beatty noted in support of that argument that the alleged pass-through agreements between Balfour Beatty and Athena were not purported to have been executed until after the government awarded the contracts, Balfour Beatty Reply at 10-11, Balfour Beatty did *not* argue that Relator could *only* state a claim for fraudulent inducement if Relator alleged that the pass-through agreements were concluded prior to the government contract award. Instead, Balfour Beatty argued more broadly that Relator's allegations were insufficient because there was no alleged fraudulent conduct prior to the contract award. *Id.* at 12 ("Relator has not alleged facts to support a fraudulent inducement claim because he has alleged that the fraud occurred *after* the Government and Balfour Beatty entered into the St. Elizabeths Project contract."); *accord id.* at 13. As Relator explained in his opposition to Defendants' motion to dismiss, however, the alleged fraud that pre-dated the government contract award was not the pass-through agreements, but Defendants' false promises to adhere to the small business subcontracting requirements. *See* Opp. to Athena's Mot. to Dismiss ("Opp. to Athena's MTD") (ECF 71) at 25-26; *see also* Recon. Mot. at 12 ("Relator's theory is that Defendants' promises to

comply with small business subcontracting requirements were false promises that induced the contract awards and that, but for those promises, the Government would not have awarded the contracts.").

Because none of the Defendants, therefore, raised the precise causation ground on which the Court here relied, their arguments that Relator should have sought leave to file a sur-reply on that issue, Barton Malow Recon. Opp. at 10; Balfour Beatty Recon. Opp. at 6 n.1, are misguided. Indeed, because Relator considered the TAC to be directly responsive to Defendants' broader causation argument that there was no fraudulent conduct that pre-dated the government's contract award, *see supra* note 3, there would have been no basis for Relator to file a sur-reply, especially considering that sur-replies are disfavored, *see, e.g.*, *Crummey v. Social Security Admin.*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011), and Relator had no right to file a sur-reply.

Indeed, Defendants did not even raise their broader causation arguments as a basis for dismissal until their reply briefs. *See* Barton Malow Recon. Opp. at 9-10 (citing to reply brief for the causation argument); Balfour Beatty Recon. Opp. at 5-6 (same). "[I]t is a well-settled prudential doctrine that courts generally will not entertain arguments first raised in a reply brief." *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51 (D.D.C. 2015) (internal quotation marks omitted). As the D.C. Circuit has explained, "[c]onsidering an argument advanced for the first time in a reply brief . . . is not only unfair . . . , but also entails the risk of any improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986). Thus, it is certainly within this Court's sound discretion to permit Relator an opportunity to respond to the causation issue in its motion for reconsideration. *See, e.g.*, *Ecological Rights Foundation v. United States Environmental Protection Agency*, 541 F. Supp. 3d 34, 54-55 (D.D.C. 2021) ("Here, the fact that EPA did not have an opportunity as of right

to address plaintiff's assertion, raised in reply, . . . counsels in favor of considering the reconsideration motion."); *Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply.").

## III. THE COURT SHOULD RECONSIDER WHETHER RELATOR'S PASS-THROUGH ALLEGATIONS STATE IMPLIED FALSE CERTIFICATION CLAIMS.

Athena, Balfour Beatty, and Barton Malow all argue (for differing reasons) that the Court properly dismissed the implied false certification claims. Nothing in Defendants' arguments, however, undermines Relator's request that the Court consider the merits of his implied false certification claims prior to dismissing them.

Balfour Beatty argues that Relator abandoned or waived the false certification claims. Balfour Beatty Recon. Opp. at 12-14. Balfour Beatty is wrong for two reasons. First, Balfour Beatty's abandonment argument ignores Relator's arguments that:

- the TAC stated implied false certification claims with regard to false Individual Subcontract Reports ("ISRs"), the Summary Subcontract Reports ("SSRs"), and payment requests or dates of payment from the government, *see* Relator's Opp. to Defendant Balfour Beatty's Mot. to Dismiss ("Relator's Opp. to Balfour Beatty MTD") (ECF 96-2) at 12;

- the failure to comply in good faith with the Subcontracting Plan is a material breach of the underlying contract, *id.* at 20 (citing TAC ¶ 91; 15 U.S.C. § 637(d)(8); FAR § 19.702(c)); and

- Balfour Beatty never self-reported its misconduct to the government, *id.* at 22.

16

Second, Balfour Beatty cites two summary judgment cases for the proposition that Relator waived the implied false certification claims by failing to address them in response to Balfour Beatty's motion to dismiss. Balfour Beatty Recon. Opp. at 13-14. Those cases are simply inapposite. They stand for the proposition that a party waives an argument where the party fails to file a responsive pleading at all, or where the party files a response but never addresses the applicable issue. *See, e.g.*, *Davis v. Transportation Sec. Admin.*, 264 F. Supp. 3d 6, 9, 10 (D.D.C. 2017) (citing Local Rule 7(b), which provides that, if memorandum in opposition is not timely filed, "the Court may treat the motion as conceded"). Here, Relator directly addressed his false certification claims in responding to Balfour Beatty's materiality argument. Relator's Opp. to Balfour Beatty MTD at 17-22. Indeed, Relator specifically refuted Balfour Beatty's citation to *Howard v. Caddell Constr. Co.*, No. 7:11-CV-270-FL, 2021 U.S. Dist. LEXIS 60255 (E.D.N.C. March 30, 2021), and argued that Balfour Beatty (a) knowingly and intentionally engaged in the pass-through scheme with Athena; (b) never had any intention to comply with the Subcontracting Plan; (c) was fully aware that the subcontractor Athena would not do any of the work; and (d) never self-reported any of its noncompliance to the government. Relator's Opp. to Balfour Beatty's MTD at 17, 21-22.

Athena and Balfour Beatty argue that the false ISRs, SSRs, and payment requests were not material to the government's decision to pay such that dismissal of Relator's implied false certification claims was appropriate. Athena Recon Opp. at 14 ("This is the point where Relator's pleading fails."); Balfour Beatty Recon. Opp. at 13 ("[S]mall business certifications are not core or basic requirements for the work provided under the contract at issue"). Both are wrong.

Specifically, Athena argues that Relator failed to identify any false certifications with sufficient specificity under Federal Rule of Civil Procedure 9(b), including certifications linked to

the specified contracts or allegations as to how those false certifications were material to the government's decision to pay. Athena Recon. Opp. at 13-16. But Athena errs in picking apart the complaint and reading its provisions in isolation. Reading the TAC's allegations together, and construing the complaint in Relator's favor, including drawing all reasonable inferences in Plaintiff's favor, as this Court must, *see Judicial Watch*, 2022 WL 355209, at *2, the allegations in the TAC are more than sufficient to "ensure that defendants have adequate notice of the charges against them to prepare a defense." *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp.2d 114, 116 (D.D.C. 2003). The TAC (1) identifies the relevant individuals involved, (2) identifies the specific claims that were allegedly false, (3) identifies the time period during which such claims were submitted, (4) provides details of how the scheme was structured, and (5) explains why the scheme constituted non-compliance with government requirements. Relator's Opp. to Athena's Mot. to Dismiss (ECF 71) at 36.

The TAC explains that "[e]ach successful prime contractor with a Subcontracting Plan is required to make 'a good faith effort to achieve the dollar and percentage goals and other elements in its Subcontracting Plan,'" which includes the small business contracting requirements at issue here. TAC ¶ 91. The TAC further explains (¶¶ 91-116) that Congress expressly provided that "the failure of any contractor or subcontractor *to comply in good faith* with [the terms of a Small Business Subcontracting Plan] *shall be a material breach of such contract or subcontract*[.]" 15 U.S.C. § 637(d)(9) (emphasis added); *see also* 48 C.F.R. § 52.219–9(k) (same). And the applicable regulations provide that "[f]ailure to make a good faith effort to comply with the subcontracting

plan means willful or intentional failure to perform in accordance with the requirements of the subcontracting plan, or willful or intentional action to frustrate the plan." 48 C.F.R. § 19.701.  *See United States ex rel. Tran v. Computer Scis. Corp.,* 53 F. Supp. 3d 104, 115-16 (D.D.C. 2014).  In addition, contractors must submit various certifications so that the government can ensure they are complying with these requirements.  TAC ¶¶ 101-16.  The complaint then identifies a series of contracts that were subject to these requirements and explains how Defendants' pass-through agreements violated those requirements.  TAC ¶¶ 166-284.  For example, the TAC specifically details that Athena did not submit the required paperwork for the subcontractor's certifications in the BRAC 132 reports, such that it should not have been eligible for payment on the contract.  *See* TAC ¶¶ 212-17 (Athena failed to submit "safety meeting reports or equipment reports," as well as "weekly toolbox talks and daily reports on a regular basis").  Taken together, a reasonable fact-finder could infer from these allegations that Defendants' various required certifications were false, and that they were material to the government's decision to pay.

This is more than sufficient under Rule 9(b).  *See United States ex rel. Head v. Kane Co*., 798 F. Supp. 2d 186, 202-03 (D.D.C. 2011) (Rule 9(b) requires that "only that the details of [the fraudulent] scheme be stated with particularity"; Relator need not allege the details "'of an actually submitted false claim'"); *see also United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp.2d 28, 35 (D.D.C. 2003) (noting that, while "some information on the false claims must be included[,]" Rule 9(b) does not require "a detailed allegation of all facts supporting each and every instance of submission of a false claim"); *United States ex rel. Landsberg v. Argentis Med., P.C.*, 03–cv–1263, 2006 WL 1788381, at *4 (W.D. Pa. June 27, 2006) (explaining that "Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud" and that, especially "in the context of federal FCA cases, the courts have recognized

the impracticality of requiring the plaintiff to plead the facts of each individual claim, particularly where the claims are numerous and extend over the course of several years").

Balfour Beatty argues that, as a matter of law, compliance with small business subcontracting plans can never be material to the government's decision to pay. In support of this argument, Balfour Beatty cites the factually and procedurally inapposite *Howard* case (*see* Relator's Opp. to Balfour Beatty's MTD at 20-21, distinguishing *Howard*)*,* misstating *Howard*'s holding as standing for the proposition that small business certifications are "not core or basic requirements" on which the government relies to make payments. *Id.* at 13. In that case, the plaintiff had failed at the summary judgment stage to establish material issues of fact whether the small business certifications there were "core" business requirements. *Howard*, 2021 WL 1206584, at *17-18. Even then, the court made clear it was *not* holding that certifications of compliance with small business subcontracting plans could never be material to the government's decision to pay, acknowledging that "the court's analysis does not rest upon a determination that the pass-throughs were unquestionably proper." *Id.* at *35, n. 31 (citing *Tran*, 53 F. Supp. 3d at 121).

Indeed, that makes sense because good faith compliance with small business subcontracting requirements *is* material to the government's decision to pay. *See, e.g.*, *Fadlalla*, 402 F. Supp. 3d at 191-92 (defendant's false statements concerning its compliance with subcontracting plan were material); *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-CV-05002-SMJ, 2019 WL 11793719, at *7 (E.D. Wash. Apr. 24, 2019) (holding, in small business subcontracting case, that the "complaint alleges these false claims were material to the United States' payment decision because, as a result of them, it in fact paid money under the contract that it otherwise would not have paid."). Likewise, this court in *Tran* found that

FAR section 52.219-9(k)—which is the same regulation cited in Relator's complaint, TAC ¶ 93—makes violation of the subcontracting plan a "material breach of contract." 53 F. Supp. 3d at 125. According to the *Tran* court, "[t]hese statements [concerning, among other claims, compliance with the subcontracting plan] must be accepted as true at this stage of the litigation, and they provide an ample basis for drawing an inference that the small business provisions were material . . . to the government's decision to pay CSC's claims." *Id.*

Finally, Barton Malow argues that the Court correctly dismissed Relator's implied false certification claims because the TAC failed to allege that Barton Malow, as a subcontractor, made any false certifications with regard to the Audie Murphy VA Hospital subcontracting plan. Barton Malow Recon. Opp. at 10-12. This argument is unavailing, given that the TAC spells out that the small business subcontracting plan obligations flow down to subcontractors like Barton Malow:

- The Small Business Act provides that a prime contractor *or subcontractor's* failure to comply in good faith with a subcontracting plan and the policy encouraging the greatest possible participation of disadvantaged small businesses including HUBZones, constitutes a "material breach" of the contract or subcontract. TAC ¶ 89 (citing 15 U.S.C. § 637(d)(9)).

- This good faith obligation is expressly incorporated into all construction contracts requiring a subcontracting plan. *See* FAR §§ 52.219-9, 52.219-9(k) ("As prescribed in 19.708(b), insert the following clause: … The failure of the Contractor *or subcontractor* to comply in good faith with—(1) The clause of this contract entitled 'Utilization of Small Business Concerns;' or (2) An approved plan required by this clause, shall be a material breach of the contract."). TAC ¶ 94 (emphasis added).

- The use of a pass-through arrangement—whereby a prime contractor subcontracts with a small business entity which then subcontracts all of the work under the contract to a large

business—is not good faith compliance with a Subcontracting Plan. As stated by the SBA: "[A] pass-through . . . adds little or no value to the procurement. It does not comport with the spirit or intent of the subcontracting program." TAC ¶¶ 99-100.

The TAC also details a course of conduct by Barton Malow, in complicity with Athena, aimed at misleading the government. Specifically, the TAC alleges how Barton Malow employees David Moody and David Garrett posed as Athena employees on the Audie Murphy VA Hospital project in order to defraud the government into believing that Athena, rather than Barton Malow, was performing the contract work. TAC ¶¶ 251-52. The TAC further alleges that Barton Malow, not Athena, was in control of all the subcontractors, but that Athena was "[p]osing as the real decisionmaker." TAC ¶¶ 253-54. Athena's and Barton Malow's extensive efforts to cover up Athena's role as a pass-through on the Audie Murphy VA Hospital project demonstrate their knowledge that compliance with the small business subcontracting rules is material to the government. *See United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 544 (10th Cir. 2020) ("[E]vidence of a cover-up ... might signal materiality."); *United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 (4th Cir. 2017) (holding that materiality of a condition could be inferred from a defendant's "own actions in covering up the noncompliance"). The TAC thus alleges that Barton Malow, knowing that it was engaged in a fraudulent pass-through arrangement, conspired with Athena to deceive the government. Thus, Barton Malow's argument that dismissal of Relator's implied false certification claim against it is proper solely because of its subcontractor status is wrong.

## CONCLUSION

For the forgoing reasons, and those set forth in Relator's Motion for Partial Reconsideration, Relator respectfully requests that this Court grant reconsideration of its March

25, 2022 order dismissing Relator's pass-through claims against Athena, Balfour Beatty, and Barton Malow.

Dated: June 10, 2022              Respectfully submitted,


                          /s/ Andrew M. Miller
                       Andrew M. Miller
                       W. Scott Simmer
                       Catherine H. Dorsey
                       BARON & BUDD, P.C.
                       600 New Hampshire Avenue, N.W.
                       Suite 10-A Washington, D.C. 20037
                       amiller@baronbudd.com
                       ssimmer@baronbudd.com
                       *Counsel for William Smith*


                       Glenn Andrew Ellis
                       FREIWALD LAW, P.C.
                       1500 Walnut Street 18th Floor Philadelphia,
                       PA 19102 gae@freiwaldlaw.com
                       *Counsel for William Smith*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2022, the foregoing was filed via the CM/ECF system and an electronic copy was served via a notice of electronic filing (NEF) on all parties of record:

    /s/ Andrew M. Miller
Andrew M. Miller
W. Scott Simmer
Catherine H. Dorsey
BARON & BUDD, P.C.
600 New Hampshire Avenue, N.W.
Suite 10-A Washington, D.C. 20037
amiller@baronbudd.com
ssimmer@baronbudd.com
*Counsel for William Smith*


Glenn Andrew Ellis
FREIWALD LAW, P.C.
1500 Walnut Street 18th Floor  Philadelphia,
PA 19102 gae@freiwaldlaw.com
*Counsel for William Smith*