**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* | ) |
| WILLIAM "BILL" SMITH | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:18-cv-02080-APM |
| ATHENA CONSTRUCTION GROUP, | ) |
| INC, *et al* | ) |
| | ) |
| Defendant. | ) |

# DEFENDANT ATHENA CONSTRUCTION GROUP, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE RELATOR'S EXHIBITS AND EVIDENCE PURSUANT TO FRCP 37

Milton C. Johns, VSB No 42305
D.D.C. Attorney No. VA072
Jill F .Helwig, VSB No. 83202
D.D.C. Attorney No. VA 145
Executive Law Partners, PLLC
11130 Fairfax Blvd, Suite 303
Fairfax, VA 22030
T: 571 500 1010
F: 571 408 8102
mjohns@xlppllc.com
jhelwig@xlppllc.com
*Counsel for Defendant*
*Athena Construction Group, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION  ……………………………………………….  1

I.      SUMMARY JUDGMENT MOTION  …………………………..  1

II.     COURSE OF DISCOVERY …………………………………..  6

           a. Athena's Discovery Efforts To Secure Relator's
Evidence ……………………………………………….  7

           b. Relator's Failure To Seek Evidence ………………………  11

           c. Subsequent Course Of Discovery …………………………  12

III.    LEGAL ARGUMENT …………………………………………  21

IV.     RULE 37 VIOLATION ……………………………………………..  23

           a.  There Is NO Substantial Justification For Relator's
Failure To Timely Supplement Discovery ……………………  23

                1. Plaintiff Was Aware Of Need For Proof For Seven
Years ……………………………………………….  23

                2. Exs. J, K, L, M N & O Were Specifically Requested
By Defendant During Discovery ……………………  24

                3. Plaintiff Failed To Request Evidence Of Claims
For Payment ………………………………………….  26

           b. Relator Has No Reasonable Or Legally Supported
Excuse For Failing To Produce  ……………………………  28

V.      STRIKING THE EVIDENCE IS THE ONLY SANCTION THAT
WILL SERVE  JUSTICE ……………………………………………  34

VI.     DISCOVERY SCHEDULE REQUIRES MOTION TO
EXTEND OR REOPEN DISCOVERY ……………………………..  39

VII.    PORTIONS OF RELATOR"S OPPOSITION TO SUMMARY
JUDGMENT MUST BE STRUCK FROM CONSIDERATION ……  42

VIII.   PLAINTIFF'S "CORRECTED" EXPERT REPORT ………………   42

CONCLUSION   ……………………………………………………….   43

### Table of Authorities

**Federal Cases**                                                                   **Page(s)**

*Artis v. Yellen*,
    307 F.R.D. 13 (D.D.C. 2014) …………………………………………   34

*Bonds v. D.C.*,
    93 F.3d 801 (D.C. Cir. 1996) …………………………………………  34, 35

*Coles v. Perry*,
    217 F.R.D. 1 (D.D.C. 2003) ……………………………………….. 22, 23

*\*Dag Enter., Inc. v. Exxon Mobil Corp.*,
    226 F.R.D. 95 (D.D.C.2005) …………………………………   34, 39, 40

*Elion v. Jackson*,
    No. 05–0992, 2006 WL 2583694,  (D.D.C. Sept. 8, 2006) …………..   22

*\*Estevan v. Garland*,
    No. 1:21-CV-02497 (TNM), 2023 WL 1100448
    (D.D.C. Jan. 30, 2023)  ………………………………………..   22, 30

*In re Sept. 11th Liability Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) ………………………………………   22

*Insurance Corp. v. Compagnie des Bauxites de Guinée*,
    456 U.S. 694 (1982) ………………………………………………..   35

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir.1992)  …………………………………………   34

*Kapche v. Holder*,
    677 F.3d 454 (D.C. Cir. 2012) …………………………………………   22

*\*Keener v. United States*,
    181 F.R.D. 639 (D. Mont. 1998) …………………………………   38, 39

*Klonoski v. Mahlab*,
    156 F.3d 255 (1st Cir.1998) …………………………………………   22

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
    427 U.S. 639 (1976) ………………………………………………   34

*\*Norden v. Samper*,
    544 F. Supp. 2d 43 (D.D.C. 2008) ………………………………….   22

*Olgyay v. Soc'y for Env't Graphic Design, Inc.*,
    169 F.R.D. 219 (D.D.C. 1996) ……………………………………… 40

*Outley v. New York*,
    837 F.2d 587 (2d Cir.1988) ……………………………………… 23

*Richardson v. Korson*,
    905 F. Supp. 2d 193 (D.D.C. 2012) ……………………………… 23, 38

*Secord v. Cockburn*,
    747 F.Supp. 779 (D.D.C.1990) ……………………………………….. 40

*Senkow v. Herrington*,
    Civ. No. 86–2220, 1989 WL 46747 (D.D.C. Apr. 25, 1989) ………….. 40

*Smith Wilson Co. v. Trading & Dev. Establ.*,
    Civ. No. 90–1125, 1991 WL 171689 (D.D.C. Aug. 20, 1991) ……….. 40

*U.S. ex rel. Miller v. Bill Harbert Int'l Const.*,
    No. CIV.A.95 1231 RCL, 2007 WL 861111, (D.D.C. Mar. 20, 2007) .. 30

*U.S. ex rel. Morsell v. NortonLifeLock, Inc.*,
    567 F. Supp. 3d 248 (D.D.C. 2021) ……………………………… 22

*U.S. ex rel. Morsell v NortonLifeLock, Incl*,
    No. CV 12-800 (RC), 2023 WL 314506 (D.D.C. Jan. 19, 2023) ……... 4

*United States v. City of New York*,
    No. 07–2067, 2010 WL 2838386 (E.D.N.Y. July 19, 2010) …………. 22

**Federal Statutes**

31 U.S.C.A. §3729 (a)(1)(A) ……………………………………… 4, 23, 41

**Rules**

Fed. R. Civ. P 16(b) ……………………………………………….. 40

Fed. R. Civ. P. 26 ……………………………………………… *passim*

Fed. R. Civ. P 37 ……………………………………………… *passim*

Fed. R. Civ. P 45 ……………………………………………….. 20

LcvR 16.4(b) ................................................................ 40

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel* | ) | |
| WILLIAM "BILL" SMITH | ) | |
| | ) | |
| | ) | |
|     Plaintiff-Relator | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:18-cv-02080-APM |
| ATHENA CONSTRUCTION GROUP, | ) | |
| INC, *et al* | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |
| | ) | |

<u>**DEFENDANT ATHENA CONSTRUCTION GROUP, INC'S. MEMORANDUM IN SUPPORT OF MOTION TO STRIKE RELATOR'S EXHIBITS AND EVIDENCE PURSUANT TO FRCP 37**</u>

Defendant Athena Construction Group, Inc. ("Athena"), through counsel, submits this

Memorandum in support of its Motion to Strike Evidence and Exhibits J,K,L,M,N and O

appended to Plaintiff's Opposition to Summary Judgment on the basis that the documents were

not produced or identified during discovery pursuant to multiple discovery requests, court

direction and FRCP 37 requirement to supplement materials during the course of discovery.

Athena also requests that this court strike the portions of Relator's Opposition to Motion for

Summary Judgment that identify, reference, rely upon or discuss the late produced exhibits.

**I.      SUMMARY JUDGMENT MOTION**

Fact discovery in this matter closed as of March 31, 2023 Ex. 1.  Subsequent to that time,

this Court entered a discovery order related to expert testimony.  Expert discovery closed on July

31, 2023 Ex. 2.  At that point, at the request of counsel, this Court entered a scheduling order for

the preparation and submission of Defendant's Motion for Summary Judgment related to the

HUBZone issues remaining in the Third Amended Complaint ("TAC").  Defendant Athena filed

its Motion and Memorandum in Support of Summary Judgment on  September 11, 2023. ECF

158  In response, counsel for Relator sought an extension of time of thirty days to submit their

opposition purportedly because of a federal holiday (Columbus Day) and a family weekend

planned by one of Relator's counsels.  ECF 162. Relator's opposition, filed on October 24, 2023

identified and appended fifteen (15) exhibits to the Statement of Material Facts in support of

their opposition.  Upon review of those exhibits, Defendant identified multiple exhibits

comprised of documents that were not previously produced or identified during the fact

discovery segment of this litigation nor at any time in the seven months subsequent to the close

of fact discovery and instead, for the first time, were appended to Relator's Opposition to

Defendant's Motion for Summary Judgment. The parties conducted a meet and confer and

subsequent to that discussion, the production of the following exhibits were determined to be in

violation of FRCP 37 by Defendant.

-Exhibits. J, K, L, and M:  These exhibits are comprised of pages of printouts from the website

USASpending.gov ("USASpending")

> -Exhibit J is represented as identifying the HUBZone contracts awarded to Athena  and
>
> amounts "paid" to Athena in connection with those contract; ECF 166-4, Para 11,12;
>
> attached hereto as Ex. 3.

> -Exhibit K is represented as Contract HQ003414D0005 awarded to Athena in March of
>
> 2014;  ECF 166-4, Para 90, 91; attached hereto as Ex. 4.

> -Exhibit L is represented to be a task order for HQ003414D0005 purportedly showing
>
> amounts paid to Athena; ECF 166-4, Paras 91, 95;  attached hereto as Ex. 5.

-Exhibit M is represented to be a task order for a DOD project; ECF 166-4, Para 92; attached hereto as Ex. 6.

-Exhibits N and O are identified as Pay Apps (Ex. N), attached hereto as Ex. 7 and a wire transfer (Ex. O), attached hereto as Ex. 8.

Although Exhibits N and O bear an Athena Bates stamp designation (ACGxxx), they were not produced in this matter but rather were part of discovery in an arbitration matter, *RE Construction vs. Athena Construction Group, Inc*. wherein Relator's counsel, Glenn Ellis represented his brother, Ralph Ellis, as the owner of RE Construction against Athena.  This contract dispute was initiated prior to filing of the original Complaint in this matter and resolved in 2018.  Mr. Smith was not a party to this matter and the action was not related in any way to the issues raised in this false claims act matter.

At no time during the seven years that this matter has been pending –  before, during or after the fact discovery period of this litigation – did Relator give any indication in any manner that he had, or intended to rely on, USASpending.gov or any documents in Mr. Ellis's possession because of his representation of RE Construction to support any elements of their claims against Athena.  The first notice of the use of either of these sources of materials was when the Opposition to the Motion for Summary Judgment was filed, almost seven months after the close of discovery.  The Court may infer that the  late introduction of this purported evidence was necessitated because, as addressed in Defendant's Motion for Summary Judgment and Memorandum,  Relator failed to produce or identify during the discovery period any evidence to support an element of his cause of action.  This failure occurred despite Defendant's numerous specific requests for the production of that evidence and despite Relator's imputed knowledge, as

3

early as 2016, that evidence of the submission of claims to the government is one of the three elements Plaintiff would have to prove to prevail under the False Claims Act. The elements of a False Claims Act (FCA) "presentment" claim are that: (1) defendant submitted or caused to be submitted a claim to the government; (2) the claim was false; and (3) defendant knew the claim was false. 31 U.S.C.A. § 3729(a)(1)(A). *United States ex rel. Morsell v. NortonLifeLock, Inc.*, No. CV 12-800 (RC), 2023 WL 314506 (D.D.C. Jan. 19, 2023).

The late introduction of all of these exhibits is in stark violation of Rule 37. Athena requests this court not consider, and otherwise strike from the record, the evidence Relator identified for the first time in his Opposition to Defendant's Summary Judgment Motion as required by Rule 37. Athena also requests that this court strike the portions of Relator's Memorandum in Support of Opposition to Summary Judgment that rely on, refer to or discuss these exhibits. While Athena understands that Courts are normally reluctant to impose sanctions where such action could effectively result in the dismissal of the claims, a situation as egregious as the one at bar warrants such sanctions.

While courts are also reluctant to punish a party for the actions and inactions of their attorney, the Relator is owed no such deference here. Mr. Smith, the Relator in this matter, stands in the place of the true Plaintiff, the U.S. Government. Mr. Smith himself suffered no personal harm from the alleged fraud related to Athena's HUBZone status. Further, Relator has never identified any actual payments made to any attorney appearing on his behalf in this case, nor has he identified any contractual liability to any attorney for attorney's fees.[1] Mr. Smith

---

[1] Baron & Budd, co-counsel for Relator in this matter, advertised on their website that all of their matters are handled on a contingency basis. "If not successful, we absorb the debt, and you have nothing to pay. We (not you) bear the risk that we might work and pay expenses for which we may never be compensated." https://baronandbudd.com/about/contingency-fee/ There is no

suffers no actual personal harm should this court strike the exhibits in this instance. There can be no doubt that the failure to timely identify and/or produce evidence that was specifically requested during  discovery was in the custody, possession or control of Mr. Smith's counsel and could have been identified by his counsel, was entirely in the control of counsel. Fact discovery was closely monitored by this court through the submission of Joint Status Reports (see ECF 127, 135, 138 and 148) and several conferences were held specifically to address open discovery issues (October 26, 2022, January 25, 2023, February 21, 2023).  The fact discovery period was only closed by this Court after careful investigation and questioning of counsels for both sides as to whether there were any outstanding or open fact discovery matters that still required attention. After review of the April 5, 2023 Joint Status Report (ECF 148) , this Court was comfortable that the parties had exhausted their opportunities to secure and identify evidence and appropriately closed fact discovery at that time.  Ex. 2. At no time in any Joint Status Report or during any of these conferences did Relator's counsel ever raise an issue related to an inability to secure evidence to support the allegation that Athena submitted false claims to the government, whether it be pay applications, invoices, accounting documents, banking records or any other types of circumstantial evidence that might satisfy his proof requirements on this element.

      As will be abundantly evident from a review of the Course of Discovery below, the ultimate sanctions required by Rule 37 are appropriate in this matter.  Relator either purposely withheld responsive documentation and information or failed to consider the need for such information until confronted with a Summary Judgment argument that could not be refuted. Neither is acceptable.  Relator should not be rewarded for his inattention to discovery simply

_____

evidence that Mr. Smith does not have a similar arrangement with Glenn Ellis Law inasmuch as when questioned during deposition, Mr. Smith could not identify a single penny he had expended to date for his representation. Ex. 9 P205L6-8.

because he will argue that Athena has not been "prejudiced" by this late reveal.  In truth, Relator's actions are inexcusable and only the imposition of a significant sanction will meet the moment. Further, this Court has on numerous occasions given Relator extensions of time for pleadings and leave for continued discovery beyond previously set deadlines (by rule and by the Court). The Defendant must at some point be vindicated by trusting in and relying on an ordered system of justice by complying with the Court's orders and following the Federal Rules of Civil Procedure.

Athena has adhered to the discovery schedules set out by this court and also adhered to the rules governing discovery.  It is highly prejudicial to Athena when its opponent chooses not to adhere to court imposed discovery deadlines nor the clear language of discovery rules and instead withholds evidence and continues to engage in active discovery nearly a full year after the close of fact discovery.  Athena has relied on the record it created during the discovery period.

## II.    COURSE OF DISCOVERY

Although the first of four complaints in this matter was filed in January of 2017 (ECF 1), the initial discovery schedule was not entered until May 21, 2022. ECF 120. Judge Mehta advised that any request for additional time to conduct discovery must be made on or before the close of discovery deadline.  A request for an extension of time made after the discovery deadline would be considered untimely. ECF 120.The scheduling order anticipated a fact discovery close date of November 23, 2022.  *Id.* Throughout the course discovery, this Court remained  open to extensions of deadlines as the situation warranted.

Fact discovery was closely monitored by this court through the submission of Joint Status Reports (see ECF 127, 135, 138 and 148) and several conferences were held specifically to address open discovery issues (October 26, 2022, January 25, 2023, February 21, 2023).  The fact discovery period was only closed by this Court after careful investigation and questioning of counsel for both sides as to whether there were any outstanding or open fact discovery matters that still required attention.  After review of the April 5, 2023 Joint Status Report (ECF 148), this Court was comfortable that the parties had exhausted their opportunities to secure and identify evidence and appropriately closed fact discovery at that time. At no time in any Joint Status Report or during any of these conferences did Relator's counsel ever raise an issue related to an inability to secure evidence to support the allegation that Athena submitted false claims to the government, whether it be pay applications, invoices, accounting documents, banking records or any other type of circumstantial evidence that might satisfy his proof requirements on this element.

The June 13, 2022 exchange of the parties' Rule 26(a)(1) disclosures was the first official step of the discovery process. Rule 26(a), section II requires a party to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment".  FRCP 26(a)9(1). Although Relator listed a number of categories of documents, he made it clear that NONE of those documents were in his possession, custody or control. Relator indicated that they anticipated securing all documents from Athena or the US Government. Ex. 10.

 a. **Athena's discovery efforts to secure relator's evidence**

On May 23, 2022, Defendant Athena served a First Request for Interrogatories and First Request for Production of Documents upon Relator. Responses to those requests were received on July 10, 2022. Exs. 11, 12. No documents were produced in response to the request for production of documents and the responses to the Interrogatories were vague and nonresponsive.

The following requests from the July 10, 2022 responses to the May 23, 2022 discovery requests are specifically relevant to this motion to strike.

*INTERROGATORIES*

| # | Request | Response |
|---|---------|----------|
| 8 | Explain how you came to be in possession of, or have access to, "employee lists" or "employee rosters" for Athena, the frequency with which you were able to access these lists, the business purpose for your access to these lists in connection with your responsibilities at Athena, the frequency with which you accessed these lists during your employment, the types of information provided on these employee lists and the last time you were able to access such a list. | The Plaintiff was regularly emailed employee rosters while he was Director of Operations. In part of the rosters [sic] were provided so that the Plaintiff could schedule and direct Athena's small work force. |
| 9 | With regard to the information put forth in Paragraph 164[2]of the Third Amended Complaint, explain in detail how you arrived at the number of distinct contracts – "31" – as well as how you calculated the total value of $87,646,677.06 for the purported 31 contracts. | Objection, this interrogatory is unduly vague, overly broad and references several undefined terms. Without waiving this objection, Paragraph 164 contains a table listing the contracts and the contract amounts. |

*REQUESTS FOR PRODUCTION*

| # | Request | Response |
|---|---------|----------|
| 4 | Copies of documents received through subpoena duces tecum, FOIA requests (whether | None |

---

[2] In describing the contents of the chart in Paragraph 164 of the TAC, Relator indicated that "Athena received at least 31 contracts totaling $87,646,677.06." The chart itself listed various contracts and contract information. ECF 66, ¶164.

| | | |
|---|---|---|
| | submitted/filed before or after suit was filed) or other formal or informal request in this matter. | |
| 5 | All documents in your possession that support the claims set forth in Count I and II of the Third Amended Complaint as it applies to Plaintiff's claims of "Athena's HUBZone scheme".[3] | Objection, this request is unduly vague, overly broad and references several undefined terms.  By way of further response, any documents relating to Plaintiff's HUBZone allegations are contained in the Hard Drive, which has already been provided to Athena[4]. |
| 6 | All documents in your possession that support the claims set forth in Count V [Retaliation] of the Third Amended Complaint including those that support Plaintiff's claims for damages. | Objection, this request is unduly vague, overly broad and references several undefined terms. |
| 7 | All documents in your possession, custody or control that form the basis for the allegations in the Third Amended Complaint set forth in Paragraphs 150-165. [Paragraphs 150-165 outline the claims specific to Athena's HUBZone certification and alleged contracts and contract value awarded as a result] | Objection, this request is unduly vague, overly broad and references several undefined terms.  By way of further response, **the Plaintiff's knowledge of Athena's HUBZone fraud does not come from any documents.** The Plaintiff's knowledge stems from the years he worked at Athena as its Superintendent and then Director of Operations. **The information and documents compiled by Plaintiff's attorneys constitutes attorney work product and as such is privileged. (emphasis added)** |
| 10 | To the extent not produced in response to the requests above, all documents that you reviewed or relied upon in preparing the Third Amended Complaint filed in this action. | Objection, this request is overly vague, overly broad and references several undefined terms. **By way of further response, the Plaintiff's knowledge of Athena's HUBZone fraud does not come from any documents.** The Plaintiff's knowledge stems from the years he worked at Athena as its Superintendent and then Director of Operations. **The information and documents compiled by Plaintiff's attorneys and that may have been used to draft the various complaints** |

---

[3] For instance, Paragraph 8 TAC alleged: Defendants agreed to enter into this scheme to present these false claims and statements to the United States, and these false claims and statements were made in furtherance of conspiracies to defraud the United States. The purpose of the scheme has, at all relevant times, been to receive payment under false pretenses for claims submitted to the United States. ECF 66.

[4] The Hard Drive was never produced in discovery in this matter.  Rather, the physical hard drive was returned to Athena by Relator in order to settle *Athena Construction Group, Inc. v. William Smith, III,* 1:20 CV-00073-CMH-MSN, wherein Athena was forced to sue Relator to return its property when Relator refused to relinquish it.

| | | **filed in this matter constitutes attorney work product and as such is privileged. (emphasis added)** |
|---|---|---|

Because of deficiencies in these responses,  Defendant Athena submitted a July 14, 2022 request for more specific responses to the Requests for Production and Interrogatories.  Ex. 13 A "meet and confer" was conducted on August 2, 2022.  Other than agreeing to provide documents related to his multiple FOIA requests if he could locate them[5], Relator otherwise stood on his objections and position that there were no responsive documents to produce.  Ex. 13

On August 22, 2022, Relator responded to Defendants Second Requests for Production of Documents. Ex. 15.  Request #12 sought "a copy of the 'employee list' referenced in Paragraph 155 of the Third Amended Complaint."  In response, Relator advised "see attached and Exhibit A".  The "attached" referred to three pages of "Recall Rosters" identifying Athena employees for certain dates in January and August of 2015. Ex. 15 PP10-12.  The "Exhibit A" referenced was the Ex A attached to Relator's Rule 26 Initial Disclosures. Ex. 10, PP11-13.  There was no explanation as to why the Recall Rosters were neither identified in Plaintiff's Initial Disclosures nor produced in response to the various document requests in the initial Request for Production of Documents as they were in Relator's possession from the time of his January 2016 termination by Athena.

Relator supplemented their response to Request for Production #5 seeking all documents that support the claims set forth in Counts I and II of the TAC as it applies to Plaintiff's claims of

---

[5] Mr. Ellis did not recall making FOIA requests until brought to his attention by Athena in their request for more specific responses.  During the meet and confer call, Mr. Ellis indicated that he would try to locate any documents received in response to those requests and produce. Ultimately, approximately 40 pages were produced but there were no substantive documents contained therein.  Ex. 14.

"Athena's HUBZone scheme" through an October 24, 2022 Supplement. Ex. 16.  As a supplement to the initial response that directed Defendant to the Athena hard drive, Relator advised that he had requested "rosters, employee files and payroll records" from Athena. Relator further identified "sample" documents purportedly contained on the hard drive that were responsive to this request.  A few sample pages of documents were attached to the response. Although the documents carried a Bates designation, Athena did not have access to a Bates stamped version of the hard drive.

### b. Relator's Failure To Seek Evidence

Relator hit the ground running with discovery when, within seven weeks of Relator's termination from Athena, counsel for Relator started a multi-month submission of FOIA requests to various government agencies seeking "Any and all HUBZone/Service-Disabled Veteran-Owned (SDVOSB)/Woman Owned (WOSB) set aside SBA contracts awarded to Athena Construction Group, Inc. from 2010 to present" as well as "Any and all SBA contracts awarded" to Athena where the contracting officer "considered and gave credit for the company being HUBZone, SDVOSB and/or WOSB." Ex.14, P5. Some of the requests specifically identified "applications, email, letters and bids you have pertaining to" all contracts awarded to Athena from 2010 to the present. *Id*, P44. There were no requests for payment applications, payment certifications or any other documentation that would support the allegation that Athena submitted false claims to the government in connection with HUBZone contracts.

Based on the contents of the documents provided when Plaintiff supplemented his response regarding FOIA documents, Relator apparently did not receive any substantive documents in response to the FOIA requests.

After the exchange of Rule 26 Initial Disclosures, Relator served requests for

Interrogatories and Production of Documents on Athena which were answered in August of 2022

(Ex. 17) and with Response to Request for Production supplemented on October 31, 2022.

Ex.18.  Requests pertinent to the issues presently before this court were:

Requests for Production of Documents -Issued July 10, 2022

| 7 | Produce a copy of all HUBZone set aside contracts that you were awarded from 2011 through 2017. | A copy of HQ003414D0005 and related task orders will be produced to the extent that Athena is able to locate such documents. *SUPPLEMENTAL RESPONSE*:  See ACG000001-000224. |
|---|---|---|
| 26 | Provide a copy of your Federal Business Income tax Returns from 2011 to 2017. | Athena objected to this request on the basis of the time period (which extended beyond the time of Relator's employment) and on the basis that it was not likely to lead to admissible or relevant information based on the allegations remaining in the TAC.  "If Plaintiff provides an explanation for the basis for this request, Athena will reconsider this objection." |
| 27. | Provide the Federal Personal Tax Returns from 2011 to 2017 for all owners of defendant Athena who have 20% or more ownership, including all attachments and schedules. | Athena raised multiple objections to this request along the lines of those raised to the company tax returns. Athena offered to reconsider their objections if Relator provided a good faith basis for this request. |

At no time subsequent to the service of his initial Request for Production of Documents

did Relator issue any formal supplemental discovery requests nor did Relator ever discuss any

perceived deficiencies in the responses or seek more specific responses.

### c. Subsequent Course Of Discovery

During the October 26, 2022 Status Conference and at the specific request of Athena, this

Court directed Relator to produce the actual documents that were on that Hard Drive that Relator

used to support his HUBZone allegations. ECF 136, PP12-13. Although ultimately more than

2000 documents were produced, none of the documents produced were related to paragraph 157 or to the submission of claims (The documents were mainly comprised of dozens of Requests for Information (RFIs) related to a project at the National Museum of African American History and Culture, a handful of related emails all dating from 2012 and 2013. A sample of the RFI is attached as Ex. 20. Despite Relator's representations to the contrary, there were no emails, no internal emails, no employee rosters, no payroll or time sheets – essentially nothing that provided any support for the information contained in Paragraph 157.  A list of the produced documents by Bates number is attached as Ex. 19.

During this October conference, Mr. Ellis mentioned the need for Athena documents "relating to Athena's HUBZone certifications, their submission to the SBA, their communications with the SBA, their audits with the SBA, all the internal documents regarding Athena's eligibility maintained of their HUBZone certification, leases, and things like that." ECF 136, P18.  Counsel made no  mention of requests for pay applications, invoices or any type of proof of payment -  nothing that would provide evidence to support the allegation that Athena submitted a false claim to the government.

During December, both parties raised discovery related issues and this Court directed that the parties submit a Joint Status Report by December 30, 2022 outlining any unresolved discovery issues. Ex. 21 The December 30, 2022 Joint Status Report laid out a number of open discovery issues from Relator's perspective that involved the Athena personnel and payroll records, tax returns and banking records. ECF 138, P5. Relator specifically advised the court that he was seeking copies of both business and personal tax returns for Athena and Ms. Peebles claiming that they were "relevant in that they can serve as a verification of the address and payroll information being provided to the Government."  *Id*. Banking records were also

requested "to provide important verification of the certified payrolls and employee rosters submitted to the Government in that they will show if certain employees received and cashed company checks." *Id*. Bank records were never requested in the formal discovery requests served prior to this time (nor were they requested in an informal discovery request). Ex. 17.

Relator's counsel was provided the opportunity to discuss each of these discovery issues during the January 25, 2023 conference. Relator raised general complaints related to Athena's production to date, but did not ask this court to address the production of tax or bank records, nor did Relator raise any issue with securing evidence to prove the submission or payment of claims. ECF 146, PP4-8. Athena disputed counsel's claims related to issues with the production to date.

To clarify any questions related to the methods utilized by Athena in document production as well as to clarify if all responsive materials had been provided, this Court provided Relator the opportunity to secure a 30(b)(6) deposition of a company representative who "can describe the efforts that have been made to identify responsive documents to your request." ECF 146, P18L12-13. "And if you can't resolve any disputes after that, you will let me know, because at least then I'll have a paper record, somebody actually articulating who has knowledge of what was done." *Id* at P18L21-24.

The only other issue raised by Relator during this conference concerned the scope of the discovery period, which Judge Mehta confirmed extended through the end of 2017. ECF 146. P21L8-11.

Via email of January 30, 2023, Athena provided four full days of availability for Athena's 30(b)(6) representative. Ex. 22, P2. Although Relator was asked to confirm the selected date and forward a deposition notice, nothing further was heard from Relator on this issue until March 8, 2023. This was after the February 21, 2023 status conference wherein,

based on representations of counsel, this Court identified the only open discovery as the deposition of Ms. Papa and the five "fake" employees discussed by Relator. ECF 147, Ex. 1. Despite being outside the discovery window, through a March 16, 2023 email, Athena offered to make their 30(b)(6) witness available on March 28, one of the dates counsel offered for the deposition of Ms. Papa. Ex. 23, P1.

On February 8, 2023, Relator conducted the deposition of a fact witness, Amber Peebles. During that deposition, Relator asked Ms. Peebles about the identification of HUBZone contracts awarded to Athena during the relevant time period and she confirmed that there were probably 5-6 HUBZone contracts during the relevant time period. Counsel asked Ms. Peebles if she could locate copies of any beyond the two previously produced and if so, provide them to counsel. Ex. 24, P104L4-P107L3.  No questions were posed concerning whether Athena could produce pay applications or any other type of documentation that might support the submission of claims and/or the receipt of payments from the Government nor was Ms. Peebles asked to describe the claim submission process or to even confirm if Athena did submit pay applications.

Subsequent to the deposition of Ms. Peebles, Relator issued an informal "request for production" seeking various types of documents referenced during the deposition of Ms. Peebles. With the exception of tax returns, none of the documents on the list had been included in the prior formal request for production.  There was no request for Athena payment claim submissions to the Government. Ex. 25.

On February 16, 2023,  Relator filed a motion to modify the scheduling order by extending the fact discovery end date from February 17, 2023 to May 1, 2023.  The reasons put forth for this request centered around complaints related to Athena's document production as well as Relator's belated attempt to serve a supplemental request for production of documents

via email and with less than thirty days left in the discovery period.  There was no mention of an inability to secure the deposition of an Athena 30(b)(6) witness related to the document production. ECF 144.

This motion was considered at the time of the post-discovery status conference on February 21, 2023.To support his motion, Relator's counsel maintained that the February 8, 2023 deposition of Amber Peebles revealed the need for additional documents. ECF147, P3L12-21. However, with the possible exception of the police report identified in Ms. Peebles' deposition errata sheet, none of the referenced documents would have been unknown to Plaintiff earlier in discovery.  In addition, counsel indicated that he required additional time to take the deposition of five Athena "proxy" employees, maintaining that Relator did not have access to these individuals last known addresses until receipt of the Athena personnel files.[6] ECF 147, P5L6-15.

Counsel also complained that he still needed the 30(b)(6) deposition; however, counsel never responded when Athena provided the option of four full days for that deposition. Rather, after the fact, Relator instead complained to this Court that the dates offered were too late. ECF 147, P5L20-P6L3. Ultimately, this Court determined that no further time would be permitted for document discovery and production.  "If there is material that falls within the four corners of prior discovery request that have not been produced, and that is something you have learned

---

[6] Even this representation is false, however.  The identities and phone numbers of five alleged proxy employees were available to Plaintiff from the very start of this litigation through the Employee Roster in Mr. Smith's possession. Ex. 15,PP10-12. The specific employees – Mary Palmer, Lynn Nelson, Gay Dameron, Yvonne Grant-Robinson and Mary Frezza were all identified on the 2015 Employee Rosters produced by Relator through their August 22, 2022 Response to Second Request for Production. Even more significant is the fact that Plaintiff had secured forensic reports ("TOL") on each of these individuals in 2018 that listed various addresses and phone numbers for each individual. Ex. 26 Sample TOL. Since Athena's personnel records were only produced through the end of  2017, any information Relator secured in 2018 concerning the last known address of these individuals would have been more recent than any information provided by Athena..

through deposition, then that's a different story.  I'm not going to extend time for new discovery demands." ECF 147, P12L18-25.  Judge Mehta ruled that discovery would be extended for forty-five (45) days to permit Relator sufficient time to locate and secure the depositions of the five (5) Athena employees despite the fact that Relator should have done that months prior. ECF 147, P13L1-16.  During that discovery time extension, the deposition of Ms. Papa previously noticed via *Subpoena Duces Tecum*, would be conducted.  "And we'll wrap up fact discovery then on March 31st, okay?" *Id.*

On March 8, 2023, in complete contradiction to the February 21, 2023 directions of this Court related to permitted remaining discovery, Relator served deposition notices for three 30(b)6 depositions – one related to the electronic production, one related to the HUBZone allegations and one related to the retaliation claim.  The deposition notice for the HUBZone 30(b)(6) witness did not identify any topics that would speak to the submission of payment claims on behalf of Athena.  Ex. 27 PP5-6.

The fourth notice was for the deposition of fact witness, Melissa Schneider (Ms. Schneider's deposition was previously scheduled and subsequently cancelled by Relator the day prior to the scheduled date). Ex. 24, P159L18-23, Ex. 28. Athena declined to produce three of the four requested deponents, advising counsel that such were not authorized by Judge Mehta and the terms of the February 21, 2023 minute order. Ex. 1.  Despite being outside the discovery window and not specifically authorized by the Court, Athena offered to make its 30(b)(6) witness related to Athena's document production available on March 28, one of the dates counsel offered for the deposition of Ms. Papa. Ex. 23.

By minute order of March 24, 2023 this court clarified the February 21, 2023 discovery determination and indicated that the two 30(b)(6) depositions related to the HUBZone and

Retaliation claims were beyond the scope of those authorized by the court. Ex. 29. Relator never responded with regard to Athena's offer to produce the witness related to document production despite Relator continuing to raise issues with this Court related to Athena's production.

Subsequent to the February 21, 2023 conference where this Court granted Relator an additional forty-five days to conduct the depositions of five alleged "fake" employees, there is no evidence that Relator issued a single subpoena for any of those witnesses.  Although Relator argued that Defendant would have no idea who might be cooperating with Plaintiff and "are prepared to file affidavits in support of the allegations made against Athena," (ECF 149, P2) at no point since that date has Relator served any witness affidavits nor supplemented discovery with witness information.

Per minute order of April 7, 2023 this Court declared that with the exception of two open discovery issues involving a report referenced by Ms. Peebles and invoices and proof of payment related to Relator's claimed retaliation damages, fact discovery was closed. Ex. 2. At no time between that conference and the date of this filing was Defendant copied on any *subpoenas duces tecum* directed to any of the "fake" employees referenced by Relator's counsel.  No affidavits or supplements to discovery were served with regard to potential witnesses or knowledge of those witnesses despite Relator's counsel's April 5, 2023 assertion that Defendant would have no idea who might be cooperating with Plaintiff and was "prepared to file affidavits in support of the allegations made against Athena," ECF 149, P2.

With the close of fact discovery, the parties then entered the expert stage of discovery which ran through July 31, 2023.  Thereafter, a post-discovery conference of August 2, 2023 yielded the Summary Judgment briefing schedule. ECF 156.

Defendant Athena, per the briefing schedule entered by this court, filed its Motion and Memorandum in Support of Summary Judgment on September 11, 2023. ECF 158.  On September 27, 2023, more than two weeks into the thirty-day response period, Relator filed a motion to extend his response time a full thirty days because of the Columbus Day holiday and a family weekend scheduled for one of the four attorneys actively representing Relator.  ECF 162.

It seems, however, that Relator required the extension to respond because of a need to reopen discovery. On October 15, 2023, counsel for Relator reached out to one of the "proxy" employees, Gay Dameron, in an attempt to secure her interview.  He followed up two phone calls with an email on October 16, 2023, seeking information related to her employment by Athena. Ex. 30 P2[7]  As a reminder to this Court, Ms. Dameron's name and phone number was available to Plaintiff since the inception of this suit. Ex. 15, PP10-12. This discovery attempt took place seven months after the close of fact discovery.

Via his October 16 email, Mr. Ellis provided Ms. Dameron with an 11-page report prepared by Athena listing the names, addresses and last 4 digits of the social security numbers of nearly five hundred Athena employees from 2012 through 2019.  This information was protected and confidential and there was absolutely no purpose served in providing this document to Ms. Dameron. Athena is not aware of how many other individuals were provided a copy of this document by Relator's counsel in his last ditch and untimely efforts at discovery. This document is contained within Ex C. to the Opposition to Summary Judgment that Mr. Ellis petitioned the court to file under seal because of the sensitive PII contained within the

---

[7] The attachment to the email presented at Ex. 30 is provided to this court in redacted format to protect the PII contained therein. Only one of five (5) pages listing employees is provided and all information related to employees other than Ms. Dameron is redacted. The attachment as provided to Ms. Dameron was NOT redacted and exposed the protected and confidential PII of nearly 500 individuals to a third party with no need for, or right to, that information.

documents. ECF 167, Relator's Ex C PP643-655. No information was redacted from the copy provided to Ms. Dameron.

In addition to his extremely tardy attempts at witness contact, counsel also utilized the additional time to "find" evidence to support a key element of his claim – USASpending.gov and Athena documents Mr. Ellis apparently culled from a 2017 matter wherein he represented RE Construction against Athena - evidence which he clearly failed to request, secure, disclose or even reference during the extended discovery period. Relator represents that he did not access the USASpending.gov website (Exs. J, K, L, M) until October 17, 2023 and further, was not "in possession" of the 2018 Atheana documents (Exs. N, O) until October 20, 2023.  Counsel provided no insight into how he suddenly came to "possess" those documents. Ex. 32.

As is clear from the chronology set forth above, at no time did Plaintiff seek copies of pay applications, pay certifications or any other documents that would support Plaintiff's claim of violation of the initial element of a False Claims Act claim, at any point during the discovery period. Relator could have submitted FOIA requests or even more appropriately, *subpoenas duces tecum*, under FRCP 45. Despite multiple discovery requests that would have required the identification of these documents, at no time during the open fact discovery period, or at any point in the seven months between the close of fact discovery and the filing of the Summary Judgment motion, did Plaintiff make any attempt to seek permission to reopen discovery in this matter or actually serve additional documents on Athena. Relator, in the seven years since the original Complaint was filed, made no attempt to secure this crucial and dispositive evidence.

Relator never sought the very evidence that he has now, only in opposition to Defendant's Motion for Summary Judgment, located and submitted to the Court to prevent the dismissal of his suit.  While the striking of evidence is considered a harsh sanction, a harsher

sanction would be to penalize Defendant for abiding by the discovery scheduling order and

completing discovery during the allotted time. It is fundamentally unfair to force Defendant to

answer evidence produced seven (7) months after the close of discovery that Relator clearly

knew from the filing of the original Complaint was necessary to prove his case yet undertook no

specific steps to actually collect or secure that information during the seven years that his matter

was pending. ECF 1 ¶¶5, 98, ECF 66, ¶¶163-165.

As stated by counsel, "once the issue of claim/payment was raised in Athena's Motion

for Summary Judgment, Plaintiff sough alternative evidence to establish what Athena admits to

on its website and promotional material – i.e. that it does business with the Government." Ex. 32

P1. It appears only after receipt of Defendant's Memorandum in Support of Motion for Summary

Judgment did Relator decide it was time to engage in serious discovery.

## III.    LEGAL ARGUMENT

Pursuant to Rule 26(a) "a party must, without awaiting a discovery request, provide to the

other parties:

> **(ii)** a copy--or a description by category and location--of all documents,
> electronically stored information, and tangible things that the disclosing party has
> in its possession, custody, or control and may use to support its claims or
> defenses, unless the use would be solely for impeachment;

> **(iii)** a computation of each category of damages claimed by the disclosing party--
> who must also make available for inspection and copying as under Rule 34 the
> documents or other evidentiary material, unless privileged or protected from
> disclosure, on which each computation is based, including materials bearing on
> the nature and extent of injuries suffered."  Fed. R. Civ. P. 26.

Rule 26(e) further requires a party to supplement its initial disclosures, or responses to

discovery, "if the party learns that in some material respect the disclosure or response is

incomplete or incorrect, and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process or in writing." Fed. R. Civ. P.

26(e)(1)(A).  Supplementation is required, "if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing." Fed.

R. Civ. P. 26(e)(1)(a); *see Kapche v. Holder*, 677 F.3d 454, 468 (D.C. Cir. 2012). *Estevan v.*

*Garland,* No. 1:21-CV-02497 (TNM), 2023 WL 1100448, at *8 (D.D.C. Jan. 30, 2023).

Rule 37 imposes sanctions for a party's failure to comply with their obligations set forth

in Rule 26.

> Rule 26(e) requires a party who has made a disclosure under Rule 26(a) or who
> has responded to, among other things, a request for production to supplement its
> disclosure or response "in a timely manner" if the party learns that the disclosure
> or response is materially incomplete or incorrect. Fed. Civ. P. 26(e)(1)(A); *see*
> *also In re Sept. 11th Liability Coverage Cases*, 243 F.R.D. 114, 124 (S.D.N.Y.
> 2007) ("The duty to disclose that arises under Rule 26 does not terminate after the
> first responsive answer or production, but is a continuing obligation."). A party
> proposing to admit evidence that it failed to disclose pursuant to Rules 26(a) and
> (e) "bears the burden of showing substantial justification and lack of harm" to the
> opposing party. *Norden v. Samper*, 544 F. Supp. 2d 43, 49–50 (D.D.C. 2008)
> (citing *Coles v. Perry*, 217 F.R.D. 1, 5 (D.D.C. 2003)).

> *United States ex rel. Morsell v. NortonLifeLock*, Inc., 567 F. Supp. 3d 248, 260–61
> (D.D.C. 2021).

> Rule 37(c)(1) is a self-executing sanction, and the motive or reason for the failure
> is irrelevant. It therefore is unnecessary to decide whether the [Plaintiff] acted in
> bad faith ... or was simply sloppy in its search for relevant documents and in
> assisting its litigation counsel in responding to interrogatories." *Elion v. Jackson,*
> No. 05–0992, 2006 WL 2583694, at *1, 2006 U.S. Dist. LEXIS 63854, at *2–3
> (D.D.C. Sept. 8, 2006). "The overwhelming weight of authority is that preclusion
> is required and mandatory absent some unusual or extenuating circumstances—
> that is, a 'substantial justification.' " *Id.* at 2006 WL 2583694, at *1, 2006 U.S.
> Dist. LEXIS 63854, at *3 (citing *Klonoski v. Mahlab,* 156 F.3d 255, 269, 271 (1st
> Cir.1998)).

> *Norden v. Samper,* 544 F. Supp. 2d 43, 49–50 (D.D.C. 2008).

"Because preclusion of evidence is an extreme sanction, however, a court must consider

less drastic responses before imposing this sanction. *See United States v. City of New York,* No.

07–2067, 2010 WL 2838386, at *3, 2010 U.S. Dist. LEXIS 72343, at *9 (E.D.N.Y. July 19,

2010) (quoting *Outley v. New York,* 837 F.2d 587, 591 (2d Cir.1988)).” *Richardson v. Korson,*

905 F. Supp. 2d 193, 200 (D.D.C. 2012).

It is, however, Relator's burden to show "substantial justification and lack of harm" to

Athena. *Coles v. Perry,* 217 F.R.D. 1, 5 (D.D.C.2003).

## IV.   RULE 37 VIOLATION

### a.   There is NO Substantial Justification for Relator's Failure to Timely Supplement Discovery

#### 1. Plaintiff Was Aware Of Need For Proof For Seven Years

As of the close of fact discovery on March 31, 2023, this matter had been in the hands of

Relator's counsel for seven full years, based on the March 2016 FOIA requests produced during

discovery. Ex. 14. Although the specifics of Relator's claims shifted throughout the course of the

four versions of the complaint in this matter, as stated in the original complaint and echoed

through the ensuing three amended complaints, Relator alleged that Athena knowingly

presented to the US Government, false or fraudulent claims for payment in violation of the False

Claims Act  31 U.S.C. 3729 (a)(1)(A), "specifically the $22 million in invoices submitted by

defendant". ECF 1, ¶¶5. 98. There is no question that Relator was aware that evidence of

presentation of claims to the government was an element of proof necessary to prevail on their

complaint.  In defending against Athena's Motion to Dismiss, Relator specially referenced that

the "TAC alleges thirty-one (31) requests for payment" made by Athena in which Athena

"specifically represented itself as a HUBZone business." ECF 71, P34. Yet, it cannot be denied

that there is no evidence that Relator took any meaningful steps at any point during the seven

years that this matter was pending prior to the close of fact discovery to secure any evidence on

this issue.  Despite issuing  no discovery requests on point, despite failing to disclose requested

evidence to Athena, despite the close of fact discovery seven months ago and absent any request to this court to reopen the discovery period, Relator has simply thumbed his nose at various rules governing discovery and the multiple and specific discovery schedules entered by this court and dumped evidence in the lap of this court in opposition of the Motion for Summary Judgment filed on behalf of Defendant Athena Construction Group.

In an effort to determine the reason for the failure to identify and/or produce this evidence during the discovery period, Defendant requested a "meet and confer" with Relator's counsel. Ex. 31, PP4-5. During that meeting, Relator seemed to bounce between two excuses – the first being that Athena never requested this information and the second that Relator was under no obligation to produce this evidence because Athena was "aware" of it. Relator also seemed to believe that since this court "could take judicial notice" of the USASpending.gov documents (Exs. J,K,L,M) (despite no request from Relator that this court do same) that somehow relieved him of his discovery obligations related to that evidence. Ex. 31. These positions were repeated in counsel's November 6, 2023 written follow up to the "meet and confer." Ex. 32.

## 2. Exs. J, K, L, M, N & O Were Specifically Requested By Defendant During Discovery

Despite Relator's assertions to the contrary, the documents within these exhibits are responsive to Athena document requests #5, 7 and 10, *supra*. Ex. 12. Request #10 sought the production of any documents not already identified that were used to draft the TAC. Paragraph 164 of the TAC is a table purporting to identify all HUBZone contracts awarded to Athena during the relevant time period including multiple data points related to each contract and alleges "thirty one requests for payment that Defendant Athena made pursuant to its HUBZone certification." ECF 66, ¶164. Plaintiff's response to this request was unequivocal in stating that

there were NO responsive documents.  Relator further stated that "[t]he information and documents compiled by Plaintiff's attorneys and that may have been used to draft the various complaints filed in this matter constitutes attorney work product and as such is privileged." Ex. 12 at #10.

During the November 1, 2023  "meet and confer," Mr. Ellis stated that he relied on information in USASpending to create that chart and it may well be that he considered that material to be attorney work product.  However, Relator seems to contradict that position in the November 6, 2023 email which appears to claim that Plaintiff had no contact with USASpending prior to downloading the exhibits on October 17, 2023. Ex. 32. This statement, however, would contradict his position in the October 31, 2023 email that USASpending was utilized and referenced by this Expert, Arthur Collins in his May 19, 2023 report. Ex. 31, P3.

It is not possible or reasonable for Athena to push for the production of documents relied on by Plaintiff when Plaintiff insists that he did not rely on documents that are discoverable.  The responses to the document requests left no reason to push for a more specific response and as Plaintiff never supplemented that response, he is now bound by it. If Plaintiff withheld the fact that he utilized USASpending to craft portions of the SAC/TAC on the belief that that information constituted attorney work product, he cannot now claim that it must be considered by this court to allow the cause of action to survive the pending Motion for Summary Judgment.

Likewise, the documents that comprise Exhibits N and O were clearly in counsel's possession, custody or control from the time of the arbitration dating back to 2017.  Counsel argues that Athena can have no quibble with the late identification and production of these materials as he states:  "Let me repeat: these are Athena documents. So what is the harm and prejudice to Athena". Ex. 31P1.  There is no actual reason provided in any of the meet and

confer communications for the failure to identify the reliance on or produce these documents despite being squarely responsive to discovery requests. Exs. 31, 32.

### 3. **Plaintiff Failed To Request Evidence Of Claims For Payment**

Likewise, it is indisputable that Plaintiff took no steps to secure pay applications or invoices from Athena or any other source during the five plus years prior to the start of the actual discovery period or during the extended fact discovery period.  None of the requests in Relator's single Request for Production of Documents sought pay applications, pay certifications, invoices, proof of receipt of payment from the government, or any financial documents that would confirm payments or any other documentation that might support the allegation that Athena submitted false invoices to the government.  Even if Plaintiff subjectively but not reasonably believes that those documents would have been included in a request for copies of contracts after the August 2022 response and October 31, 2022 Supplemental Response by Athena (Exs. 17, 18, #7), he never provided a deficiency letter, never requested a "meet and confer" and never raised the issue of the non-production of such documents to Defendant or this Court, despite numerous court status conferences focused on open discovery issues.  In fact, during the deposition of Athena president, Amber Peebles, Mr. Ellis specifically asked her about copies of additional HUBZone contracts. He never asked her about the existence of pay applications/certifications or other such documents.  In addition, he failed to even confirm through questioning that Athena did, in fact, submit pay applications related to each of the HUBZone contracts to the US Government. Ex. 24, P104L21-P106L23.

In what appears to be a preemptive attempt to avoid the striking of these exhibits, Relator asserts in his Opposition to Summary Judgment that

> Plaintiff requested that Athena produce all documents relating to its HUBZone contracts, produce banking records to show payments made to Athena, and corporate tax

records. Ex. P at ¶7.  Athena objected to Plaintiff's request for banking and tax filing based on relevance since the payments made by the Government are publicly available Id. at ¶¶26-27.

ECF 166-4 FN4.

This is a wholly false assertion made without any supportive evidence. Relator cites to "Ex. P at ¶7, 26 and 27" as support for this statement. Exhibit P in ECF 166-4 are Athena's Responses to Interrogatories and Request for Production of Documents, referenced as Exhibit 17 in this document. As set forth, supra, Document Request number 7 sought copies of "contracts", not contract documents. Ex. 17 at 7. A review of the Request for Production of Documents reveals no request for banking records.  Corporate and personal tax returns were requested and Athena did object to each as follows:

> Athena objects to this request on the basis that it seeks documentation for the time period of 2011 through the present.  Mr. Smith was terminated from Athena in January 2016 and while Athena does not agree that plaintiff has any basis to allege that fraud occurred while he was employed by Athena, he has alleged no evidence of fraud continuing beyond his term of employment and testified that he has no information for that time period or factual basis upon which to put forth allegations of fraud for that time period. Any efforts to seek information beyond January 2016 is nothing more than a bad-faith fishing expedition unsupported by any evidence and is not appropriate.  This request is overly broad and will not be answered beyond the time period of Mr. Smith's employment.

> Athena further objects to this request on the basis that it is overly broad and not likely to lead to admissible or relevant information based on the allegations remaining in the Third Amended Complaint.  If Plaintiff provides an explanation for the basis for this request, Athena will reconsider this objection.

Ex. 17 at ¶¶26, 27.

Relator's statement as to representations made by Athena is a complete and total fabrication. There is nothing in the document request or objection that would even raise the issue of "payments" nor is there any language in the objection that is not clear and concise. This was not a mistake by Relator. This was a gross misrepresentation to give

Relator some cover for producing, long after the close of discovery, what they claim are proof of "payments" to Athena through a public source, USASpending.gov.  Counsel wanted this Court to believe that Athena has previously confirmed that USASpending was a source of proof of submission and payment of claims. Athena neither made reference to public information nor did or does Athena confirm that proof of submission and payment of claims is available publicly.

Further, as discussed in more detail, infra, Relator advised this court that he was seeking banking and tax records to verify address and payroll information. ECF 138 There was no mention either in the Joint Status Report (ECF 138) or when this issue was discussed during the January 25, 2023 status conference (ECF 146) of the need for these records to identify payments or claims.

### b. Relator Has No Reasonable Or Legally Supported Excuse For Failing To Produce

Relator does not refute the absence of documentation produced during the open discovery period to support the claim of false certifications for payment.  The opposition to summary judgment relied solely on documents that heretofore in this litigation had not been referenced, identified or produced by Relator.  These documents **were not** produced by Athena or any other party in the litigation before this court, and in fact, some were not even created until after submission of Athena's Motion for Summary Judgment was filed.  As represented by Relator, "[o]nce the issue of claim/payment was raised in Athena's Motion for Summary Judgment, Plaintiff sought alternative evidence to establish what Athena admits to on its website and promotional material – i.e. that it does business with the Government." Ex. 32, P1.

With regard to the RE Construction related documents (Exs. N and O), Relator's November 6, 2023 email argues that Relator is not in violation of Rule 37 because Plaintiff was not in "possession" of these documents until October 17, 2023, the time period during which he was crafting his opposition to the Motion for Summary Judgment. Ex. 32 PP1-2.  Mr. Ellis, however, fails to explain exactly how he did not come into "possession" of Athena's Bates stamped documents from the early 2017 arbitration matter of *RE Construction vs Athena Construction* until October 17, 2023.

 In the absence of an explanation, it is possible that Mr. Ellis secured these documents from archived files maintained either by Glenn Ellis Law or Freiwald Law.  RE Construction was represented by Glenn Ellis when he was still associated with Freiwald Law.  Mr. Smith retained Mr. Ellis and Freiwald Law to represent him in this matter and both remain Relator's counsel of record to this day.  During the pendency of this action, Mr. Ellis left Freiwald Law and formed his own firm, Glenn Ellis Law. It is reasonable that archived files for Mr. Ellis's former clients would have been transferred to him at the time of his departure from Freiwald Law.

Plaintiff appears to be arguing that "possession" did not occur until counsel actually pulled the documents from an archived file.  In reality, Plaintiff was in possession, custody and control of these documents since prior to 2018 when that arbitration matter settled.   It was only when counsel was confronted with his failure to secure and identify any evidence to support a key element of his claim, that he resorted to searching old files to locate these documents. It is disingenuous to argue that because Relator was not in  "possession" of these documents until October 17, 2023 that Athena can have no argument against the admission of these documents

into this litigation at this late date. Ex. 32 PP1-2. That argument is not founded in fact, law or fundamental judicial fairness.

Counsel also claims there is no Rule 37 violation because Athena would have been aware of the existence of these documents and therefore cannot claim surprise at their appearance. Exs. 31, 32.  To reach this conclusion, Relator distorts the language of FRCP 26(e)(1)(1) as discussed in *Estevan v. Garland*, No. 1:21-CV-02497 (TNM), 2023 WL 1100448 (D.D.C. Jan. 30, 2023) and *U.S. ex rel. Miller v. Bill Harbert Int'l Const*., No. CIV.A.95 1231 RCL, 2007 WL 861111, at *1 (D.D.C. Mar. 20, 2007).  *Estavan* discusses the exception to FRCP 26(e)(1)(a) that supplementation is only required "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." A true reading of the cases makes it clear that the information must be made known through something that occurs within the instant litigation.

Likewise, while Relator's meet and confer communications emphasized that the *Miller* court states that a party is "not expected to point out to its opponent information that the opponent can clearly glean on its own during discovery", (Ex. 32) the Miller court qualified that statement by confirming that the "party is required to make relevant information available to its opponent." *Miller* at *1  Realtor simply did not meet this obligation.

At no time during this litigation were any references, by required Disclosure, in writing, via deposition testimony or through any other means, made by Relator to his use or reliance on the *RE Construction* related documents. Relator does not argue that, and Athena can confirm that. These documents were in Plaintiff's possession, custody and control from as early as 2017, they were specifically requested by Defendant, they were not produced or identified during the

relevant discovery period and their inclusion at this point in discovery is in violation of Rule 26 and requires Rule 37 sanctions.

Likewise, the USASpending documents produced as Exs. J,K,L and M were not produced or identified during the discovery period.  In his pre-meet and confer response, counsel for Relator supported the inclusion of the USASpending documents by claiming that the "relevance and use of USASpending.gov data is discussed in" the report of Relator's expert Arthur Collins. Ex. 31 P3. The original report was dated May 19, 2023, weeks after the close of fact discovery. Ex. 33.

This argument lacks support inasmuch as under Rule26(a), an expert is required to identify the specific documents upon which he or she relied in preparing the report and reaching his or her opinions.  The body of Collins' report identified the TAC, documents purportedly contained within Relator's hard drive, discovery responses and production from Athena, and depositions of William Smith, Amber Peebles and Karen Papa.  Athena pressed Plaintiff for an itemized listing of the specific documents and same was produced to Plaintiff.  Ex. 33, PP37-45. All of the documents identified as having been relied upon by Mr. Collins were produced by Athena (ACG Bates designations).  Not a single document from the hard drive was identified, and most importantly, Mr. Collins did not identify any reliance, or even refer to a review of, USASpending.gov. in the list of documents upon which he relied.

The report itself references data from USASpending on pages 19 and 20. Ex. 33.  Collins references that website as the source of the contract information he cites in his report. He specifically provides a contract count and total value of those contracts. There is no discussion of utilizing that information as evidence of the submission of false claims nor does Collins give any

indication that he has any opinions with regard to Athena's submissions of claims for payment to the government, false or otherwise.

Seemingly inconsistent with Relator's position in the October 31, 2023 email (Ex. 31), Relator's November 6, 2023 post-meet and confer email tries to justify the late identification and production of USASpending information by the fact that during discovery, Relator requested Athena to produce copies of HUBZone contracts. Ex. 32. Relator argues that because Athena could not produce all of the contracts for the stated time period, Relator was forced to resort to USASpending to defend the Summary Judgment motion. *Id.*

As discussed above, Athena was clear early in discovery that it did not have copies of all of their contracts and there was no request for pay applications by Relator.  Relator was well on notice that he would have to secure those materials from a source other than Athena, yet he took no steps to do so.

Beyond that, it seems reasonable that given the content of Paragraph 164 of the SAC and TAC which lists 31 purported HUBZone contracts awarded to Athena during the relevant time period, that Relator secured that information from somewhere. It was made clear during Relator's deposition that he did not contribute that information. Ex. 9 , P113L5-P115L17. During the "meet and confer" conversation, (and not necessarily consistent with either the pre- or post-"meet and confer" emails, Exs. 31, 32), Mr. Ellis represented that he relied on the information in USASpending to create Paragraph 164.   Because no documentation or information was produced or identified during discovery that could have been the source of that information, it is reasonable to conclude that counsel did rely on USASpending to create Paragraph 164  It might also be reasonable to assume that Relator did not disclose that reliance in response to document request #10 (all docs that you relied to draft TAC) taking the position that that information

somehow constituted attorney-work product. Ex. 12 at 10. It would be highly inappropriate, though, for Plaintiff to be permitted to introduce this information at this late date after withholding this information on some claimed privilege when specifically requested during discovery sixteen (16) months ago. Unlike the paradox of Schrödinger 's cat, in the American legal system, information cannot simultaneously be both protected attorney work product immune from discovery and dispositive evidence which can be produced at the discretion of the Plaintiff.

In a creative effort to avoid sanctions under Rule 37, Relator's counsel claims there can be no violation of Rule 37 when they themselves just came into possession of all of these exhibits during the time period in which they were crafting their opposition to summary judgment. Ex. 32, PP1-2. This argument is not legally sound and completely ignores FRCP 26 and 37, ignores the import and weight of discovery deadlines and makes a mockery of those who litigate within the confines of those Rules and deadlines as well as the Court that establishes those deadlines. Based on that explanation, Federal rules, deadlines and court orders are meaningless, and discovery becomes a Wild West exercise in who can spring the last surprise on their opponent.

This argument as it relates to USASpending is contradicted by the existence of the contract information in the SAC/TAC itself and the apparent lack of any other source for that information. Counsel contradicted this argument during the "meet and confer" call when he stated that USASpending was used to craft portions of the SAC/TAC. Finally, the pre-meet and confer email argued that Athena was "put on notice" of USASpending by reference to same in the May 23, 2023 report of Mr. Collins. Ex. 31. It does not matter which of these three scenarios,

if any, are true as none of them excuse the late production/introduction of this evidence into this litigation seven months after the close of fact discovery.

Relator's position with regard to Exs. N and O is offensive.  The documents were clearly pulled from an archived file that has been in the possession, custody and control of Mr. Ellis and/or Freiwald Law since the actual arbitration concluded in or around January of 2018. The fact that Mr. Ellis did not recognize the need for those documents and pull them until faced with an inability to oppose Athena's summary judgment motion is not the same as *not* being in "possession, custody or control."  There is no excuse for Relator's lack of diligence.

## V.    STRIKING THE EVIDENCE IS THE ONLY SANCTION THAT WILL SERVE JUSTICE

"A Scheduling Order is intended to serve as the unalterable road map (absent good cause) for the remainder of the case." *Dag Enter., Inc. v. Exxon Mobil Corp.,* 226 F.R.D. 95, 104 (D.D.C.2005) (quotation marks omitted). It"'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.' " *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir.1992)).   *Artis v. Yellen*, 307 F.R.D. 13, 21 (D.D.C. 2014).  The production of exhibits seven months after the close of fact discovery and absent as much as a request to this court to reopen discovery, is a flagrant violation of the various scheduling orders entered in this matter and an affront to the efforts of the Court to shepherd this matter through a, at times contentious, discovery period.

"Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam)." *Bonds v. D.C.*, 93 F.3d 801, 807 (D.C. Cir. 1996).

"The central requirement of Rule 37 is that 'any sanction must be 'just,' *Insurance Corp. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982), which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation." (interna citation omitted) ("[J]ustice requires that the most drastic sanctions be reserved for flagrant cases.")." *Bonds* at 808.

"Particularly in the context of litigation-ending sanctions, we have insisted that " '[s]ince our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile." (internal citations omitted) *Id.*

Relator has no compunction about flagrantly violating the rules and no concern that such violations might actually carry consequences to him. As Relator rather glibly claimed in his November 6, 2023 post "meet and confer" email, any prejudice to Athena resulting from this flagrant violation of the rules and discovery schedule was easily cured when Athena sought and secured an additional two weeks to respond to the opposition to summary judgment motion. Ex. 32 P2. Surely the court would not consider that to be any type of sanction to Relator for such flagrant violations of the rules.

Providing Athena with an additional two weeks to respond to a motion does not erase the behavior of Relator in flagrantly violating the rules and scheduling orders set in this matter. To claim so is to make a mockery of everything that this court and justice stand for. Relator had the benefit of reviewing a summary judgment motion that identified and discussed legal failings of his case and then, after seeking additional time to respond, set out on a quest for new discovery

to stave off summary judgment. During this time, aside from engaging in a scavenger hunt for any documents that might serve as evidence to save their case, he also attempted to interview witnesses (specifically at least one of the "faux" Athena employees for which Relator was graciously granted a 45 days discovery extension to secure depositions, discussed *supra*). To say that the parties can be returned to equal footing simply by providing Athena with additional time to respond to Relator's opposition is unjust given that Relator has had seven (7) years to prepare his case and such response (extension of time) would, in fact, greatly reward Plaintiff for his dilatory and inattentive discovery practices. To do so would only serve to encourage inattention to discovery since it is never too late to produce so long as the other party gets more time.

Many cases discussing the application of Rule 37 sanctions acknowledge the importance of the court considering less significant sanctions. But Rule 37 does permit the striking of evidence and there are situations, such as here, where that level of sanction is more than appropriate.

The application of lesser sanctions would effectively create an imbalance in the equities in favor of counsel for Plaintiff, correcting decisions made by Relator's counsel during the discovery phase of litigation. Relator has had seven years. During that time, Relator has been represented by multiple experienced counsel and firms. In May of 2018, two partners of Baron & Budd, Andrew Miller and Scott Zimmer, filed petitions for admission to this court to represent the interests of Mr. Smith along with Glenn Ellis and Aaron Freiwald, both then of Freiwald Law. Baron & Budd advertises extensive experience with qui tam actions specifically involving the HUBZone program. "With more than 30 years of experience, the attorneys on Baron & Budd's whistleblower representation team have represented dozens of clients in government fraud cases returning over $5.4 billion to federal and state agencies, with whistleblower recovery

shares as high as 49%. They are ready to help if you have evidence of fraud involving **the HUBZone program**." (emphasis added)  https://www.becomeawhistleblower.com/small-business-fraud/hubzone-fraud/  They further claim that "[t]he Qui Tam attorneys at Baron & Budd are representing whistleblowers in fraud and abuse cases in several areas, including the healthcare industry, financial sector, government contract fraud, and more. Their expertise in federal and state anti-fraud statutes, regulations, and judicial decisions; strong familiarity with a wide range of government programs; ability to compellingly present the case to the government and the court under tight time constraints; and reputation of credibility with government prosecutors make them the best team to represent whistleblowers in complex fraud cases. https://baronandbudd.com/about/  In June of 2022, Catherine Dorsey, also of Baron & Budd, entered her appearance to Relator's team ECF 123.

Litigators that advertise their expertise in HUBZone qui tam matters surely understand their evidentiary obligations under the False Claim Act.  Proof of false claims is literally in the name of the Act and one of three specific elements that comprise a violation.

There is no legal basis to allow Relator to relitigate his case and to reopen discovery to suit his needs.  Relator has effectively had a free period of discovery that was not afforded to Athena.  Athena has not had the opportunity to "clean up" its case, nor will an additional two weeks allow it to do so in the meaningful manner that Relator has done. Nothing will put these parties back to equal footing other than returning them to the status quo as of the close of fact discovery by denying the admission of the newly identified evidence as is clearly permitted and contemplated under Rule 37.

Giving Athena an extension to reopen its own discovery, take depositions, create evidence and conjure witnesses is not fairness, given that Athena has stood accused of $87

million dollars of fraud against the Federal government for seven years. What is manifestly unfair, and discussed in Athena's Reply Brief to the Opposition to Summary Judgment, is that there never has been any evidence that Athena knowingly submitted any false claims to the Federal government. It is all the more shocking that an even more fundamental, foundational and basic element of required proof – that claims for payment were made – would go ignored for seven years.

Relator has had the benefit of a strong, experienced and well-funded team since the inception of this suit pre-2017. There were no roadblocks to discovery. The Court was closely involved throughout the discovery period, responding to discovery-related complaints and permitting the parties the opportunity to plead their cases and request action or extensions as needed. At no time during the discovery period did Plaintiff ever raise the issue of pay applications/pay certifications with Athena or the Court. It seems inconceivable that none of the attorneys representing Mr. Smith considered the need to prove the first of three elements of a False Claim Act, but that appears to be what happened. The fact that the imposition of Rule 37 sanctions related to the exhibits at issue would potentially result in a decision in favor of summary judgment should not be the determinative factor in this instance.

Case law is replete with situations where the proponent of the discovery failed to properly pursue discovery or remedies in a timely manner but where the court, nonetheless, declined to impose the ultimate sanction to avoid a dismissal of the case. The court uses a measure of "prejudice" to the opposing party to determine if a strong sanction is appropriate. As cited in *Richardson* at 200, the court in *Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998) appropriately applied Rule 37 sanctions to bar the utilization of a late produced supplemental expert report. The court reasoned that "[t]he defendant's disclosure of substantive evidence

about its medical position in this case was provided two months after the deadline imposed by

the scheduling order for this case. The disclosure of Dr. Lyden's prior testimony was three

months after the scheduling order deadline. These two procedural errors cannot be overlooked if

the pretrial order, or if the Federal Rules of Procedure, are to have any significant meaning."

*Keener* at 642.  The court determined that evidence produced after the discovery close date

would not be permitted.  That is the reasonable action in this matter.

To permit otherwise would reward the failure of five experienced plaintiff's counsel to

properly and diligently engage in discovery in a manner that would permit them to actually prove

their case at trial.  It is not the role of the court to balance the scales of justice by providing one

party an advantage to the harm of the other.

## VI.     DISCOVERY SCHEDULE REQUIRES MOTION TO EXTEND OR REOPEN DISCOVERY

The original May 21, 2022 discovery Order in this matter (ECF 120) directed that any

"request for additional time to conduct discovery must be made on or before the discovery

deadline.  A request for an extension of time made after the discovery deadline will be

considered untimely." ECF 120. There were multiple extensions of the discovery schedule made

throughout the course of the discovery period and Relator filed one motion to extend the

discovery schedule. ECF 144. Although, as discussed supra, Relator did not advise this court of

the need to secure, or any issues securing, evidence related to payment of claims by Athena.

"Can Plaintiffs establish 'good cause' for the extension of discovery for materials

available but never sought despite numerous opportunities during the discovery period?". *Dag*

*Enter.* at 96.  Based on the discovery chronology above, the answer in this case would be no,

there is no "good cause" excuse for an extension to permit the introduction of Exs. J,K,L,M,N and O at this time.

When faced with a similar situation, the Court in *Dag Enter.* reasoned that "[b]ecause the deadline for discovery expired, Plaintiffs are obligated to seek a modification of the Scheduling Order by demonstrating 'good cause' before serving additional discovery and redrafting their expert reports. Fed.R.Civ.P. 16(b); LcvR 16.4(b); *Olgyay* v. Soc'y for Env't Graphic Design, Inc., 169 F.R.D. 219, 219 (D.D.C. 1996). 'Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment.'" *Dag Enter.* at 105  "It seems clear that the factor on which courts are most likely to focus when making this determination is the relative diligence of the lawyer or lawyers… Importantly, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (internal citations omitted) *Id*.

The court in *Dag Enter.* emphasized that the "mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause."  *Id*. And while *Dag Enter.* recognized the need to consider the "existence or degree of prejudice to the party opposing the modification,. . . " the focus of the inquiry is on the reasons for failure.  "If the party is not diligent, the inquiry should end." *Id*.

> Courts in this District have routinely denied requests for discovery beyond a cut-off date where a party has shown a lack of diligence during the allowed time period. *See, e.g., Smith Wilson Co. v. Trading & Dev. Establ.,* Civ. No. 90–1125, 1991 WL 171689, at *1 (D.D.C. Aug. 20, 1991) ("As counsel well knows, this Court established a firm discovery cut-off after consulting with counsel for both sides in open court."); *Secord v. Cockburn,* 747 F.Supp. 779, 786 (D.D.C.1990) ("where a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to *106 plead prejudice resulting from his own inaction") (citation omitted); *Senkow v. Herrington,* Civ. No. 86–2220, 1989 WL 46747, at *1 (D.D.C. Apr. 25, 1989) (denying more time for discovery where court had allowed 120 days and had notified parties in its scheduling order that it was "not inclined to grant further continuance of discovery").

*Id* at 105-106.

Plaintiff cannot argue that the need for these documents was not "foreseeable".  Evidence of the submission of claims is necessary to establish the first element of a False Claims Act (1) defendant submitted or caused to be submitted a claim to the government. 31 U.S.C.A. §3729 (a)(1)(A) The need for proof of claims was clear from the drafting of the initial Complaint in 2017 and remained clear and necessary throughout the seven year discovery period. ECF ¶¶1, 5, 98, ECF 66, ¶¶134-136.

Despite the clear need for such evidence, it is apparent that no steps were taken by Plaintiff to secure these materials over the seven years this matter has been pending.  These steps were solely within the control of Plaintiff's counsels and neither Athena nor a third party thwarted any discovery attempts on this issue. While the discovery period was not opened until March of 2022, upon the filing of the complaint in January 2017, Relator would have had the ability to subpoena materials as well as the ability to pursue materials through Freedom of Information Act requests.

Despite the language of the May 21, 2022 Order, Plaintiff did not seek an extension or reopening of the discovery period.  The court was not provided with any opportunity to evaluate the circumstances that gave rise to the need for such late supplementation nor did Athena have the opportunity to oppose such a motion. Instead, once again,  Relator took action in direct contravention of the court's order and simply inserted these materials into this litigation. By flaunting the direct order of this court, Plaintiff has placed this court in a position where it must, in essence, pick the winner and loser.  Plaintiff, however, should not be the beneficiary of their bad deeds.

Whether this court considers the insertion of these materials without an order reopening discovery to be a procedural error in violation of the May 21, 2022 Order or a violation of Fed. R. Civ. P 37, the appropriate action in response is to strike the exhibits from the record. There is no lesser sanction that will level the playing field to what it was at the end of the discovery period during which both parties were afforded full and fair access to discovery and the ability to seek out whatever information they deemed necessary for their case.

## VII.   PORTIONS OF RELATOR'S OPPOSITION TO SUMMARY JUDGMENT MUST BE STRUCK FROM CONSIDERATION

Portions of Relator's argument against summary judgment rely on the late-identified Exhibits J, K, L, M, N and O.  As these documents should be stricken from the record, so must the portions of the Statement of Material Facts (ECF 166-4) and Memorandum in Opposition to Summary Judgment (ECF 166-1) that refer to or rely upon the information within those documents.  Accordingly, in connection with its request to strike the exhibits, Athena requests that the following portions of the memorandum and statement of facts be stricken from the record and not considered by this court:

**Plaintiff's Statement of Material Facts**: ECF166-4
  Exhibits J, K, L, M  #s 83, 84, 89, 90, 91, 92, 95, 96
  Exhibit N & O:   #s 93, 94,

**Concise Statement of Genuine Issues of Dispute Facts:** ECF 166-4
  Exhibits J  - O #s 11, 12

**Section C:  Athena Submitted False Claims for Payments:**  Portions of pages 41-45 of the opposition brief (ECF 166-1) that refer to or rely upon, information contained in Exs, J, K, L, M, N or O ECF 166-1

## VIII.   PLAINTIFF'S "CORRECTED" EXPERT REPORT

Also filed with the Opposition to Motion for Summary Judgment was what Relator identified as a "corrected" version of the May 23, 2023 expert report prepared by Arthur Collins. Relator advised Defendant only hours prior to filing his Opposition on October 24, 2023, that he was including a "corrected" version of his expert report with that filing. Ex. 34. The errors in Relator's expert report were identified by Defendant's Expert Shirley Bailey during her August 2, 2023 deposition. Relator's counsel represented that the October 24, 2023 changes were only to formatting and to correct typographical errors but there were no substantive changes. After reviewing the "corrected report", Athena sought a meet and confer with counsel related to this report as well as the Exhibits discussed in this motion Ex. 32 PP4-5.

During the "meet and confer", Relator's counsel agreed to return the original three attachments to the report that were, perhaps inadvertently, removed from the "corrected" version of the report. Subsequent to receipt of the revised "corrected" report and further consideration of the changes, Defendant advised Relator's counsel that it was Defendant's position that the filing of a "corrected" report was not appropriate and that the more appropriate means to make typographical or scrivener's changes would be through the submission of an errata sheet with the original report.

As of the filing of this motion, it is unclear what steps Relator's counsel intends to take with regard to that report.

## V. CONCLUSION

The prejudice to Athena of allowing their opponent an extra seven months for stealth discovery and the ability to supplement the record after being apprised of potentially fatal flaws in their case through the Motion for Summary Judgment cannot be mitigated through any lesser

43

sanction than the striking of the exhibits. While a serious sanction, there is no other penalty that will return the parties to equal footing, the equal footing they achieved through a mutual and equal discovery period. To argue that there is no prejudice to Athena simply because there is no pretrial order or trial date is misplaced.

While it is of no import to Plaintiff if this matter remains active for months or years longer, Athena has been laboring under the allegations of defrauding the US Government in an amount of $87 million dollars. Athena is a government contractor and the weight of such an allegation has imperiled the health and continued existence of Athena.[8]

The permissive abuse of discovery rules is not a sanction. This situation warrants and requires the imposition of the most extreme sanctions permitted under Rule 37.  It is well past time – seven months past the close of fact discovery and seven years since this matter was filed - for fact discovery to end and this case to stand or fall on the records built by each party during the same discovery period.

/s/ Milton C. Johns
Milton C. Johns, VSB # 42305
D.D.C. Attorney No. VA072
Jill F. Helwig, VSB #83202
D.D.C. Attorney No. VA145
Executive Law Partners, PLLC
11130 Fairfax Blvd, Suite, 303
Fairfax, Virginia 22030
(571) 500-1010
(571) 408-8102 Facsimile
mjohns@xlppllc.com
*Counsel for Defendant*

---

[8] For reasons unexplained, the claimed value of fraud has dropped precipitously from $87 million to $15 million per representations in Relator's Opposition to Summary Judgment. ECF 166-1. The $87 million dollar figure first appeared in the SAC filed on 10 22 2018 (ECF 41) and unsealed on January 18, 2021 (ECF 61).  Relator has made no effort to request the ability to file a Fourth Amended Complaint to correct the outrageous and baseless claim of $87 million of fraud.

*Athena Construction Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 21, 2023, a true copy of the foregoing was

served through Pacer upon counsel:

Glenn Andrew Ellis
GLENN ELLIS LAW, PLLC
2301 Bryn Mawr Ave.
Philadelphia, PA 19131
GAE@glennellislaw.com
*Counsel for William Smith*
*Pro hac*

W. Scott Simmer
Andrew Michael Miller
Catherin Dorsey
BARON & BUDD, PC
600 New Hampshire Ave., NW, Suite 10-A
Washington, DC 20037
*ssimmer@baronbudd.com*
*amiller@baronbudd.com*
*Counsel for William Smith*

/s/ Milton C. Johns
Milton C. Johns, VSB # 42305
D.D.C. Attorney No. VA072
Jill F. Helwig, VSB # 83202
D.D.C. Attorney No. VA145
Executive Law Partners, PLLC
11130 Fairfax Blvd, Suite, 303
Fairfax, Virginia 22030
(571) 500-1010
(571) 408-8102 Facsimile
mjohns@xlppllc.com
*Counsel for Defendant*
*Athena Construction Group, Inc.*
