## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **WILLIAM "BILL" SMITH,** | ) | |
| | ) | |
| **Plaintiff-Relator,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-cv-02080 (APM)** |
| | ) | |
| **ATHENA CONSTRUCTION** | ) | |
| **GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.

Plaintiff-Relator William Smith brings this *qui tam* action against Defendant Athena Construction Group, Inc., his former employer, alleging that Defendant violated the False Claims Act ("FCA") by (1) fraudulently obtaining work under federal contracts as a "HUBZone"-certified contractor and (2) retaliating against him for filing this FCA action. Defendant now moves for summary judgment as to Relator's retaliation claim, asserting that the FCA's anti-retaliation provision does not cover retaliatory conduct directed at a former employee. Defendant also contends that Relator's inability to prove damages is fatal to the claim. For the reasons that follow, the court denies Defendant's motion.

### II.

The court begins with a summary of the facts relevant only to the retaliation claim. The court does not summarize the evidence pertaining to the FCA fraud claims, which are the subject of a separate pending motion.

Plaintiff-Relator William Smith was employed by Defendant Athena Construction Group, Inc., from 2011 to 2016, where he served as the Director of Operations and Project Superintendent. Third Am. Compl., ECF No. 66, ¶ 17 [hereinafter Am. Compl.]; Answer, ECF No. 112, ¶ 17 [hereinafter Answer].  In 2010, Defendant received a "HUBZone" certification from the Small Business Administration.  Answer ¶ 148.  "The purpose of the HUBZone program is to provide federal contracting assistance for qualified [businesses] located in historically underutilized business zones in an effort to increase employment opportunities, investment, and economic development in such areas."  13 C.F.R. § 126.100.  The HUBZone program gives preferences in government contracting to businesses that, among other things, are located in a designated HUBZone and that have projects staffed by employees residing in HUBZones.  *Id*. § 126.200. Businesses must maintain these requirements to remain HUBZone certified.  *Id.* § 126.500.

Relator claims to have "identified that Athena had obtained its HUBZone certification fraudulently within three or four months of starting work at Athena."  Rel.'s Resp. to Def.'s Stmt. of Material Facts, ECF No. 154-2 [hereinafter Rel.'s Resp.], at 6.  Relator did not, however, report this suspicion to his employer or to a regulator.  *Id.* at 6.  Defendant terminated Relator's employment in January 2016.  *Id.* at 3.

On January 10, 2017, Relator initiated this FCA action in the U.S. District Court for the Middle District of Pennsylvania.  Compl., ECF No. 1.[1]  On October 18, 2017, defense counsel served a letter upon plaintiff's counsel "demand[ing] that [Relator] dismiss this Complaint immediately" because it was "frivolous, without a good faith basis in law or in fact, and clearly designed to harass" Defendant.  Ex. A to Rel.'s Opp'n to Def.'s Mot. for Partial Summ. J.

---

[1] That court determined that the interests of justice, as well as the overall convenience of the parties and likely potential witnesses were best served by transfer of Relator's claims to this court, the venue where the "majority, if not all, of the government entities allegedly defrauded by Defendant" were located.  Mem. re: Mot. to Dismiss, ECF No. 25. The matter was thus transferred to this court on September 5, 2018.  *See* ECF No. 27.

[hereinafter Rel.'s Opp'n], ECF No. 154-3, at 3 (ECF pagination).  After Relator refused to withdraw the suit, Defendant filed a lawsuit against him, alleging that Relator's filing of this action had breached the parties' severance agreement.  Ex. B to Rel.'s Opp'n.  Defendant has since filed additional lawsuits challenging Relator's retention and alleged distribution of Defendant's business information.  *See* Exs. E & H to Rel.'s Opp'n.  It is the initial demand letter and the subsequent lawsuits, and not Relator's termination of employment, that Relator claims constitute retaliatory conduct prohibited by the FCA.  *See* Rel.'s Resp. at 2–3.

Relator's retaliation claim previously survived Defendant's motion to dismiss.  Defendant had argued that the FCA's anti-retaliation provision does not reach conduct occurring after the employment relationship ends and therefore the retaliatory acts alleged by Relator failed to state a claim.  Def.'s Mem. in Supp. of Mot. to Dismiss & for Costs, ECF No. 69, at 22.  The court noted a Circuit split on this issue, with the Tenth Circuit holding unanimously that retaliation must occur during employment to be actionable under the FCA, and a split panel of the Sixth Circuit ruling otherwise.  *See* Mem. Op. & Order, ECF No. 107 [hereinafter Mot. to Dismiss Op.], at 41–42.  Finding the Sixth Circuit's interpretation to be more persuasive, the court "reject[ed] Athena's contention that Relator's retaliation claim must be dismissed merely because the alleged retaliation occurred after he left Athena's employment."  *Id.* at 42.  The court did note that Defendant had not argued that the alleged retaliatory acts were not related to the "terms and conditions of employment" and thus did not address the merits of that argument.  *Id.* n.7 (quoting 31 U.S.C. § 3730(h)).

Now before the court is Defendant's Motion for Partial Summary Judgment, seeking entry of judgment on the retaliation claim.  Def.'s Mot. for Partial Summ. J., ECF No. 150.

**III**.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986), "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To raise a genuine dispute of material fact, "[t]he non-movant must put forth evidence that would permit a reasonable jury to find in his favor," or identify the absence of admissible evidence to support an element of a claim. *Cooper v. Dist. of Columbia*, 548 F. Supp. 3d 170, 177 (D.D.C. 2021) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987)).

**IV.**

Defendant challenges Relator's retaliation claim on several grounds. First, Defendant renews its contention that, because Relator's protected activity and the alleged retaliatory conduct both occurred *after* Relator's employment ended, his claim is not cognizable under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h)(1). Second, even if such a claim were viable, Relator has not supplied evidence from which a reasonable jury could conclude that Defendant retaliated against him. And, third, Relator has not offered evidence that he suffered harm from the purported retaliation. The court addresses each contention in turn.

A.      **Post-Employment Retaliation**

Defendant again argues that the FCA's anti-retaliation provision does not reach post-employment acts directed at a relator.  Def.'s Mem. in Supp. of Def.'s Mot. for Partial Summ. J., ECF No. 150-1 [hereinafter Def.'s Mem.], at 8 (quoting 31 U.S.C. § 3730).  Relator counters that Defendant's argument treads no new ground, and the court should reject it for the same reasons as it did at the motion-to-dismiss stage.  Rel.'s Mem. of P&A in Opp'n to Def.'s Mot. for Partial Summ. J., ECF No. 154-1 [hereinafter Rel.'s Mem.], at 11–13.

The law-of-the-case doctrine is "the practice of courts generally to refuse to reopen what has been decided," but it is "not a limit to their power."  *Messenger v. Anderson*, 225 U.S. 436, 444 (1912).  The doctrine is premised on the principle that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*"  *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).  "Even if different language is used in a summary judgment motion than in a previous motion to dismiss, so long as the same legal theory supports both motions, the denial of the motion to dismiss serves as the law of the case and on these grounds, a court may deny a motion for summary judgment."  *Am. Canoe Ass'n, Inc. v. D.C. Water & Sewer Auth.*, 306 F. Supp. 2d 30, 34–35 (D.D.C. 2004).

Here, Defendant has presented "no intervening change in controlling legal authority," *LaShawn*, 87 F.3d at 1393, or any other reason for this court to reconsider its prior ruling.  As the court held, the mere fact that "the alleged retaliation occurred after [Relator] left Athena's employment" does not require dismissal of the claim, because "the FCA's anti-retaliation provision protects former employees alleging post-termination retaliation."  Mot. to Dismiss Op. at 42 (quoting *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 430–35 (6th Cir. 2021)).  Defendant's motion is thus denied on this ground.

Defendant additionally contends—for the first time—that Relator is required to show that he was "threatened" or "harassed" within the "terms and conditions of [his] employment" to state a claim under 31 U.S.C. § 3730(h).  Def.'s Mem. at 8.  Since Defendant did not raise this argument at the motion-to-dismiss stage, *see* Mot. to Dismiss Op. at 42 n.7, Relator responds that it is forfeited, Rel.'s Mem. at 16.

No, it is not.  Rule 12(h)(2) expressly provides that "[f]ailure to state a claim upon which relief can be granted" is not one of the defenses that is waived by not asserting it in a Rule 12 motion.  Fed. R. Civ. P. 12(h)(2).  The defense can be raised in a pleading, motion for judgment on the pleadings, or at trial.  *Id.*  "Some courts have interpreted Rule 12(h)(2) restrictively as denoting the only points in time at which these three defenses may be raised.  Other courts have taken a more permissive approach and allowed the enumerated defenses to be raised at other times.  Since [a] basic purpose of Rule 12(h)(2) . . . is to preserve the defenses, rather than to delimit the precise timing of their assertion, this latter approach seems sound and within the spirit, if not the letter, of the provision."  Wright & Miller, 5C Fed. Prac. & Proc. § 1392 (3d ed.) (footnotes omitted).  *Accord Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) (failure to state a claim defense could be raised "at the latest, 'at the trial on the merits'") (quoting prior version of Fed. R. Civ. P. 12(h)(2)).  Defendant therefore has not forfeited the argument it now advances.

On the merits, Relator responds that the statute does not require retaliatory threats or harassment—the claimed conduct here—to be related to the terms and conditions of the plaintiff's employment.  Rel.'s Mem. at 15–17.  The court agrees.  The statutory text defines retaliatory conduct as acts that result in the plaintiff being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" in response to protected activity.  31 U.S.C. § 3730(h)(1).  As the Tenth Circuit concluded, the

6

phrase "in the terms and conditions of employment" modifies only the phrase "in any other manner discriminated against" and not the other listed conduct, because discharge, demotion, and suspension necessarily relate to the "terms and conditions of employment." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 616 (10th Cir. 2018) (internal quotation marks omitted). In other words, reading the statute to require "discharge[] . . . in the terms and conditions of employment" or "demot[ion] . . . in the terms and conditions of employment" would make little sense, as such acts always implicate the "terms and conditions of employment," thus making the clause superfluous as to them. Defendant's motion is denied on this basis, as well.

### B.    Evidence of Retaliation

Defendant also reasserts another argument raised at the motion-to-dismiss stage, which is that Relator has not shown that Defendant was on notice of his investigative activities during his employment, such that Defendant's termination of Relator could not constitute retaliation for those protected activities. Def.'s Mem. at 18. Defendant points to the Third Amended Complaint's prayer for relief, which claims that the retaliatory conduct alleged was Relator's termination, not the filing of the various lawsuits already discussed. *Id.* (citing Am. Compl. ¶ 340).

But, as Relator points out, "the absence of evidence that Athena knew that Relator was engaging in protected activity *during his employment* with Athena is" irrelevant to Relator's actual theory of retaliation. Rel.'s Mem. at 18. The claim is not premised on any protected activity or retaliatory conduct during his employment, but rather alleges that Defendant threatened and harassed Relator by sending him a targeting demand letter and filing lawsuits against him, in retaliation for bringing this FCA action. *Id.* The court recognized this to be Relator's claim when it denied the motion to dismiss. Mot. to Dismiss Op. at 42 (writing that "Athena became aware of Relator's protected activity on October 13, 2017, when it was served with the original complaint").

Defendant therefore had ample notice when entering discovery. Its arguments premised on the four corners of the complaint thus ring hollow at this stage.

Defendant further asserts that, even if his claim is cognizable, Relator's failure to identify "facts that will establish a prima facie case of retaliation, let alone carry his burden of proof," is fatal to the claim. Def.'s Mem. at 9–10. Relator, however, points to record evidence from which a reasonable jury could conclude otherwise. Such evidence includes: the allegedly threatening letter demanding that Relator withdraw the FCA suit; the filing of three separate lawsuits against Relator, none of which made it beyond a motion to dismiss; deposition testimony from one of Defendant's co-owners, Amber Peebles, that Defendant likely would not have filed the lawsuits against Relator had he not filed the FCA action; and Ms. Peebles' admission that Defendant conducted little to no investigation before filing the third lawsuit. Rel.'s Mem. at 3–8. The court agrees that a reasonable jury could credit this evidence and conclude that Defendant's actions constituted threats or harassment motivated at least partially by Relator's filing of the FCA lawsuit.

The court thus denies Defendant summary judgment on this basis.

## C.    Damages

Finally, Defendant moves for summary judgment based on Relator's purported failure to submit proof of damages.[2] Defendant's damages-related arguments are twofold. First, it urges the court to reject Relator's demand for legal fees and costs arising from Defendant's three lawsuits because Relator has not shown that he either owes, or has paid, fees or costs in connection with those cases. Def.'s Mem. at 10–17. Second, insofar as Relator seeks damages based on emotional

---

[2] Athena also appears to argue that Relator "cannot prevail on his retaliation claim" absent proof of damages. Def.'s Mem. at 12–13. The court notes that it is far from clear that damages are an essential element of a retaliation claim under the FCA. At least one Circuit has held that "§ 3730(h) does not explicitly mandate proof of damages as an essential element of a whistleblower's claim." *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 891 n.6 (8th Cir. 2000). Because the court decides that Relator has supplied evidence supporting at least some damages, it need not, at this juncture, determine whether damages are an element of an FCA retaliation claim.

distress, Defendant contends that Relator has not substantiated such damages during discovery, *id.* at 18–19, and to the extent he attempts to do so now, his proof is in the form of an untimely declaration that the court cannot consider, Def.'s Reply in Opp'n to Mot. for Partial Summ. J., ECF No. 155, at 14–15.  Because the court is satisfied that the record is sufficient, at this stage, to support an emotional distress award, it need not delve into the specifics of each argument.

The FCA provides that damages for retaliation include "compensation for any special damages sustained as a result of the discrimination."  31 U.S.C. § 3730(h)(2).  Every Circuit to consider the issue has concluded that "[d]amages for emotional distress caused by an employer's retaliatory conduct plainly fall within this category of 'special damages.'"  *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000); *see also Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 265–66 (5th Cir. 2014) (same); *Neal v. Honeywell, Inc.*, 191 F.3d 827, 831 (7th Cir. 1999) (same); *cf. Felten*, 993 F.3d at 434 n.3 (citing *Hammond*).  Here, during his deposition, when asked about the damages he had suffered, Relator responded, "I was intimidated and it caused a lot of stress" and "I just had a lawsuit filed against me. It's intimidating."  Ex. B to Rel.'s Mem., ECF No. 150-4, at 202:15-20.

Defendant argues that such "general statements . . . are insufficient to support an award of compensatory damages."  Def.'s Mem. at 19.  That may be true at trial, but it is enough to survive summary judgment.  *See Hammond*, 218 F.3d at 893 (stating that emotional-distress damages under the FCA can be established at summary judgment by the plaintiff's own testimony that describes the "nature and extent" of the emotional harm) (citing *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 636 (8th Cir. 1998)); *cf. Hudson v. Am. Fed'n of Gov't Emps.*, No. 21-7133, 2022 WL 15798719, at *4 (D.C. Cir. Oct. 28, 2022) (per curiam) (upholding jury's award of emotional distress damages in a Title VII discrimination case, where plaintiff's trial

testimony consisted of statements that he felt "just devastated" and "discriminated against," and that the discrimination was "embarrassing and humiliating").

Having thus determined that there is sufficient record evidence to create a triable issue of fact as to damages, the court does not address whether Relator has offered sufficient proof to sustain an award for the attorney's fees and costs he allegedly incurred in defending the suits filed by Defendant. Nor does the court decide whether Relator's declaration accompanying his opposition brief presents newly disclosed evidence that must be excluded under Rule 37(c). The court is prepared to consider these issues in advance of trial.

## V.

For these reasons, Defendant's Motion for Partial Summary Judgment, ECF No. 150, is denied.

Dated: March 20, 2024

Amit P. Mehta
United States District Court Judge